**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

EDWARD B. HUBBUCH,

Plaintiff,

-against-

BETTER DEBT SOLUTIONS LLC; LENDVIA LLC; RANGE VIEW MANAGEMENT LLC; BETTER TAX RELIEF LLC; BETTER COMPANIES LLC; MOHAMMAD GHAFARINIA a/k/a MATT GHAFARINIA a/k/a MATT NIA; and JOHN DOES 1-9,

Defendants.

No. 1:26-cv-02389-PKC-TAM

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................1

PROCEDURAL AND FACTUAL BACKGROUND....................2

LEGAL STANDARDS ....................3

ARGUMENT ....................4

I. COUNTS TWO AND THREE FAIL BECAUSE THE SAC PLEADS THAT THE CALLED NUMBER IS PLAINTIFF'S BUSINESS LINE....................4

II. COUNT FIVE FAILS BECAUSE THE SAC PLEADS NO CONSUMER TRANSACTION IN NEW YORK....................5

III. THE COURT LACKS PERSONAL JURISDICTION OVER GHAFARINIA, AND THE SAC STATES NO CLAIM AGAINST HIM INDIVIDUALLY....................6

A. Plaintiff Pleads No Basis for Personal Jurisdiction Over Ghafarinia ....................6

B. The SAC Pleads No Non-Conclusory Facts of Ghafarinia's Direct Personal Participation ....................7

IV. THE SAC'S GROUP PLEADING FAILS NOTWITHSTANDING ITS VICARIOUS LIABILITY ALLEGATIONS ....................9

A. Vicarious Liability Does Not Excuse Pleading What Each Defendant Did ....................9

B. The Vicarious-Liability Cases Require Operational Control Over the Calling, Which the SAC Does Not Plead ....................10

C. The SAC's Specific "Enterprise" Hooks Are Each Insufficient ....................11

V. COUNT FOUR FAILS BECAUSE NEITHER ELEMENT OF A GBL § 399-p "AUTOMATIC DIALING-ANNOUNCING DEVICE" IS PLEADED ....................12

VI. COUNT ONE FAILS AS TO THESE DEFENDANTS BECAUSE NO CALL IS PLAUSIBLY ATTRIBUTED TO ANY OF THEM ....................14

VII. PLAINTIFF LACKS STANDING FOR HIS REQUESTED DECLARATORY AND PROSPECTIVE RELIEF....................15

VIII. THE SAC'S OUT-OF-CASE MATERIALS SHOULD BE STRICKEN OR, AT MINIMUM, LIMITED ....................16

A. The Samuel Declarations Are Not Part of the Pleading Under Rule 10(c)....................17

B. The Unadjudicated-Litigation Tally and the Minnesota Consent Order Should Be Stricken Under Rule 12(f)....................17

C. In the Alternative, the Out-of-Case Materials Are Cognizable Only for Their Existence ....................20

IX. IN ALL EVENTS, THE SAC'S CUMULATIVE DAMAGES DEMANDS ARE IMPROPER....20

CONCLUSION....21

# TABLE OF AUTHORITIES

**Cases**


*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................3, 13

*Bais Yaakov of Spring Valley v. Educational Testing Service*, 251 F. Supp. 3d 724 (S.D.N.Y. 2017) ....................10

*Bank v. Alleviate Tax, LLC*, No. 23-CV-5457 (PKC) (PK), 2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024) ....................9, 14

*Bank v. Dorfman*, 2021 WL 7185786 (E.D.N.Y. Dec. 21, 2021), adopted, 2022 WL 341195 (E.D.N.Y. Feb. 4, 2022)....................8

*Bank v. Green Bullion Financial Services, LLC*, 31 Misc. 3d 53 (App. Term 2011)....................7

*Bank v. Independence Energy Group LLC*, 2014 WL 4954618 (E.D.N.Y. Oct. 2, 2014) ....................4

*Bank v. Spark Energy, LLC*, 860 F. App'x 205 (2d Cir. 2021) ....................14

*Banks v. Pro Custom Solar LLC*, 416 F. Supp. 3d 171 (E.D.N.Y. 2018)....................10

*Barington Capital Group, L.P. v. Arsenault*, 281 A.D.2d 166 (1st Dep't 2001)....................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................3, 8, 12

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ....................18

*Buffalo Xerographix, Inc. v. Hartford Insurance Group*, 540 F. Supp. 3d 382 (W.D.N.Y. 2021) ....................11

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024)....................4

*Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022) ....................16

*Calhoun v. Nani Brand, Inc.*, No. 1:25-CV-0051 (DAE), 2025 WL 5257926, 2025 U.S. Dist. LEXIS 251480 (W.D. Tex. Dec. 5, 2025) ....................9

*Caplan v. Dollinger*, 803 F. Supp. 3d 219 (S.D.N.Y. 2025) ....................6, 7, 11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................16

*Cowell v. Utopia Home Care, Inc.*, 144 F. Supp. 3d 398 (E.D.N.Y. 2015) ....................18, 19, 20

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)....................6

*Demarattes v. Enhanced Recovery Co., LLC*, No. 20-CV-4722, 2022 WL 4121217 (E.D.N.Y. Sept. 9, 2022) ....................15

*English v. Danone North America Public Benefit Corp.*, 678 F. Supp. 3d 529 (S.D.N.Y. 2023)...6

*Fitzpatrick v. American International Group, Inc.*, No. 10-CV-0142, 2013 WL 1311029 (S.D.N.Y. Mar. 20, 2013) ....................17

*Frederick v. Wally Health, Inc.*, 2025 WL 1344346 (S.D.N.Y. Apr. 25, 2025)....................8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000)16

*Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)....................4

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) .3, 5, 12, 13, 20

*Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314 (2002) ....................5

*Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021) ....................6

*Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999) ....................7

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ....................3

*Herrera v. Navient Corps.*, No. 19-CV-6583, 2020 WL 3960507 (E.D.N.Y. July 13, 2020).14, 15

*Hulett v. EyeBuyDirect, Inc.*, No. 1:24-cv-996, 2025 WL 1677071 (N.D.N.Y. June 13, 2025) .....5

*In re Merrill Lynch & Co. Research Reports Securities Litigation*, 218 F.R.D. 76 (S.D.N.Y. 2003) ....................18

*In re Platinum & Palladium Commodities Litigation*, 828 F. Supp. 2d 588 (S.D.N.Y. 2011) .....19

*In re Zinc Antitrust Litigation*, 155 F. Supp. 3d 337 (S.D.N.Y. 2016) ....................9

*Jalayer v. Stigliano*, 420 F. Supp. 3d 58 (E.D.N.Y. 2018) ....................17, 18

*Jenkins v. National Grid USA*, No. 15-CV-1219 (JS) (GRB), 2016 WL 11800166 (E.D.N.Y. Mar. 31, 2016), and 2017 WL 1208445 (E.D.N.Y. Mar. 31, 2017) ....................10

*Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149 (S.D.N.Y. 2021) ....................20

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ....................18, 19

*Lynch v. Southampton Animal Shelter Foundation Inc.*, 278 F.R.D. 55 (E.D.N.Y. 2011)............19

*MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58 (2d Cir. 2001) .......11

*Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270 (S.D.N.Y. 2024) ....................16

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)..............5, 14

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ....................15

*Metzler v. Pure Energy USA, LLC*, No. 21-CV-9798 (VEC), 2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ....................15

*My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023) ....................19

*Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199 (S.D.N.Y. 2018) ....................17

*Oparaji v. Home Retention Corp.*, No. 21-CV-2758, 2022 WL 987560 (E.D.N.Y. Jan. 11, 2022) ....................13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (1995) .......6

*People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358 (S.D.N.Y. 2019) ....................11

*Rose v. New TSI Holdings, Inc.*, 2022 WL 912967 (S.D.N.Y. Mar. 28, 2022) ....................15

*RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009) ....................18

*Smith v. Hogan*, 794 F.3d 249 (2d Cir. 2015) ....................17

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516 (S.D.N.Y. 2018) ....................9

*Sussman v. I.C. System, Inc.*, 928 F. Supp. 2d 784 (S.D.N.Y. 2013) ....................12

*Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) ....................7

*Toohey v. Portfolio Recovery Associates, LLC*, 2016 WL 4473016 (S.D.N.Y. Aug. 22, 2016)...20

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................3, 16

*Trisvan v. Heyman*, 305 F. Supp. 3d 381 (S.D.N.Y. 2018) ....................7

*Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ....................19

*United States v. International Longshoremen's Association*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007) ....................17

*Walden v. Fiore*, 571 U.S. 277 (2014) ....................6, 7

*Wilson v. Better Mortgage Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025) ....................4

**Statutes, Regulations, and Rules**

28 U.S.C. § 1407 ....................12

28 U.S.C. § 2201 ....................15

47 U.S.C. § 227 ....................4, 5, 9, 14

47 C.F.R. § 64.1200 ....................4, 5

N.Y. Gen. Bus. Law § 349 ....................5, 6, 20

N.Y. Gen. Bus. Law § 399-p ....................1, 12, 13, 14, 20

N.Y. C.P.L.R. 302 ....................7

Fed. R. Civ. P. 8 ....................9

Fed. R. Civ. P. 10(c) ....................16, 17

Fed. R. Civ. P. 12 ....................3, 15, 16, 17, 18, 19, 21

Fed. R. Evid. 408 ....................18, 19

## PRELIMINARY STATEMENT

Plaintiff opens his opposition to this motion before it is filed, arguing that the Court "already implicitly found the SAC sufficient" when it granted leave to amend. (ECF No. 30 at 1.) That is incorrect. Leave to amend under Rule 15's liberal standard is not an adjudication that the amended pleading states a claim, and the Court's August 18, 2026 Order—denying a pre-motion conference as unnecessary and setting a full briefing schedule for this motion—forecloses the argument. The sufficiency of the Second Amended Complaint [ECF No. 24] (the "SAC") is before the Court now for the first time.

The SAC pleads five counts against five affiliated companies, one individual, and nine John Does, arising from telemarketing calls allegedly placed to Plaintiff's cellular number by callers who—on Plaintiff's own allegations—concealed their identities behind fictitious "department" names and an unregistered "Capital Loan Center" alias. (SAC ¶¶ 29, 31, 54.) The SAC's own allegations defeat most of its claims. Plaintiff pleads that the called number is his "sole business line" used in his commercial operations (¶¶ 25, 35, 114, 120), which negates the "residential subscriber" status on which Counts Two and Three depend. He pleads no New York consumer transaction, which defeats Count Five. He pleads no facts connecting any named Defendant—much less each of six—to the initiation of any call, and no facts establishing personal jurisdiction over, or individual liability of, Defendant Ghafarinia. And Count Four fails because the SAC pleads neither statutory element of an "automatic dialing-announcing device" under N.Y. Gen. Bus. Law § 399-p, while affirmatively describing an operator-staffed calling operation.

Defendants address each of the three issues identified in the Court's August 18, 2026 Order directly: the effect of SAC ¶ 28 on Counts One and Four is addressed in Points V and VI; the prejudice supporting Defendants' narrowed request to strike is addressed in Point VIII; and the

interplay between group pleading and Plaintiff's vicarious-liability allegations is addressed in Point IV.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, proceeding pro se, filed this action in April 2026 and has since amended twice. The Court granted Plaintiff leave to file the SAC on June 12, 2026; the SAC was filed on June 25, 2026 [ECF No. 24]; and Plaintiff's leave to further amend expired on July 3, 2026 without further amendment. Defendants timely sought a pre-motion conference [ECF No. 29]; Plaintiff responded [ECF No. 30]; Defendants replied to correct three misstatements of the record [ECF No. 31]; and on August 18, 2026, the Court denied the conference as unnecessary and directed that any motion address the three issues discussed above. (Order (Aug. 18, 2026) (text only).)

The SAC alleges that between July 1, 2025 and April 24, 2026, "Defendants" placed at least 730 telemarketing calls to Plaintiff's cellular number ending 7597. (SAC ¶¶ 1, 26.) Plaintiff alleges that the number is used "for both personal and business communications as a sole proprietor" (¶ 25), that it "doubles as his sole business line" (¶ 35), and that the calls disrupted his "commercial telephone operations," causing "actual business damages" (¶¶ 114, 120; Prayer ¶¶ (b)–(c)). The voicemails allegedly deployed fictitious loan-approval "teaser" amounts and a "revolving array of fabricated institutional divisions," such as the "Loan Approvals Department" and the "Eligibility Review Office." (¶ 29.) The only call the SAC describes in any detail is one Plaintiff himself placed: a December 24, 2025 "investigative callback," in which "Defendants routed Plaintiff to a representative named 'Anthony,'" who "held himself out as an underwriter for 'Capital Loan Center'" and engaged Plaintiff in an interactive conversation. (¶ 31; see ¶ 69.)

The SAC attributes all of this conduct collectively to an "Enterprise" of five companies, one individual, and nine John Does, principally on the basis of common ownership and branding

(¶¶ 15, 47, 56–58, 64), a July 2024 motion before the Judicial Panel on Multidistrict Litigation (¶¶ 59–61), counsel's acceptance of service for all Defendants (¶¶ 62–63), and the allegation that the calls ceased upon service of the original Complaint (¶¶ 7, 27, 36–37, 50). It also annexes and incorporates material from unrelated proceedings: a tally of 43 other lawsuits (¶¶ 38–43; Ex. D), a Minnesota administrative consent order (¶¶ 44–46; Ex. E), and two sworn "forensic" declarations of Markel Samuel prepared for the plaintiffs in litigation pending in the District of South Carolina and the Western District of Washington, accusing Defendants of fabricating consent evidence in those cases (¶¶ 72–74; Exs. K, L).

## LEGAL STANDARDS

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a pro se pleading is construed liberally, it must still satisfy that plausibility standard. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). On a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject-matter jurisdiction, including Article III standing for "each claim" and "each form of relief" sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). On a Rule 12(b)(2) motion, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction as to each defendant. A motion must be decided on the pleading as filed; a plaintiff may not amend his complaint through an opposition. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006).

## ARGUMENT

### I. COUNTS TWO AND THREE FAIL BECAUSE THE SAC PLEADS THAT THE CALLED NUMBER IS PLAINTIFF'S BUSINESS LINE

The do-not-call protections underlying Counts Two and Three—47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)–(d)—protect only a "residential telephone subscriber." Whether a subscriber is "residential" turns on how the line is actually used, not on the technology. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206–07 (S.D.N.Y. 2024) (applying a use-based analysis and sustaining residential-subscriber status on the personal-use facts pleaded there); accord *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025). A plaintiff must plead residential use with specific facts; conclusory assertions of "primarily personal" use do not suffice. *Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023). And a subscriber who holds his number out as a business line is not a residential subscriber. *Bank v. Independence Energy Grp. LLC*, 2014 WL 4954618 (E.D.N.Y. Oct. 2, 2014).

Here, no discovery is needed to determine the line's use, because Plaintiff has pleaded it. The SAC alleges that the 7597 number is used "for both personal and business communications as a sole proprietor" (¶ 25); that it "doubles as his sole business line" (¶ 35); that the calls caused "the persistent, 10-month structural disruption of his commercial telephone operations" and "the economic loss of missed legitimate business communications" (¶ 114); that Plaintiff suffered "the total disruption of his sole business telephone line" (¶ 120); and the Prayer seeks "actual business damages resulting from the disruption of his commercial operations" (Prayer ¶¶ (b)–(c)). A complaint that describes the called number as the plaintiff's sole business line, and claims business damages from the disruption of commercial operations, pleads a business line. Whatever presumption might otherwise attach to a wireless number is rebutted on the face of the SAC by Plaintiff's own allegations, which are the only facts properly before the Court.

Plaintiff's pre-motion response confirmed the point by abandoning the pleading: he asserted—for the first time, and nowhere in the SAC—that the number was his "personal cellular line since 2010," registered "while employed as a journalist," before he became a sole proprietor "in May 2018." (ECF No. 30 at 1.) None of that is pleaded, and Plaintiff may not amend through an opposition. *Global Network*, 458 F.3d at 156–57. His reliance on the FCC's 2003 ruling that wireless subscribers are "presumptively residential" (ECF No. 30 at 2) fares no better: the presumption is rebutted by his own allegations, and in any event the FCC's interpretations of the TCPA do not bind this Court in private litigation. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 145 S. Ct. 2006, 2011 (2025) (Hobbs Act does not require district courts to follow FCC interpretations of the TCPA; courts "must independently determine" the statute's meaning). The Court must determine for itself what "residential subscriber" means, and on any independent reading a self-described sole business line does not qualify.

Count Three fails for the additional reason that 47 C.F.R. § 64.1200(d) is enforced through § 227(c)(5)'s private right of action and, by its terms, restricts telemarketing calls to a "residential telephone subscriber." See *Hulett v. EyeBuyDirect, Inc.*, No. 1:24-cv-996, 2025 WL 1677071, at *2 (N.D.N.Y. June 13, 2025) (describing the framework and dismissing an internal do-not-call claim at the pleading stage). By Plaintiff's own allegation, moreover, Count Three is "an alternative theory of recovery . . . rather than an independent basis for additional damages" (¶ 107)—duplicative of Count Two and adding nothing.

## II. COUNT FIVE FAILS BECAUSE THE SAC PLEADS NO CONSUMER TRANSACTION IN NEW YORK

GBL § 349 is not a free-standing anti-solicitation statute. "[T]he transaction in which the consumer is deceived must occur in New York," *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002), and the statute reaches consumer-oriented deception that causes actual injury in

a consumer transaction, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995); accord *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122–23 (2d Cir. 2013); *English v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529 (S.D.N.Y. 2023) (dismissing § 349 claim absent a New York transaction).

The SAC pleads, at most, unconsummated telemarketing solicitations emanating from California. Plaintiff alleges that he "never applied for any financial services from Defendants, and never entered into any agreement" (¶ 30), and that the December 24 callback ended when "[t]he representative failed to consummate any transaction because Plaintiff refused to provide his Social Security Number" (¶ 31). There is no purchase, no enrollment, no payment—no consumer transaction in New York or anywhere else. The injuries alleged (annoyance, privacy invasion, disruption of his phone line (¶ 120)) flow from the calls themselves, not from any deception in a consumer transaction, and are the same injuries for which the TCPA counts already provide a remedy. Count Five should be dismissed.

## III. THE COURT LACKS PERSONAL JURISDICTION OVER GHAFARINIA, AND THE SAC STATES NO CLAIM AGAINST HIM INDIVIDUALLY

### A. Plaintiff Pleads No Basis for Personal Jurisdiction Over Ghafarinia

Ghafarinia is alleged to be a California resident. (¶ 16.) A non-resident officer's jurisdictional contacts must arise from his own suit-related conduct; the corporation's contacts are not imputed to him, and the plaintiff cannot be the only link between the defendant and the forum. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021) (allegation that an officer controls the corporation is insufficient). Group pleading is impermissible in the jurisdictional analysis as well: allegations of domination must be tied to the particular defendant, and shared officers and shared office space do not suffice. *Caplan v. Dollinger*, 803 F. Supp. 3d 219 (S.D.N.Y. 2025).

None of New York's long-arm provisions reaches Ghafarinia on these allegations. CPLR 302(a)(2) fails because telephone calls initiated outside New York are not tortious acts committed "within the state." *Bank v. Green Bullion Fin. Servs., LLC*, 31 Misc. 3d 53 (App. Term 2011); *Barington Capital Grp., L.P. v. Arsenault*, 281 A.D.2d 166 (1st Dep't 2001). As for CPLR 302(a)(3)(ii)—the provision Plaintiff invokes (ECF No. 30 at 2)—its elements must be satisfied as to Ghafarinia personally: his own tortious act outside the state, injury in the state, an expectation of in-state consequences attributable to him, and substantial revenue that he personally derives from interstate commerce. The SAC attributes everything to him through the entities, in precisely the manner *Walden* and *Caplan* forbid, and pleads his "direction" of the campaign only "on information and belief" from other litigation (¶¶ 47–48). A plaintiff invoking jurisdiction over an officer must plead that the officer was a "primary actor" in the specific transaction in New York, not a formulaic recitation of control. *Trisvan v. Heyman*, 305 F. Supp. 3d 381 (S.D.N.Y. 2018).

Plaintiff's waiver argument (ECF No. 30 at 3) misreads *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999). *Hamilton* found the defense forfeited where the defendant, though pleading it in its answer, then litigated for four years—participating in discovery and merits practice—without ever moving on it. Here, no responsive pleading has yet been due; the parties' stipulations extending Defendants' time to respond expressly reserved all defenses; Defendants stated their jurisdictional objection in their first substantive submissions; and this motion, Ghafarinia's first response to the SAC, timely asserts it. There is no forfeiture.

### B. The SAC Pleads No Non-Conclusory Facts of Ghafarinia's Direct Personal Participation

Even under the standard Plaintiff himself invokes, a corporate officer is personally liable only if he "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)

(quoted at SAC ¶ 21). Formulaic allegations that an officer "formulated, directed, and controlled" a calling campaign are conclusory, and even allegations that an officer wrote or approved the scripts later used in unlawful calls are not "direct and personal enough" to establish the participation the statute requires. *Bank v. Dorfman*, 2021 WL 7185786 (E.D.N.Y. Dec. 21, 2021) (report and recommendation), adopted, 2022 WL 341195 (E.D.N.Y. Feb. 4, 2022); cf. *Frederick v. Wally Health, Inc.*, 2025 WL 1344346 (S.D.N.Y. Apr. 25, 2025) (report and recommendation on default-judgment inquest) (allegations that individuals "specifically, individually, and personally directed and authorized all of the unlawful calls," were "intimately involved in the program to make these calls, including the selection of the calling equipment," and were the "guiding spirit and central figures" behind them were conclusory and insufficient to establish individual TCPA liability).

The SAC's allegations against Ghafarinia are of exactly that character: he "approv[ed] the specific prerecorded voice scripts," "direct[ed] the purchase of third-party lead data," "[s]et up" an intake process, and "[p]urchas[ed] the automated dialing platforms" (¶ 48)—each pleaded on information and belief from unidentified "documentary record[s]" in other litigation, none tied to any call to Plaintiff's number. The remaining allegation—that the cessation of calls upon service "conclusively prove[s]" Ghafarinia's "personal exercise of suppression power" (¶ 50)—is an inference, not a fact, and an implausible one: the far more obvious explanations include independent responses by whichever third parties actually placed the calls and routine litigation-hold instructions issued through counsel to all affiliated brands upon service. Where "obvious alternative explanation[s]" exist, an inferential leap of this kind does not satisfy *Twombly*. 550 U.S. at 567–68. All claims against Ghafarinia should be dismissed.

## IV. THE SAC'S GROUP PLEADING FAILS NOTWITHSTANDING ITS VICARIOUS-LIABILITY ALLEGATIONS

The Court has directed Defendants to address why Plaintiff's group pleading is impermissible in light of his allegations suggesting potential vicarious liability, citing *Calhoun v. Nani Brand, Inc.*, No. 1:25-CV-0051 (DAE), 2025 WL 5257926, 2025 U.S. Dist. LEXIS 251480, at *18 (W.D. Tex. Dec. 5, 2025). Defendants respectfully offer two observations at the outset. First,* Calhoun* dismissed the TCPA claims before it; the decisions it collects permitted vicarious-liability allegations to proceed only where the complaint pleaded facts showing a concrete relationship of control over the calling at issue. Second, vicarious liability and group pleading are analytically distinct problems, and curing one does not cure the other.

### A. Vicarious Liability Does Not Excuse Pleading What Each Defendant Did

Even a well-pleaded agency theory does not relieve a plaintiff of the obligation to tell each defendant what it, specifically, is alleged to have done. Group pleading against "families of affiliated entities" is insufficient under Rule 8. *Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516 (S.D.N.Y. 2018); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337 (S.D.N.Y. 2016) (defining affiliated entities by a shared shorthand does not discharge the obligation to state a claim against each). The SAC defines an "Enterprise," pleads virtually all conduct against that label, and then appends to each count near-identical recitations that each entity "shared the call logs, infrastructure, witnesses, and DNC policies" (¶¶ 87, 95, 104, 112, 121). Sharing infrastructure is not initiating, directing, or controlling calls; the recitations give no Defendant notice of what it did.

This Court's decision in *Bank v. Alleviate Tax, LLC*, No. 23-CV-5457 (PKC) (PK), 2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024), controls. There, as here, the plaintiff alleged an automated message followed by transfer to a live representative, and this Court dismissed the § 227(b) claim

because the pleading contained no non-conclusory factual allegations connecting the defendant to the initiator of the calls, under either a direct- or vicarious-liability theory: the existence of "some connections" between a defendant and the calls is not enough, and the fact that a call was transferred to a defendant does not show that the defendant controlled or supervised whoever initiated it. Id. at *3–5. That holding maps precisely onto this record: the only call described in detail is one Plaintiff initiated and was "routed" through (¶ 31). Plaintiff himself invokes* Alleviate Tax* as supplying the governing pleading standard (SAC ¶¶ 87, 95, 104, 112, 121; ECF No. 30 at 2); he should be held to it.

### B. The Vicarious-Liability Cases Require Operational Control Over the Calling, Which the SAC Does Not Plead

The decisions sustaining TCPA vicarious-liability allegations turn on operational control of the calling campaign—not on corporate affiliation. In *Jenkins v. National Grid USA*, No. 15-CV-1219 (JS) (GRB), 2016 WL 11800166 (E.D.N.Y. Mar. 31, 2016), the court dismissed a vicarious-liability theory for failure to allege the power to give "interim instructions"—"the hallmark of an agency relationship," id. (quoting *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015))—and sustained the repleaded claim only after the plaintiffs alleged contractual provisions vesting the defendants with that instruction authority over the callers' conduct, 2017 WL 1208445 (E.D.N.Y. Mar. 31, 2017); unified branding mattered only in combination with that contractual control. In *Bais Yaakov of Spring Valley v. Educational Testing Service*, 251 F. Supp. 3d 724, 744 (S.D.N.Y. 2017), collective allegations were permitted where the fax at issue was alleged to have been sent by or on behalf of the defendant and role-specific facts lay peculiarly within the defendants' control. And *Banks v. Pro Custom Solar LLC*, 416 F. Supp. 3d 171 (E.D.N.Y. 2018), illustrates that the three agency theories—actual authority,

apparent authority, ratification—must each be pleaded with facts, and sustained only an apparent-authority theory grounded in manifestations by the principal to the plaintiff.

The SAC pleads none of this. It alleges no contract, no instruction authority, and no control mechanism between any Defendant and whoever placed the calls. It affirmatively alleges the opposite of a principal's manifestation: the callers concealed their identities behind fabricated department names (¶ 29) and an unregistered "Capital Loan Center" alias (¶¶ 31, 48(c), 52, 54, 118(d)), and "Defendants" allegedly "distribut[ed] outbound calling activities among affiliated entities and lead generators" (¶ 54)—that is, Plaintiff pleads that he does not know who called him, and that whoever did held itself out as "Capital Loan Center," not as any Defendant. Apparent authority requires a manifestation traceable to the principal; a concealed identity is the antithesis of one. And the cases applying the FTC's multifactor "common enterprise" doctrine, e.g., *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461 (S.D.N.Y. 2014); *People v. Debt Resolve, Inc.*, 387 F. Supp. 3d 358 (S.D.N.Y. 2019), are government enforcement actions applying a statutory-enforcement doctrine, on records of operationally commingled businesses, that no court has imported into a private TCPA suit to excuse pleading common-law agency.

### C. The SAC's Specific "Enterprise" Hooks Are Each Insufficient

Each fact the SAC offers for treating six defendants as one has been held insufficient. Common ownership and corporate affiliation (¶¶ 15, 47) do not establish alter ego. *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001). A shared headquarters (¶ 14) and shared officers are insufficient even under the relaxed jurisdictional alter-ego standard. *Caplan*, 803 F. Supp. 3d 219. Unified "Family of Brands" marketing (¶¶ 56–58, 64) does not establish apparent authority: shared names, trademarks, logos, marketing, offices, phone numbers, and websites have all been held insufficient. *Buffalo Xerographix, Inc. v. Hartford Ins.*

*Grp.*, 540 F. Supp. 3d 382 (W.D.N.Y. 2021) (applying New York agency law). Counsel's acceptance of service for all Defendants (¶¶ 62–63) is a litigation convenience, not a manifestation of operational control; Plaintiff cites no authority holding otherwise, and a contrary rule would penalize efficient defense coordination. The 2024 MDL motion (¶¶ 59–61) asserted what 28 U.S.C. § 1407 requires—common questions of fact for pretrial efficiency—which is not an admission that distinct entities are a single operating enterprise, and the motion is in any event cognizable only for the fact of its filing, not the truth of its contents. *Global Network*, 458 F.3d at 157. Finally, the "pinpoint cessation" inference (¶¶ 7, 27, 37, 50) fails under *Twombly* for the reasons stated in Point III.B: obvious alternative explanations—independent responses by the actual callers; counsel's routine suppression and litigation-hold instructions to all affiliated brands upon service—render the inference of a single controlling hand implausible. 550 U.S. at 567–68.

Because the SAC connects no Defendant to any call, all counts should be dismissed as against LendVia, Range View, Better Tax Relief, and Better Companies, and the group-pleaded claims against Better Debt Solutions should be dismissed except to the extent a claim is properly pleaded against it specifically.

## V. COUNT FOUR FAILS BECAUSE NEITHER ELEMENT OF A GBL § 399-p "AUTOMATIC DIALING-ANNOUNCING DEVICE" IS PLEADED

The Court has asked whether Defendants' arguments on Count Four survive SAC ¶ 28. They do, because Count Four fails for reasons independent of ¶ 28. GBL § 399-p(1)(a) defines an "automatic dialing-announcing device" as equipment that (i) "incorporates a storage capability of telephone numbers to be called," and (ii) is used "to disseminate a prerecorded message to the telephone number called without the use of an operator." Both elements are creatures of New York law with no federal analogue, see *Sussman v. I.C. System, Inc.*, 928 F. Supp. 2d 784 (S.D.N.Y. 2013) (§ 399-p is a distinct, differently-scoped statute with its own elements), and Plaintiff agrees:

the SAC itself pleads that the term "is defined by New York law independently of the federal [ATDS] standard construed in *Facebook*" (¶ 109). That independence cuts against Plaintiff, because the state definition carries two elements that the federal prerecorded-voice prohibition does not—and the SAC pleads neither.

First, no storage capability. The SAC alleges "automated dialing platforms" (¶¶ 4, 48(d)) and spoofed outbound caller IDs (¶¶ 4, 29–30), but never alleges that the equipment "incorporate[d] a storage capability of telephone numbers to be called." Paragraph 109 recites the statutory term and stops. A statutory recital is precisely the kind of "legal conclusion couched as a factual allegation" that *Iqbal* disregards. 556 U.S. at 678.

Second, no operation "without the use of an operator"—indeed, the SAC affirmatively pleads operators. It alleges that "Defendants routed Plaintiff to a representative named 'Anthony'" (¶ 31), that inbound callbacks are "rout[ed] . . . through the 'Capital Loan Center' brand" (¶ 54), and that consumers are "[d]eceptively rout[ed] . . . to an 'Underwriting Department'" (¶ 118(d)). An operation built around routing consumers to live representatives is operator-assisted. The SAC describes an operator-staffed calling operation and then affixes the label "automatic dialing-announcing device" without pleading the statutory element that would make it one.[1] Whatever ¶ 28 may say about the voice on Plaintiff's voicemails, it says nothing about storage capability or operator-free dissemination, and cannot supply the missing elements. See *Oparaji v. Home Retention Corp.*, No. 21-CV-2758, 2022 WL 987560 (E.D.N.Y. Jan. 11, 2022) (report and

---

[1] Plaintiff's pre-motion response described a prerecorded "avatar" or "soundboard" that delivers a script "before transferring the call to a live closer." (ECF No. 30 at 2.) Those assertions appear nowhere in the SAC and are not properly before the Court. *Global Network*, 458 F.3d at 156–57; see ECF No. 31 at 2. Defendants note, strictly in the alternative and without waiving that objection, that a system that transfers calls to a "live closer" is one that operates with the use of an operator—so the description, if considered, would only confirm the § 399-p defect.

recommendation), adopted, 2023 WL 2155764 (E.D.N.Y. Feb. 22, 2023) (declining to sustain automation-based federal and New York telemarketing claims of a plaintiff who described only live-representative calls and pleaded no non-conclusory automation facts). Nor can the FCC's soundboard and artificial-voice rulings: they construe the federal statute, not § 399-p's separate operator element, and in any event do not bind this Court. *McLaughlin*, 606 U.S. 146.

## VI. COUNT ONE FAILS AS TO THESE DEFENDANTS BECAUSE NO CALL IS PLAUSIBLY ATTRIBUTED TO ANY OF THEM

The Court has asked whether Defendants' arguments on Count One survive ¶ 28, citing *Herrera v. Navient Corps.*, No. 19-CV-6583, 2020 WL 3960507, at *6 (E.D.N.Y. July 13, 2020). Defendants take the point: ¶¶ 28–29 allege indicia of the kind* Herrera *identifies—standardized, repeating voicemails with generic scripted content. But* Herrera *addresses how the calls were made. It does not address who made them, and that is where Count One fails. A § 227(b) plaintiff must plausibly allege that the defendant—each defendant—initiated the calls or is vicariously responsible for them. The Second Circuit affirmed dismissal on precisely this ground in* Bank v. Spark Energy, LLC*, 860 F. App'x 205 (2d Cir. 2021) (summary order), where the complaint alleged prerecorded messages but failed to plausibly allege that the named defendant initiated them; and this Court dismissed on the same ground in* Alleviate Tax*, 2024 WL 1332635, at* 3–5, on call mechanics matching those alleged here.

The SAC never alleges that any voicemail identified any Defendant. It alleges the opposite: the messages hid behind fabricated "departments" (¶ 29); the callback was answered under an unregistered "Capital Loan Center" alias (¶ 31); and outbound calling was "distribut[ed] . . . among affiliated entities and lead generators" (¶ 54). The SAC thus pleads a prerecorded voice belonging to someone, and pleads affirmatively that whoever it was concealed its identity. That is an attribution failure that ¶ 28 does not and cannot cure, and it merges into the group-pleading defect

addressed in Point IV: with no facts connecting any named Defendant to the initiation of any call, Count One fails as to each of them.

Defendants preserve, briefly, their position on ¶ 28's sufficiency: its characterizations ("standardized," "mechanical," "repetitive") are conclusory under *Metzler v. Pure Energy USA, LLC*, No. 21-CV-9798 (VEC), 2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023); the SAC pleads no transcript or verbatim message, cf. *Rose v. New TSI Holdings, Inc.*, 2022 WL 912967 (S.D.N.Y. Mar. 28, 2022); and high call volume from rotating or spoofed numbers does not supply the missing content, *Demarattes v. Enhanced Recovery Co., LLC*, No. 20-CV-4722, 2022 WL 4121217 (E.D.N.Y. Sept. 9, 2022). Defendants recognize that the pleading bar at this stage is low, see *Herrera*, 2020 WL 3960507, at *6, and rest Count One's dismissal principally on attribution.

## VII. PLAINTIFF LACKS STANDING FOR HIS REQUESTED DECLARATORY AND PROSPECTIVE RELIEF

The SAC's Prayer ¶ (e) seeks (i) a declaration that Defendants' conduct "during the violations period violated" the TCPA and New York law; (ii) a declaration that Defendants "are legally obligated to maintain a compliant, written internal 'Do Not Call' policy"; and (iii) "such prospective relief as the Court deems appropriate." Each fails under Rule 12(b)(1).

First, a declaration that concluded past conduct was unlawful presents no "case of actual controversy" under 28 U.S.C. § 2201. The Declaratory Judgment Act addresses live disputes of "sufficient immediacy and reality," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); it does not authorize advisory pronouncements that past, ceased conduct—here, calls the SAC alleges ended on April 24, 2026 and never resumed (¶¶ 1, 36)—violated the law. That backward-looking function belongs to the damages claims themselves.

Second, the requested "compliant internal DNC policy" declaration is injunctive relief wearing a declaratory label: it would operate prospectively to command conduct. Substance

controls, and a plaintiff must establish standing "for each claim" and "each form of relief." *TransUnion*, 594 U.S. at 431. Past exposure to conduct that has ceased is not the "real and immediate" threat of future injury that prospective relief requires. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2d Cir. 2022); *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 281–82 (S.D.N.Y. 2024). It bears noting that the SAC dropped the injunction the prior complaint sought and substituted this declaratory language after Defendants raised *Lyons* (compare ECF No. 18 at 11–12 (Local Rule 15.1 redline)); the relabeling concedes the problem without solving it. Third, "such prospective relief as the Court deems appropriate" identifies no injury, no threatened conduct, and no remedy, and cannot supply standing for anything.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000), which Plaintiff has invoked (ECF No. 30 at 3), is not to the contrary: *Laidlaw* addressed whether a defendant's voluntary cessation mooted the claims of a plaintiff who had standing when suit was filed. It did not hold that a plaintiff has Article III standing to seek prospective relief in the first instance based on past, ceased conduct; that question is governed by *Lyons* and *TransUnion*.

## VIII. THE SAC'S OUT-OF-CASE MATERIALS SHOULD BE STRICKEN OR, AT MINIMUM, LIMITED

The Court has asked why the materials Defendants seek to strike are prejudicial and warrant the disfavored remedy of striking. Defendants respond by narrowing their request to three discrete categories, by grounding the primary request in Rule 10(c) rather than Rule 12(f), and by making the specific prejudice showings the case law requires. Defendants do not seek to strike Plaintiff's branding exhibits or the MDL motion (Exs. F, G, H, J), which they address on the merits above.

### A. The Samuel Declarations Are Not Part of the Pleading Under Rule 10(c)

Exhibits K and L are sworn declarations of a purported digital-forensics expert, Markel Samuel, prepared for the plaintiffs in two other pending actions—*Keller v. LendVia LLC* (D.S.C.) and *Aurandt v. Range View Management LLC* (W.D. Wash.)—accusing Defendants of fabricating consent evidence in those cases. (¶¶ 72–74.) Under Rule 10(c), only a "written instrument"—a document defining rights, duties, entitlements, or liabilities, such as a contract or note—may be adopted as part of a pleading; affidavits are not written instruments, *Smith v. Hogan*, 794 F.3d 249, 254–55 (2d Cir. 2015), and courts in this Circuit have applied *Smith* to strike expert declarations attached to complaints because they are advocacy created for litigation, not instruments the pleader relied on. *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 222–24 (S.D.N.Y. 2018); see *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 465–66 (E.D.N.Y. 2007) (prior pleadings attached to a complaint to supplement its factual allegations are self-serving statements without independent evidentiary value, outside the class of documents Rule 10(c) incorporates). The Court should follow *Ong*'s surgical approach: strike Exhibits K and L, decline to accept as true the allegations that rest solely on them (¶¶ 72–74), and leave the remainder of the pleading intact. This relief requires no prejudice showing at all, because the exhibits were never properly part of the SAC.

### B. The Unadjudicated-Litigation Tally and the Minnesota Consent Order Should Be Stricken Under Rule 12(f)

Defendants acknowledge that Rule 12(f) relief is disfavored and reserved for matter that is prejudicial or scandalous, and that the movant must show that (1) no evidence in support of the allegations would be admissible, (2) the allegations have no bearing on the issues, and (3) their retention would prejudice the movant. *Jalayer v. Stigliano*, 420 F. Supp. 3d 58, 64 (E.D.N.Y. 2018); see Order (Aug. 18, 2026) (citing *Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10-CV-0142, 2013

WL 1311029, at *2 (S.D.N.Y. Mar. 20, 2013)). Rule 12(f) exists precisely for "scandalous" matter, and the Second Circuit has identified it as the district courts' tool for striking such material from the record. See* Brown v. Maxwell*, 929 F.3d 41, 51 & n.42 (2d Cir. 2019). All three* Jalayer* elements are met for two narrow categories.

The 43-lawsuit tally (¶¶ 38–43; Ex. D) is a catalogue of unadjudicated accusations. A consent judgment "is not the result of an actual adjudication" and cannot be used as evidence of liability in subsequent litigation, *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), and courts in this Circuit have extended that principle to references to preliminary steps in litigations and administrative proceedings that never resulted in an adjudication on the merits, holding them immaterial as a matter of law. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78–79 (S.D.N.Y. 2003); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) (striking complaint exhibits consisting of pleadings from dismissed actions and the paragraphs based solely on them). This district has specifically stricken references to other litigations against a defendant—and deposition excerpts drawn from them—as "immaterial, impertinent or scandalous," expressly rejecting the argument Plaintiff makes here, that such material is relevant to willfulness. *Cowell v. Utopia Home Care, Inc.*, 144 F. Supp. 3d 398, 406 (E.D.N.Y. 2015). The tally's unreliability is on display in this very motion practice: the SAC pleads 43 lawsuits (¶¶ 38, 40), while Plaintiff's pre-motion response asserts "at least 46" (ECF No. 30 at 3)—the number moves with the argument, which is exactly why unadjudicated tallies are immaterial.

The Minnesota Department of Commerce Consent Order (¶¶ 44–46; Ex. E) is a product of settlement, not adjudication. See *Lipsky*, 551 F.2d at 893. Courts strike consent-order allegations offered to prove liability because Rule 408 bars the use of a compromise for that purpose, so no

admissible evidence could support the allegations' intended use. *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593–94 (S.D.N.Y. 2011) (striking unadjudicated CFTC consent-order findings offered to prove liability). Nor is *Lipsky* a per se bar to Rule 12(f) relief; where a "strong reason"—such as Rule 408 material—exists, striking at the pleading stage is appropriate. *My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023).

The prejudice is concrete and specific. First, Plaintiff has demanded a jury (SAC at 49), and the point of pleading 43 lawsuits and a state consent order is to invite the inference that Defendants are serial lawbreakers. Even background allegations are stricken when they are "unduly prejudicial" to the defendant, *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 67–68 (E.D.N.Y. 2011), and propensity material embedded in the operative pleading of a jury case is exactly that—as *Cowell* recognized in striking the same species of material. 144 F. Supp. 3d at 406. Second, the Samuel material is "scandalous" in the sense Rule 12(f) targets, see *Brown*, 929 F.3d at 51 & n.42: it is a sworn accusation, by a non-party expert Defendants have never cross-examined, that Defendants fabricated evidence and perpetrated fraud on other tribunals—unadjudicated accusations that reflect on moral character and sit in a public filing naming an operating business and a named individual. Third, leaving the material in the pleading invites mini-trials—discovery into 43 unrelated actions, a Minnesota administrative proceeding, and the consent-verification systems at issue in two out-of-district cases—none of which concerns any call to Plaintiff's number. That is quantifiable burden untethered to any claim. Cf. *Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) (other-litigation references survived where used to map corporate structure). Unlike *Trodale*, the material here is not offered to map structure—the branding and MDL exhibits, which Defendants

do not move against, do that work—but to prove willfulness through unadjudicated accusations, which *Cowell* forbids.

### C. In the Alternative, the Out-of-Case Materials Are Cognizable Only for Their Existence

If the Court declines to strike, Defendants respectfully request a ruling that the other-litigation materials—including the MDL motion—are cognizable only for the fact that the proceedings exist, not for the truth of their contents. *Global Network*, 458 F.3d at 157; *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 159 nn.1–2 (S.D.N.Y. 2021) (taking judicial notice of filings in other proceedings to establish their existence, not the truth of their contents); see *Ong*, 294 F. Supp. 3d 199 (declining to accept as true allegations resting on a stricken declaration); *Toohey v. Portfolio Recovery Assocs., LLC*, 2016 WL 4473016 (S.D.N.Y. Aug. 22, 2016) (treating consent-order allegations as pleaded on information and belief).

## IX. IN ALL EVENTS, THE SAC'S CUMULATIVE DAMAGES DEMANDS ARE IMPROPER

The SAC seeks $1,500 per call under the TCPA counts—"no less than $1,095,000"—and then demands that "independent and cumulative" awards under GBL §§ 399-p and 349 be stacked on top for the same 730 calls. (¶ 24; Prayer ¶¶ (a)–(d).) Plaintiff concedes the governing principle for the federal counts: Counts Two and Three are "an alternative theory of recovery . . . rather than an independent basis for additional damages." (¶¶ 98, 107.) The same principle governs the state counts, which provide alternative statutory measures—$50 per violation, subject to willfulness enhancement—for the same calls and the same asserted injuries. A plaintiff may not multiply recovery for a single call across overlapping statutes addressed to the same harm. Should any count survive, the Court should dismiss or strike the demand for cumulative per-call recoveries under Counts Four and Five.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Second Amended Complaint in whole or in substantial part: Counts Two, Three, Four, and Five in their entirety; all claims against Defendant Ghafarinia under Rules 12(b)(2) and 12(b)(6); all claims against LendVia, Range View Management, Better Tax Relief, and Better Companies; Count One as to all Defendants for failure of attribution; and the demands for declaratory and prospective relief under Rule 12(b)(1). Because Plaintiff has amended twice and his leave to further amend expired on July 3, 2026, dismissal should be with prejudice. Defendants further request that the Court strike Exhibits D, E, K, and L and paragraphs 38–46 and 72–74, or in the alternative limit the out-of-case materials to the fact of their existence, and grant such other relief as the Court deems just.

Respectfully submitted,

ISKANDER LAW

Dated: September 10, 2026

/s/____________________

Mario Iskander, Esq.
1111 N. Brand Blvd., Suite 308
Glendale, California 91202
(240) 439-1970
mario@iskanderlaw.com

*Attorney for Defendants*

To: Edward B. Hubbuch, Plaintiff pro se (via ECF, U.S. Mail & email)