UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br>*Plaintiff,*<br>*v.*<br>BETTER DEBT SOLUTIONS LLC, its agents, affiliates, and marketers; LENDVIA LLC; RANGE VIEW MANAGEMENT LLC; BETTER TAX RELIEF LLC; BETTER COMPANIES LLC; MOHAMMAD GHAFARINIA a/k/a MATT GHAFARINIA a/k/a MATT NIA; and JOHN DOES 1-9,<br>*Defendants.* | Case No. 26-CV-2389-PKC-TAM<br><br>**DECLARATION OF EDWARD B. HUBBUCH** |

I, Edward B. Hubbuch, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, as follows:

## 1. My Telephone Number and DNC Registration

1. I have used the cellular telephone number ending in 7597 (the "7597 Number") as my personal cellular number since approximately 2010. The 7597 Number is on a family wireless plan (formerly with AT&T Wireless until April 2026, now with T-Mobile) that includes my wife's cellular number and my pre-teen son's Apple Watch with cellular service. It is not a dedicated business line, a VoIP account, or a number listed in any commercial directory.

2. I lost my job in January 2017. I was unemployed when I registered the 7597 Number on the National "Do Not Call" Registry on May 13, 2017. I registered it in my personal

capacity as an individual consumer to stop unsolicited telemarketing calls to my personal cell phone. A true and correct copy of my National DNC Registry confirmation was previously filed with the Court as ***Exhibit A*** to the Second Amended Complaint (*Dkt. 24-1*.)

3. I did not become a sole proprietor until May 2018—more than one year after the DNC registration. My use of the 7597 Number for occasional business communications as a sole proprietor was secondary and out of necessity. The number has always remained my personal and family line.

**2. The December 24, 2025 Call Was Investigative, Not Consensual**

4. Between July 1, 2025, and December 24, 2025, I received approximately 480 automated telemarketing calls to the 7597 Number from unknown callers using spoofed caller IDs and prerecorded voicemail scripts. I never applied for any financial services from any Defendant, never visited any Defendant's website, never clicked any "clickwrap" or online consent form, and never signed any document or agreement with any Defendant.

5. On December 24, 2025, I placed a brief, investigative callback to a number left on one of the voicemails for the sole purpose of identifying the company that had been harassing me. The call was answered by a person identifying himself as "Anthony," who claimed to be an underwriter for "Capital Loan Center." During that call:

    (a) "Anthony" read back an address associated with my number that I did not recognize: "7801 Risden Road" in Vermilion, Ohio. I have never lived at that

address, never provided it to anyone, and have never even visited Vermilion, Ohio. I told "Anthony" I did not recognize the address;

(b) I explicitly refused to provide my Social Security Number when asked;

(c) The call terminated without my completing any loan application, executing any contract, or authorizing any future communications; *and*

(d) I asked "Anthony" to email me a form so that I could document the identity of the company calling me. I did not request a loan. I did not request further telemarketing calls. I was investigating the source of six months of harassment.

6. Any internal record Defendants may claim to possess from that call was generated by their own employee or system, not by me. I never executed a digital opt-in form, never signed a written agreement, and never voluntarily provided my information to any Defendant for the purpose of obtaining financial services.

**3. The January 1, 2026 Cease-and-Desist Letter and Continued Calls**

7. On January 1, 2026, after confirming that "Capital Loan Center" was part of the BETTER DEBT SOLUTIONS enterprise, I transmitted a formal cease-and-desist letter to Defendants' registered counsel, Nima Asadi, Esq., demanding that all telemarketing to the 7597 Number immediately cease. A true and correct copy of that letter is attached as ***Exhibit 1***.

8. Defendants completely ignored the January 1, 2026 letter. They placed at least 200 additional documented telemarketing calls to the 7597 Number between January 1, 2026,

and January 23, 2026. The calls continued unabated through late April 2026. True and correct copies of my AT&T call records through January 23, 2026, were previously filed with the Court as ***Exhibit B*** to the Second Amended Complaint (*Dkt. 24-2*.)

9. Pursuant to the Court's August 18, 2026 Order, Defendants' reply, if any, is due October 26, 2026. The parties will file the complete motion bundle on ECF upon completion of briefing.

**4. The Pinpoint Cessation Upon Service**

10. On April 24, 2026, Defendant BETTER DEBT SOLUTIONS LLC was served with the original Complaint in this action. Within hours of that service, all telemarketing calls to the 7597 Number—from every rotating number, every spoofed caller ID, and every affiliated brand—ceased completely and simultaneously. The calls have not resumed.

11. I have no explanation for the simultaneous cessation across all numbers and brands other than centralized operational control. I received no communication from any Defendant explaining why the calls stopped. The calls simply ended the moment legal exposure became concrete.

**5. I Never Gave Prior Express Consent**

12. At no point before, during, or after the December 24, 2025 call did I give "prior express written consent" to any Defendant to place automated or prerecorded telemarketing calls to the 7597 Number. I have never sought a loan from any Defendant. I have never provided my telephone number to any Defendant for the purpose of obtaining financial

services. I have never executed any written agreement, digital opt-in form, or arbitration contract with any Defendant.

13. I have never visited any website operated by BETTER DEBT SOLUTIONS, LENDVIA, RANGE VIEW MANAGEMENT, BETTER TAX RELIEF, BETTER COMPANIES, or any affiliated entity. I have never clicked any online advertisement, filled out any web form, or provided any contact information to any lead generator associated with these entities.

**6. Response to Declaration**

14. I have reviewed the Declaration of MOHAMMAD GHAFARINIA filed in support of Defendants' Motion to Dismiss. His denials are directly contradicted by the facts alleged in my Second Amended Complaint and by the public record:

(a) GHAFARINIA admits he is a "co-founding member" of BETTER DEBT SOLUTIONS LLC and BETTER TAX RELIEF LLC. His own company's LinkedIn page published a video in December 2025—during the violations period—showing him personally presiding over a corporate event where all Enterprise brands were displayed as a unified family.

(b) The July 2024 Multi-District Litigation Motion filed by entities he co-founded admitted to a federal tribunal that they share common telemarketing infrastructure, call logs, and DNC policies.

(c) The simultaneous cessation of all calls across all brands upon service of the Complaint demonstrates centralized control that GHAFARINIA does not explain.

(d) I specifically allege in my Second Amended Complaint that GHAFARINIA "personally selected New York as a target market," "personally directed the deployment of prerecorded voice calls into New York," and "personally benefited from the enrollment of New York consumers." These allegations are based on his public marketing materials, his judicial admissions, and the operational reality of the Enterprise he created.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: September 11, 2026
Brooklyn, New York

/s/***Edward B. Hubbuch***
394 Lincoln Place #A5
Brooklyn, New York 11238
bhubbuch@gmail.com
(646) 544-7597

Plaintiff, *pro se*

TO: MARIO ISKANDER, Esq.
Iskander Law
1111 N. Brand Blvd., Ste. 308
Glendale, Calif. 91202
mario@iskanderlaw.com
(240) 439-1970

*Attorney for Defendants* BETTER DEBT SOLUTIONS LLC,
LENDVIA LLC,
RANGE VIEW MANAGEMENT LLC,
BETTER TAX RELIEF LLC,
BETTER COMPANIES LLC, and
MOHAMMAD GHAFARINIA
a/k/a MATT GHAFARINIA a/k/a MATT NIA

# EXHIBIT 1

**From:** **Bart Hubbuch** bhubbuch@gmail.com
**Subject:** Pre-Federal Litigation Demand – Better Debt Solutions LLC & Mohammad "Matt" Ghafarinia
**Date:** January 1, 2026 at 2:56 PM
**To:** nima@asadilawgroup.com

BH

**Re: Pre–Federal Litigation Demand – Better Debt Solutions LLC & Mohammad "Matt" Ghafarinia**

Dear Mr. Asadi:

Attached please find my formal pre-litigation demand letter dated January 1, 2026, regarding the unlawful telemarketing conduct of your clients, Better Debt Solutions LLC and Mohammad "Matt" Ghafarinia. The letter includes a detailed draft federal complaint for filing in U.S. District Court for the Eastern District of New York and the supporting enclosures referenced therein.

As noted in the letter, I am requesting a substantive written response by **January 15, 2026 at 5:00 p.m. ET**.

Regards,

Edward B. (Bart) Hubbuch
Brooklyn, New York
bhubbuch@gmail.com
(646) 544–7597

PRE-FEDERAL
LITIGA....26.pdf

EDWARD B. HUBBUCH

394 LINCOLN PLACE, APT. A5
BROOKLYN, N.Y. 11238
(646) 544-7597
bhubbuch@gmail.com

---

**VIA EMAIL AND CERTIFIED MAIL**

January 1, 2026

Mr. Nima Asadi, Esq.
Asadi Law Group, APC
19200 Von Karman Ave., Suite 600
Irvine, Calif. 92612-8516

***Re: PRE-LITIGATION DEMAND FOR TCPA VIOLATIONS BY BETTER DEBT SOLUTIONS LLC AND MOHAMMAD "MATT" GHAFARINIA To Be Filed Imminently in U.S. District Court for the Eastern District of New York***

Dear Mr. Asadi:

This letter serves as a formal pre-litigation settlement demand concerning the persistent, willful, and unlawful telemarketing campaign conducted by your clients, Better Debt Solutions LLC and owner/managing officer Mohammad "Matt" Ghafarinia.

Over the past six months, I have received more than three hundred fifty (350) unsolicited robocalls and approximately fifty (50) unsolicited text messages from Better Debt Solutions, its agents, and its affiliated network. My cellular number has been registered on the National "Do Not Call" Registry since May 13, 2017. Despite my repeated opt-out requests — including verbal demands and "STOP" replies — and my clear registration on the DNC list, this flood of illegal communication has continued unabated. The calls and texts involved artificial/prerecorded voices, spoofed caller ID, and promoted your clients' debt-relief services, for which I have never applied nor consented to contact.

Your clients' conduct violates numerous provisions of the Telephone Consumer Protection Act, 47 U.S.C. §227, and New York state law, including N.Y. Gen. Bus. Law §399-p, §399-z, and §349. A detailed draft complaint, which I am prepared to file in U.S. District Court for the Eastern District of New York, is attached for your review.

The key factors supporting a substantial demand are:

- **Volume and Persistence:** More than 350 separate unlawful communications;
- **Willful and Knowing Violations:** Calls continued after opt-out requests, spoofing was used to evade blocking, and my DNC registration was ignored;
- **Pattern of Misconduct:** My research indicates Better Debt Solutions and its known affiliates have been a defendant in at least fifteen (15) prior TCPA lawsuits, including at least three class-action

complaints. This history demonstrates your clients' awareness of their legal obligations and a deliberate business model that prioritizes illegal telemarketing over compliance;

- **Significant Statutory Exposure:** The TCPA provides for statutory damages of $500 per violation, which may be trebled to $1,500 per violation for willful or knowing misconduct. Critically, the attached complaint also asserts violations under New York state law — widely recognized as among the strongest consumer-protection legal regimes in the country. These include claims under N.Y. Gen. Bus. Law §399-p, §399-z, and §349, all of which provide for separate statutory damages and treble damages. The draft complaint sets forth twelve (12) separate causes of action arising from this campaign, creating a substantial and multi-layered exposure for your clients;

- **Demonstrated Litigation Credibility:** Please understand that the filing of this federal litigation is not an idle threat. I am an active, experienced *pro se* litigant who not only files federal complaints but litigates complex consumer cases through discovery and dispositive motions in federal court. I am also a former longtime investigative journalist currently prosecuting the following federal consumer-protection actions that demonstrate my litigation capability and tenacity:

    1. *Hubbuch v. Kohn, et al.,* Case No. 1:25-CV-4924 (JMF) (SLC) (S.D.N.Y.): A direct action for identity theft, fraudulent credit reporting (FCRA), and illegal debt collection (FDCPA) against my commercial landlord and his corporate entities. This case, involving fabricated tradelines and a Wyoming shell company address, is deep in discovery and has a fully briefed Motion for Partial Summary Judgment pending before the court. It exemplifies my ability to litigate fact-intensive consumer claims to an advanced stage;

    2. *Hubbuch v. Regions Financial Corp., et al.*, Case No. 1:25-CV-2724 (PKC) (TAM) (E.D.N.Y.): A multi-defendant action alleging FDCPA violations, fraudulent licensing, and reckless entrustment against a national bank and its debt collector. The proposed Second Amended Complaint was filed on October 10, 2025, and the case is advancing;

    3. *Hubbuch v. Mullooly, Jeffrey, Rooney & Flynn LLP, et al.*, Case No. 1:25-CV-5547 (JHR) (BCM) (S.D.N.Y.): A multi-defendant action alleging FCRA, FDCPA, and GBL §349 violations against a major bank and its debt-collection law firm. The operative Second Amended Complaint *(Dkt. 76)* was filed on October 24, 2025, and remains active; and

- **Imminent Escalation to Class Action:** Additionally, I have already consulted on this matter with my upstairs Brooklyn neighbor and friend, Christopher Leung, Esq., a former New York State Assistant Attorney General who specializes in complex litigation and class actions aimed at protecting consumers. Mr. Leung *(see biography attached)* has reviewed my draft litigation in this matter and is prepared to assume representation and file an amended class-action complaint should this individual claim not resolve.

Given Mr. Leung's keen interest, this matter stands ready to rapidly escalate from an individual lawsuit to a major class action, exposing Better Debt Solutions and Mr. Ghafarinia to potentially catastrophic liability across the entire calling portfolio.

**SETTLEMENT DEMAND**

To avoid the time, expense, publicity, discovery burdens, and the profound risk of class-action litigation, I am demanding a total payment of **$750,000** to settle all potential claims arising from this conduct.

This demand is calibrated to the violation metrics, the documented willfulness, and the resultant harm. It also represents a fraction of the statutory exposure, a fraction of the litigation costs I am prepared to inflict (as evidenced by my ongoing federal cases), and a nominal premium to avoid the massive liability of a class action overseen by Mr. Leung — a liability your clients' settlement history indicates is their primary operational vulnerability.

In return for this payment, I will provide a full release of all individual claims against Better Debt Solutions, Mr. Ghafarinia, and their related agents and affiliates, and will not file the attached lawsuit.

This offer remains open for 14 days from the date of this letter. If I do not receive a substantive written response agreeing to these terms by **5 p.m. ET on January 15, 2026**, I will immediately file the individual complaint in the Eastern District of New York. Upon filing, I intend to immediately amend the complaint to add class allegations and then formally refer the matter to Christopher Leung for prosecution. All rights to seek injunctive relief, treble damages, costs, and class certification are expressly reserved.

Should your client reject this offer or allow it to lapse, *please consider this formal notice of your obligation to preserve all documents, data, and tangible things related to this dispute, pursuant to Rule 37(e) of the Federal Rules of Civil Procedure and common law*. This litigation hold applies to all electronically stored information ("ESI"), call logs, telemarketing scripts, vendor/affiliate contracts, and any records related to the numbers and calling campaigns at issue, and must be communicated to all relevant custodians, including your client and any third-party service providers.

I believe a swift resolution is in both parties' best interests. I can be reached at the email address and phone number above to discuss settlement.

Sincerely,

Edward B. Hubbuch
Brooklyn, N.Y.

**Enclosures**:

1. Draft Complaint against Better Debt Solutions LLC and Mohammed "Matt" Ghafarinia (E.D.N.Y.)
2. S.A.C. in *Hubbuch v. Kohn, et al.*, 25-CV-4924, S.D.N.Y. (for reference)
3. S.A.C. in *Hubbuch v. Regions Financial Corp., et al.*, 25-CV-2724, E.D.N.Y. (for reference)
4. S.A.C. in *Hubbuch v. MJRF LLP, et al.*, 25-CV-5547, S.D.N.Y. (for reference)
5. Professional biography of Christopher Leung, Esq.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br>Plaintiff,<br><br>*v.*<br><br>BETTER DEBT SOLUTIONS LLC,<br>MOHAMMAD GHAFARINIA,<br>and JOHN DOES 1-9,<br><br>Defendants. | Case No. _____-CV-_____________<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br>***(Federal Telephone Consumer Protection Act & Related State Law Claims)***<br><br>**[ TRIAL BY JURY DEMANDED ]** |

Plaintiff Edward B. Hubbuch, proceeding *pro se*, respectfully brings this civil action against BETTER DEBT SOLUTIONS LLC, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 for repeated and unlawful violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, its implementing regulations, and New York state law, arising from Defendants' initiation of approximately three hundred fifty (350) unsolicited and automated telemarketing calls and text messages to Plaintiff's registered telephone number within the past six months. Plaintiff asserts twelve (12) causes of action under federal and state law, including violations of the TCPA's prohibitions on robocalls, autodialed text messages, "Do Not Call" Registry violations, caller ID spoofing, failure to maintain an internal "do not call" policy, vicarious liability, and willful misconduct, as well as violations of N.Y. Gen. Bus. Law §399-p, §399-z, and §349, and common law invasion of privacy.

## I. INTRODUCTION

1. This civil action seeks damages and injunctive relief under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, its implementing regulations, and New York state law, arising from the persistent, willful, and unlawful telemarketing campaign by

Defendants BETTER DEBT SOLUTIONS LLC ("BETTER DEBT SOLUTIONS"), its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9. Defendants targeted Plaintiff through the repeated use of automated telephone dialing systems, prerecorded and artificial voice messages, caller ID spoofing, and mass text-messaging blasts. Despite having no prior relationship with Plaintiff and no lawful basis to contact him, Defendants engaged in a sustained pattern of intrusive and harassing communications designed to promote their debt-relief and financial services.

2. Plaintiff has been continuously registered on the National "Do Not Call" Registry since May 13, 2017, yet Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 knowingly and repeatedly disregarded this registration. Over the previous six months alone, Defendants initiated approximately three hundred fifty (350) unsolicited and automated calls, and sent approximately fifty (50) unsolicited text messages to Plaintiff's personal and business telephone number. These communications were placed using spoofed or rotating numbers, prerecorded/artificial voices, and automated messaging platforms—hallmarks of unlawful telemarketing activity expressly prohibited by the TCPA and New York law.

3. The conduct of Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 was not accidental, isolated, or inadvertent. Plaintiff repeatedly attempted to stop the communications, including by using opt-out mechanisms in the text messages and verbally requesting that the calls cease. Defendants ignored every such request and continued their campaign

unabated, demonstrating a knowing and willful disregard for Plaintiff's rights and for federal and state law.

4. As a result of the actions of Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9, Plaintiff suffered repeated invasions of privacy, disruption of his business operations, and the ongoing burden of managing and blocking unwanted calls and texts. Plaintiff therefore seeks statutory damages under the TCPA and New York General Business Law, treble damages for Defendants' willful or knowing violations, compensatory and punitive damages for common law invasion of privacy, *pro se* legal costs under N.Y. Gen. Bus. Law §349, and injunctive relief to permanently halt Defendants' unlawful practices.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §1331 and 47 U.S.C. §227(b)(3).

6. Venue is proper in this District under 28 U.S.C. §1391(b) because Plaintiff resides in this District, received the unlawful calls and texts here, and Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 conduct business in or directed communications into this District.

## III. PARTIES

7. Plaintiff Edward B. Hubbuch is a resident of Brooklyn, N.Y., and a small-business owner.

8. Defendant BETTER DEBT SOLUTIONS LLC is a California limited liability company with its principal place of business located at 2525 Main Street, Suite 500, Irvine, Calif.

92614, and registered with the California Secretary of State under Entity No. 202250118638. The company is engaged in consumer and small-business debt-relief and financial services and conducts business nationwide, including directing telemarketing communications into New York.

9. Defendant MOHAMMAD GHAFARINIA (a/k/a MATT GHAFARINIA) is a natural person, resident of California, and owner, managing officer, and controlling person of Defendant BETTER DEBT SOLUTIONS who personally directed and participated in the calls alleged herein, and who can be properly served at 7 Harcourt, Newport Coast, Calif. 92657.

10. Defendants JOHN DOES 1-9 are unknown entities and individuals who, upon information and belief, participated in, directed, authorized, or benefitted from the unlawful telemarketing calls and text messages described herein, including affiliates, agents, marketers, lead generators, and related entities. Plaintiff will amend this Complaint to identify them once their identities are discovered.

## IV. FACTUAL BACKGROUND

### *1. Plaintiff-Specific Allegations*

11. Plaintiff uses a single cellular telephone number ending in 7597 for both personal and business communications as a sole proprietor. This number has been continuously registered on the National "Do Not Call" Registry since May 13, 2017.[1]

[1] See ***Exhibit A***

12. Beginning in or around June 2025 and continuing through the filing of this Complaint, Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 initiated approximately three hundred fifty (350) unsolicited calls and approximately fifty (50) unsolicited text messages to Plaintiff's personal number. Many of these calls used automated dialing systems and prerecorded or artificial voice messages offering high-interest business-loan or debt-relief services. The text messages contained similar loan or debt-relief solicitations, often including links or marketing language identifying the sender's services, and were sent using automated messaging platforms.[2]

13. Plaintiff consistently used the *"opt out"* mechanism provided in the text messages—such as replying "STOP" or following unsubscribe instructions—yet Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 refused to honor these requests and continued sending text messages. When Plaintiff blocked one number, Defendants used spoofed or rotating numbers to continue both the calling and texting campaigns, preventing Plaintiff from effectively stopping the harassment. Defendants also transmitted misleading or false caller ID information, in violation of federal regulations requiring accurate transmission of caller identity.

14. Plaintiff never provided prior express consent to receive such calls or text messages. Plaintiff has never contacted Defendant BETTER DEBT SOLUTIONS, nor any entity affiliated with it, through any website, online form, or telephonically. Plaintiff has never

---

[2] These calls are reflected in Plaintiff's AT&T Wireless monthly billing records between June 2025 and the date of this filing, which are attached hereto as ***Exhibit B***.

sought or applied for any loan, debt-relief, or financial services from Defendants or their agents. Consequently, Plaintiff has never entered into any agreement, terms of service, or contract that would contain an arbitration clause with Defendants or any entity acting on their behalf, and is therefore not subject to any such arbitration agreement.

15. On December 24, 2025, after receiving yet another unsolicited call, Plaintiff called a number provided in the Defendants' voicemail message and spoke with a representative of Defendant BETTER DEBT SOLUTIONS.[3] During that call, Plaintiff feigned interest in order to obtain more information about the company responsible for the repeated solicitations. The representative provided Plaintiff with a website link, which directed Plaintiff to the website of BETTER DEBT SOLUTIONS, thereby confirming that BETTER DEBT SOLUTIONS was responsible for, or directly benefitted from, the telemarketing campaign.

16. Plaintiff has repeatedly requested that Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 cease contacting him, but the calls and text messages continue unabated as of the filing of this Complaint. Defendants failed to maintain a written internal "do not call" policy, failed to train their agents on honoring "do not call" requests, and failed to provide Plaintiff with a copy of such policy upon demand, as required by 47 C.F.R. §64.1200(d). Defendants also ignored Plaintiff's registration on the National "Do Not Call" Registry and initiated more than two telemarketing calls within a twelve-month period, in violation of 47 U.S.C. §227(c)(5) and N.Y. Gen. Bus. Law §399-z.

---

[3] See ***Exhibit C***

17. The illegal conduct of Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 has caused Plaintiff annoyance, invasion of privacy, disruption of business operations, and missed important calls due to the need to activate "Do Not Disturb" mode to avoid constant interruptions. Defendants' repeated and harassing calls intruded upon Plaintiff's seclusion and private affairs, constituting an invasion of privacy under New York common law.

18. Each call and each text message constitutes a separate violation of the TCPA, its implementing regulations, and New York law.

### *2. Pattern and Practice of Unlawful Telemarketing*

19. The misconduct of Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 directed at Plaintiff is emblematic of a broader nationwide pattern and practice of unlawful telemarketing that extends far beyond Plaintiff. Defendants' conduct is not an isolated incident but part of a coordinated campaign that has targeted thousands of consumers across multiple states using the same tactics alleged herein.

20. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 have been named in at least fifteen (15) TCPA lawsuits filed within the past three years, including at least three (3) class-action complaints, each alleging substantially similar violations: autodialed calls without consent, prerecorded/artificial voice messages, spoofed caller ID numbers, failure to honor opt-out requests, and repeated calls to numbers listed on the National "Do Not

Call" Registry.[4] These lawsuits include actions filed in federal courts in Texas, California, and Florida, among others, and demonstrate that Defendants were on clear notice of their obligations under the TCPA and its implementing regulations.

21. Despite this litigation history, Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 have continued their unlawful practices unabated. The recurrence of identical allegations across jurisdictions establishes that Defendants' misconduct is systemic, deliberate, and designed to maximize profits at the expense of consumer privacy. Defendants' use of rotating phone numbers, affiliate networks, and deceptive marketing scripts further evidences a calculated scheme to evade detection and regulatory enforcement.

22. Upon further information and belief, and as evidenced by other lawsuits filed against Defendant BETTER DEBT SOLUTIONS, Defendant MOHAMMAD GHAFARINIA is the owner, managing officer, and controlling person of BETTER DEBT SOLUTIONS.

23. Defendant MOHAMMAD GHAFARINIA personally directed the unlawful telemarketing calls and text messages, wrote the scripts for telemarketing agents, trained agents on their use, purchased and directed the use of equipment for prerecorded calls, and oversaw the selection of target states and calling hours.

24. Defendant MOHAMMAD GHAFARINIA knowingly and willfully violated the TCPA regulations, intentionally refused to alter Defendants' unlawful behavior, and directly benefitted from these illegal practices.

---

[4] See ***Exhibit D***

25. Defendant MOHAMMAD GHAFARINIA either directly ordered his agents to ignore the National "Do Not Call" Registry, or indirectly allowed its disregard, without purchasing or reviewing the Registry.

26. As the owner and managing officer of Defendant BETTER DEBT SOLUTIONS, Defendant MOHAMMAD GHAFARINIA controls the day-to-day operations and directs employees, agents, salespersons, and solicitors to make TCPA-violating phone calls, acting as the individual who schemed, planned, directed, initiated, and controlled the illegal and fraudulent telemarketing campaign that targeted Plaintiff.

27. This pattern and practice of unlawful telemarketing underscores the willful nature of the violations, supports treble damages under the TCPA, and justifies punitive damages under New York common law against Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9. It also establishes that injunctive relief is necessary to prevent Defendants from continuing to harm Plaintiff and other consumers nationwide.

### *3. Defendants' Scheme and Affiliate Network*

28. Upon information and belief, Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 operate through a coordinated scheme involving a nationwide network of related entities, lead generators, and marketing affiliates. This network is deliberately structured to obscure responsibility, evade consumer complaints, and perpetuate unlawful telemarketing practices across multiple jurisdictions.

29. Defendants' scheme relies on the use of shell companies, "DBA" names, and affiliated LLCs that share common ownership, management, branding, and telemarketing infrastructure. These entities include, but are not limited to, **CREDIT ONE LENDING LLC**, **RISEUP FINANCIAL GROUP LLC**, **BETTER RISE CAPITAL LLC**, **ONE STREET FINANCIAL LLC**, **MN MGMT LLC**, **RC MGMT LLC**, **LENDVIA LLC**, **RANGE VIEW MANAGEMENT LLC**, **BETTER DEBT RELIEF LLC**, **BETTER TAX RELIEF LLC**, **CAPITAL LOAN CENTER LLC**, and A**LLEVIATE FINANCIAL SERVICES LLC**. Collectively, these entities form a debt-relief marketing enterprise designed to funnel consumers into Defendants' programs while shielding Defendant BETTER DEBT SOLUTIONS from direct liability.

30. Defendant MOHAMMAD GHAFARINIA, as owner, managing officer, and controlling person of Defendant BETTER DEBT SOLUTIONS, orchestrates this affiliate network. By outsourcing calls and texts to affiliates and lead generators, Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 attempt to create plausible deniability while continuing to benefit financially from every unlawful communication.

31. This affiliate scheme is central to the business model of Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9. The scheme enables Defendants to:

- **Initiate mass robocalls and text blasts using automated platforms;**
- **Rotate caller ID numbers to avoid detection;**
- **Ignore the National "Do Not Call" Registry and internal opt-out requests;**

- **Misrepresent their identity and services to consumers;** and
- **Evade accountability by shifting blame among affiliated entities.**

32. The existence of this affiliate network demonstrates that Defendants' misconduct is not the product of rogue agents or isolated errors, but a deliberate enterprise designed to maximize profits through unlawful telemarketing. As such, Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 are vicariously liable under federal common law principles of agency for the TCPA violations committed by their affiliates, agents, and marketers. Plaintiff will amend this Complaint to name additional entities once their specific roles are identified through discovery.

### *4. Enterprise Identity and Control*

33. The affiliate network operates as a unified enterprise under the control of Defendant MOHAMMAD GHAFARINIA and comprised of Defendant BETTER DEBT SOLUTIONS and its affiliated entities. These entities share common ownership, management, branding, and infrastructure, and act in concert to solicit consumers nationwide. GHAFARINIA exercises principal control over this enterprise as managing officer directing day-to-day operations, authorizing telemarketing practices, and coordinating with affiliates to expand the reach of the campaign.

34. The overlapping use of trade names, rotating LLCs, and shared marketing platforms creates uncertainty as to the precise corporate identities and lines of control within the enterprise. Plaintiff therefore seeks discovery sufficient to clarify the identities of the individuals and entities exercising principal control, the scope of affiliations among the

listed LLCs, and the operational structure by which telemarketing decisions are made. Such discovery is necessary to confirm enterprise identity, establish vicarious liability, and ensure that all responsible parties are properly before the Court.

## V. CAUSES OF ACTION

### COUNT ONE

***Violations of the TCPA, 47 U.S.C. §227(b)(1)(A)(iii)***

35. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

36. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 used an automatic telephone dialing system ("ATDS") and/or an artificial or prerecorded voice to make calls and send text messages to Plaintiff's cellular and business telephone numbers without Plaintiff's prior express consent.

37. Each call and each text message constitutes a separate violation of the TCPA.

38. Plaintiff is entitled to $500 in statutory damages per call or text, and up to $1,500 per call or text for willful or knowing violations.

**COUNT TWO**

***Violations of the TCPA, 47 U.S.C. §227(c)(5)***

39. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

40. Plaintiff's telephone numbers have been registered on the National "Do Not Call" Registry since May 13, 2017.

41. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 initiated more than two unsolicited telemarketing calls and text messages within a 12-month period to Plaintiff's registered numbers.

42. Plaintiff is entitled to statutory damages of $500 per violation, trebled to $1,500 per violation for willful or knowing misconduct.

**COUNT THREE**

***Violations of 47 C.F.R. §64.1200(d)***
***(Failure to Maintain Internal 'Do Not Call' Policy)***

43. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

44. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 failed to maintain a written internal "do not call" policy, failed to train their agents and employees on honoring "do not call" requests, and failed to provide Plaintiff with a copy of such policy upon demand, as required by 47 C.F.R. §64.1200(d).

45. Each call and text message made without compliance constitutes a separate violation of the TCPA.

46. Plaintiff is entitled to $500 in statutory damages per violation, and up to $1,500 per violation for willful or knowing misconduct.

**COUNT FOUR**

***Violations of 47 C.F.R. §64.1601(e) (Caller ID Spoofing)***

47. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

48. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 transmitted misleading or spoofed caller ID information in connection with telemarketing calls, preventing Plaintiff from accurately identifying the caller, in violation of 47 C.F.R. §64.1601(e).

49. Each spoofed call constitutes a separate violation of the TCPA.

50. Plaintiff is entitled to $500 in statutory damages per violation, and up to $1,500 per violation for willful or knowing misconduct.

**COUNT FIVE**

***Violations of 47 U.S.C. §227(b)(1)(B)***
***(Robocalls to Residential Lines)***

51. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

52. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 initiated non-emergency calls to Plaintiff's residential telephone line using an artificial or prerecorded voice without Plaintiff's prior express consent, in violation of 47 U.S.C. §227(b)(1)(B).

53. Each call constitutes a separate violation of the TCPA.

54. Plaintiff is entitled to $500 in statutory damages per call, and up to $1,500 per call for willful or knowing violations.

**COUNT SIX**

***Violations of the TCPA by Text Messages***

55. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

56. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 sent numerous unsolicited text messages to Plaintiff's cellular telephone using an ATDS and/or prerecorded content without Plaintiff's prior express consent.

57. Each text message constitutes a separate violation of the TCPA.

58. Plaintiff is entitled to $500 in statutory damages per text message, and up to $1,500 per text message for willful or knowing violations.

**COUNT SEVEN**

***Vicarious Liability Under the TCPA***

59. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

60. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 acted jointly and in concert with affiliated entities, including lead generators, call centers, and marketing vendors, and are vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers.

61. Each call and text message constitutes a separate violation of the TCPA.

62. Plaintiff is entitled to $500 in statutory damages per violation, and up to $1,500 per violation for willful or knowing misconduct.

**COUNT EIGHT**

***Willful and Knowing Violations of the TCPA***

63. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

64. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 repeatedly contacted Plaintiff after Plaintiff's opt-out requests, despite Plaintiff's registration on the National "Do Not Call" Registry, and despite Defendants' history of prior TCPA lawsuits nationwide.

65. Such conduct demonstrates willful and knowing violations of the TCPA.

66. Plaintiff is entitled to treble damages of $1,500 per call and text message under 47 U.S.C. §227(b)(3) and 47 U.S.C. §227(c)(5).

**COUNT NINE**

***Violations of N.Y. Gen. Bus. Law §399-p***
***(Telemarketing Disclosures)***

67. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

68. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 initiated unsolicited telemarketing calls to Plaintiff without providing the disclosures required by N.Y. Gen. Bus. Law §399-p, including failing to clearly identify the caller, the entity on whose behalf the call was made, and a valid callback number.

69. Defendants further failed to honor Plaintiff's repeated do-not-call requests.

70. Each call constitutes a separate violation of N.Y. Gen. Bus. Law §399-p.

71. Plaintiff is entitled to statutory damages, injunctive relief, and treble damages for willful or knowing misconduct.

**COUNT TEN**

***Violations of N.Y. Gen. Bus. Law §399-z***
***(New York's 'Do Not Call' Law)***

72. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

73. Plaintiff's telephone numbers have been continuously registered on the National "Do Not Call" Registry since May 13, 2017.

74. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 nevertheless initiated repeated telemarketing calls and text messages to Plaintiff's registered numbers in violation of N.Y. Gen. Bus. Law §399-z.

75. Each call and text message constitutes a separate violation of N.Y. Gen. Bus. Law §399-z.

76. Plaintiff is entitled to statutory damages of $500 per violation, trebled to $1,500 per violation for willful or knowing misconduct, as well as injunctive relief.

## COUNT ELEVEN

***Violations of N.Y. Gen. Bus. Law §349***
***(Deceptive Acts and Practices)***

77. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

78. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 engaged in deceptive acts and practices in violation of N.Y. Gen. Bus. Law §349 by misrepresenting their identity, spoofing caller ID numbers, falsely claiming Plaintiff had applied for debt-relief services, and ignoring Plaintiff's opt-out requests.

79. Such conduct was consumer-oriented, materially misleading, and caused Plaintiff actual injury including invasion of privacy, disruption of business operations, and loss of legitimate communications.

80. Plaintiff is entitled to statutory damages, treble damages up to $1,000 for willful violations, attorneys' fees, and injunctive relief.

**COUNT TWELVE**

***Common Law Invasion of Privacy***
***(Intrusion Upon Seclusion)***

81. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

82. Defendants BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 repeatedly and unlawfully intruded upon Plaintiff's seclusion and private affairs by initiating hundreds of unsolicited robocalls and text messages despite Plaintiff's registration on the National "Do Not Call" Registry and repeated requests to cease.

83. Defendants' conduct would be highly offensive to a reasonable person and did in fact offend and distress Plaintiff.

84. Plaintiff is entitled to compensatory damages, punitive damages for willful and malicious conduct, and injunctive relief prohibiting Defendants from further unlawful telemarketing.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against BETTER DEBT SOLUTIONS, its agents, affiliates, marketers, MOHAMMAD GHAFARINIA, and JOHN DOES 1-9 as follows:

(a) **Award statutory damages under the TCPA of $500 per unlawful call and text message, and treble damages of $1,500 per call and text message for willful or knowing violations, for a minimum of three hundred fifty (350) calls and fifty (50) text messages;**

(b) **Award statutory damages under N.Y. Gen. Bus. Law §399-p and N.Y. Gen. Bus. Law §399-z of $500 per unlawful call and text message, trebled to $1,500 per violation for willful or knowing misconduct;**

(c) **Award statutory damages under N.Y. Gen. Bus. Law § 349 of $50 per violation, treble damages up to $1,000 for willful violations, together with reasonable attorneys' fees and costs;**

(d) **Award compensatory and punitive damages under New York common law for invasion of privacy and intrusion upon seclusion, in an amount to be determined at trial;**

(e) **Award injunctive relief prohibiting Defendants from making further unlawful calls or sending unlawful text messages to Plaintiff, and requiring Defendants to implement and maintain a compliant internal "do not call" policy;** and

(f) **Award Plaintiff's costs of bringing this *pro se* Complaint, as well as pre- and post-judgment interest, and such other relief as the Court deems just and proper.**

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: ______________________________
Brooklyn, New York

Respectfully submitted,

EDWARD B. HUBBUCH
394 Lincoln Place #A5
Brooklyn, New York 11238
bhubbuch@gmail.com

Plaintiff, *pro se*

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br><br>Plaintiff,<br><br>*v.*<br><br>YOEL KOHN a/k/a JOEL KOHN,<br>788 FRANKLIN REALTY LLC, and<br>WATERMARK CAPITAL GROUP LLC,<br>individually and doing business as<br>"SDA/WATERMARK CAPITAL MANAGEMENT,"<br><br>Defendants. | 25-CV-4924 (JMF)<br><br>**SECOND AMENDED COMPLAINT (PURSUANT TO LEAVE)**<br><br>**[ TRIAL BY JURY DEMANDED ]** |

Plaintiff Edward B. Hubbuch, proceeding *pro se*, hereby files this Second Amended Complaint against Defendants YOEL KOHN a/k/a JOEL KOHN ("YOEL KOHN"), 788 FRANKLIN REALTY LLC ("788 FRANKLIN REALTY"), and WATERMARK CAPITAL GROUP LLC ("WATERMARK CAPITAL GROUP"), seeking redress for their persistent, deliberate, and malicious pattern of fraudulent conduct, aggravated identity theft, credit defamation, and unlawful debt collection practices.

## I. INTRODUCTION

1. Plaintiff Edward B. Hubbuch brings this civil action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and New York common law, asserting claims for credit defamation, fraudulent misrepresentation, aggravated identity theft, tortious interference with prospective economic advantage, and abuse of process.

2. This action seeks redress against Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP for their deliberate, multi-pronged scheme to:

- **Misuse Plaintiff's personal identifying information to fabricate a consumer loan on his credit file;**
- **Unlawfully attempt to collect a commercial debt as consumer debt;**
- **Cause Plaintiff severe financial, reputational, and emotional harm;** and
- **Systematically weaponize his credit report and other legal processes as part of a broader, extortionate pattern of conduct designed to circumvent New York City law and maliciously retaliate against Plaintiff for asserting his legal rights.**

3. In June 2020, during the height of the COVID-19 pandemic and amid an active ban on the enforcement of personal guaranties in commercial leases under N.Y.C. Admin. Code § 22-1005 (the "Guaranty Ban"), Defendants pressured Plaintiff to provide personal identifying information—his Social Security Number ("SSN"), date of birth, and New York State driver's license—and to sign a Personal Guaranty ("Guaranty"), even though both Plaintiff and Defendant YOEL KOHN knew the Guaranty would be unenforceable under the newly implemented Guaranty Ban. Plaintiff signed in good faith, however, unaware that his personal identifiers would instead be used to create a fraudulent credit tradeline and facilitate unlawful debt collection.

4. Immediately thereafter, Defendants used Plaintiff's personal identifiers to create a fraudulent consumer tradeline with the major Credit Reporting Agencies ("CRAs") that deliberately mischaracterized the entirety of his eight-year commercial lease consisting of rent payments totaling approximately $336,000 as a mortgage-like, personal installment "loan" of approximately $336,000 allegedly owed to "SDA/WATERMARK CAPITAL MANAGEMENT"—a fictitious entity that, upon information and belief, is not formally registered in any jurisdiction. By reframing a commercial lease as a mortgage-style debt, Defendants intentionally assumed Plaintiff's identity in order to create the false

impression to TransUnion and other credit agencies that Plaintiff had personally borrowed approximately $336,000 to finance his business premises, despite there being no such loan or credit relationship whatsoever between Plaintiff and Defendants.

5. Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL also deliberately obscured their identity and link to this fraudulent tradeline by listing the official business address of "SDA/WATERMARK CAPITAL MANAGEMENT" with the major CRAs as 30 North Gould Street, Suite 22928, in Sheridan, Wyoming—a commercial dropbox widely recognized as a notorious international hub for fraudulent shell companies and corporate anonymity. Investigations by numerous consumer protection authorities, journalists, and regulatory agencies have documented this address—which had housed more than 54,000 anonymous LLCs through just a handful of registered agents working from this location as of August 2021—as a longstanding international tool for fraudulent corporate operations designed to evade oversight from regulators and law enforcement.

6. Defendants' actions were not merely negligent but instead a deliberate, deceptive, and calculated scheme designed to fabricate consumer debt, illegally attempt to collect on it, damage Plaintiff's credit profile, and obscure the true origin of the reporting. The deliberate use of this structure allowed Defendant YOEL KOHN to secretly and unlawfully position himself as a personal creditor in the event Plaintiff defaulted or filed bankruptcy, even though Plaintiff's Guaranty with KOHN was legally void and no personal obligation lawfully existed. The extensive and highly sophisticated nature of this conspiracy—particularly its disproportionate cost to establish relative to Plaintiff's single,

$3,000 monthly commercial lease, as well as the use of a notorious shell entity address in a state 2,000 miles from Defendants' corporate headquarters—strongly indicates this was part of a broader, systemic enterprise by KOHN intended to defraud his numerous commercial tenants.

7. In effect, Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP created a fraudulent workaround to New York City's emergency, COVID-related Guaranty Ban in effect at the time by weaponizing Plaintiff's credit report to simulate a mortgage-style loan obligation they could never have otherwise enforced through lawful means. This scheme later inflicted catastrophic harm to Plaintiff's financial standing, including repeated denial of credit, loss of business opportunities, and reputational injury.

8. As a direct consequence of the deliberately unlawful actions of Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP, Plaintiff has suffered significant financial harm, reputational injury, and emotional distress, including the closure of a second restaurant location in Manhattan, permanent loss of a key vendor relationship with a Manhattan-based food distributor, and the forced abandonment of a critical catering kitchen—also located in Manhattan—due to repeated financing denials by major lenders that were among the ramifications of Defendants' fraudulent credit-reporting scheme.

9. More egregiously, Defendants' fraudulent and malicious conduct continued even *after* Plaintiff filed this federal lawsuit. On or about July 16, 2025, Defendants retaliatory re-verified the fraudulent tradeline to TransUnion despite Plaintiff's formal dispute to this

particular CRA. Simultaneously, Defendants engaged in a deliberate pattern of obfuscation, most notably the scrubbing of Defendant YOEL KOHN's "Joel Kohn" identity from the public-facing website of Defendant WATERMARK CAPITAL GROUP LLC. This campaign of deliberate retaliation culminated in Defendants KOHN and 788 FRANKLIN REALTY initiating a baseless eviction proceeding against Plaintiff in September 2025 after his business had been unlawfully shut down two months earlier due to utility issues directly tied to the prior fraudulent conduct of KOHN and 788 FRANKLIN REALTY.

10. Given the severity of these actions—including the fraudulent misuse of Plaintiff's SSN, date of birth, and New York State driver's license information in execution of identity theft, deceptive credit reporting, illegal debt collection practices, and abuse of process—Plaintiff contemporaneously reported these alleged criminal acts of identity theft to the New York City Police Department, which generated a police report (No. 2025-077-004032) on June 20, 2025, reflecting Plaintiff's immediate belief that he was a victim of a crime committed by Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP. Plaintiff reserves the right to refer this matter to federal and state regulatory agencies, including the U.S. Consumer Financial Protection Bureau ("CFPB"), the Federal Trade Commission ("FTC"), the New York State Attorney General's Office, as well as to law enforcement for further investigation into potential violations of federal, state and local fraud statutes.

## II. JURISDICTION AND VENUE

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p and § 1692k(d), as Plaintiff's claims arise under the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the wrongful conduct and resulting harm occurred within the Southern District of New York. Specifically:

- **Defendants' fraudulent credit reporting targeted financial institutions headquartered in Manhattan, including banks and credit bureaus that relied on the false tradeline data;**
- **Plaintiff suffered material financial harm within this District, as the inability to obtain loans and financing—caused by Defendants' wrongful reporting—forced Plaintiff to close a second restaurant location in Manhattan, suffer the permanent loss of a key vendor relationship with a Manhattan-based food distributor, and caused him to abandon a critical catering kitchen in Manhattan;** and
- **The direct impact of Defendants' fraudulent tradeline affected Plaintiff's financial standing in the Southern District, where credit markets and commercial leasing decisions crucial to his business were centered.**

13. Although Plaintiff resides in Kings County, his financial losses, business closures, and reputational damage occurred in the Southern District, making it the proper venue for adjudicating these claims.

## III. PARTIES

14. Plaintiff Edward B. Hubbuch ("Plaintiff") is a natural person residing in Kings County, New York, and the sole owner and operator of Memphis Seoul, a restaurant located in Brooklyn, New York.

15. Defendant YOEL KOHN a/k/a JOEL KOHN (and, additionally, "Joe Kohn") is an individual residing in the State of New York. Upon information and belief, KOHN is a founding partner of WATERMARK CAPITAL GROUP LLC along with Wolfe Landau and David Tabak. Upon information and belief, KOHN also is the principal owner and controlling member of 788 FRANKLIN REALTY LLC.

16. Defendant 788 FRANKLIN REALTY LLC is a New York limited liability company with its principal place of business officially listed as 543 Bedford Avenue, Suite 264, in Brooklyn, New York, but which in reality is a commercial mailbox without any identifiable physical office space.

17. Defendant WATERMARK CAPITAL GROUP LLC, both individually and doing business as "SDA/WATERMARK CAPITAL MANAGEMENT," is a New York limited liability company with its principal place of business officially listed as 185 Marcy Avenue, Suite 304, in Brooklyn, New York. Upon information and belief, WATERMARK CAPITAL GROUP, under the direction of founding partner YOEL KOHN, deliberately concocted the fictitious and unregistered name "SDA/WATERMARK CAPITAL MANAGEMENT" to fraudulently furnish tradeline data to consumer credit bureaus, misrepresenting Plaintiff's commercial lease as a personal, mortgage-like consumer loan while concealing the true identity and business purpose of the entity.

# IV. FACTUAL ALLEGATIONS

## A. Plaintiff's Personal InformationObtained Under False Pretenses

18. On or about July 1, 2020, Plaintiff Edward B. Hubbuch entered into a commercial lease with Defendants YOEL KOHN and 788 FRANKLIN REALTY for the premises at 569 Lincoln Place, Store #3, in Brooklyn, New York. (*A true and correct copy of Plaintiff's lease and accompanying documents is annexed hereto as **Exhibit A***).

19. In separate emails sent to Plaintiff on June 25, 2020 (at 11:42 a.m. and again at 1:30 p.m.) finalizing execution of the lease, Defendant YOEL KOHN signed his name as "Joel Kohn." *(True and correct copies of these emails are annexed as **Exhibit B**)*. This communication establishes that Defendant YOEL KOHN holds himself out as and uses the name "Joel Kohn" (and, additionally, as "Joe Kohn") in his business dealings, including those directly related to the lease at issue in this lawsuit.

20. This lease was strictly for commercial purposes—to operate Plaintiff's quick-service restaurant, Memphis Seoul—and contained no provisions authorizing consumer credit reporting, personal loan agreements, or enforcement by a third-party credit servicer.

## B. Misrepresentation of the Personal Guaranty As a Routine but Necessary Document

21. At the time Plaintiff entered into the lease, he was aware through numerous media reports that the New York City Council—in response to the COVID-19 pandemic then raging in the city—had recently enacted N.Y.C. Admin. Code § 22-1005 (Local Law 55 of 2020), which rendered the standard Personal Guaranty in commercial leases permanently unenforceable if—as was the case with Plaintiff—the lease had been signed between

March 7, 2020, and June 30, 2021, and subsequently defaulted upon. Plaintiff understood this law had been passed to protect small business owners like himself from pandemic-related personal liability, and he had eagerly followed its development and enforcement.

22. On or about June 26, 2020—just days before Plaintiff's lease with Defendants YOEL KOHN and 788 FRANKLIN REALTY commenced—Defendant YOEL KOHN's agent presented Plaintiff at the signing of his lease with a separate Personal Guaranty. When Plaintiff expressed reluctance and noted that personal guaranties had recently been legally barred during the ongoing pandemic, KOHN's agent assured him that the document was *"no big deal"* and only necessary *"for record-keeping purposes."* However, Defendants' agent also informed Plaintiff that Defendants would not allow his lease to proceed without Plaintiff's signed Personal Guaranty, which also included his personal identifying details in the signature box.

23. Relying on that assurance—and believing the document had no legal force or risk due to the city's Guaranty Ban—Plaintiff signed the Guaranty and, as requested, provided his SSN, date of birth, and a copy of his New York State driver's license. (*A true and correct copy of the Personal Guaranty, with Plaintiff's personal identifying information redacted, is annexed hereto as* ***Exhibit C***)

24. Unknown to Plaintiff, Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP would later misuse Plaintiff's personal information to fabricate a fraudulent consumer tradeline with the major CRAs. This tradeline deliberately and unlawfully misrepresented his standard commercial lease—an obligation

not permissible for consumer credit reporting—as a mortgage-style consumer loan, a falsehood designed to create an unenforceable personal liability.

25. In 2024, the U.S. Court of Appeals for the Second Circuit reaffirmed that New York City's Guaranty Ban from March 2020 to June 2021 had been constitutional and that landlord enforcement rights under any Personal Guaranty executed during this protected period had been permanently extinguished. (See *Bochner v. City of New York*, 118 F.4th 505 [2d Cir. 2024]; and *Melendez v. City of New York*, 16 F.4th 992 [2d Cir. 2021]). Thus, Plaintiff's Personal Guaranty with Defendants signed in June 2020 ***is now permanently void and unenforceable as a matter of law***.

26. The misrepresentation by Defendants in June 2020 that Plaintiff's Personal Guaranty was meaningless and purely administrative was in fact, a nefarious pretext. Defendants then illegally used the document and Plaintiff's personal identifiers to simulate a personal loan tradeline in his name, with the intent to later enforce a disguised version of the lease obligation through credit-reporting pressure.

### C. The Fraudulent Credit Reporting Scheme

27. Beginning in or around July 2020, Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP knowingly and willfully furnished false tradeline data to TransUnion and the other major CRAs that mischaracterized Plaintiff as a borrower on a mortgage-like, consumer loan allegedly owed to "SDA/ WATERMARK CAPITAL MANAGEMENT," with an account number designated only as "CBD."

28. This tradeline wrongfully appeared on Plaintiff's personal credit reports as a "Loan" with the description "Loan Type - RENTAL AGREEMENT" despite there being no loan, no consumer credit transaction, and no agreement authorizing Defendants to report on Plaintiff's personal credit file.

29. The Eleventh Circuit has held that furnishing false tradeline data—especially when done willfully and without a legitimate debt relationship—can support multiple claims under the FCRA. In *Pinson v. JPMorgan Chase Bank, N.A.*, 16-17107 (11th Cir. 2019), the court reversed dismissal of a *pro se* plaintiff's FCRA claims where the bank allegedly furnished inaccurate credit data and failed to investigate disputes, emphasizing that even large institutions are liable when they misrepresent debt relationships.

30. Here, Defendants not only misrepresented the nature of the lease obligation but fabricated a fictitious entity ("SDA/WATERMARK CAPITAL MANAGEMENT") to conceal their identity and simulate a consumer loan, thereby violating both the accuracy and permissible purpose provisions of the FCRA.

31. Defendants further structured the tradeline to falsely resemble a personal mortgage or installment loan, in an apparent attempt to circumvent the unenforceability of the Personal Guaranty. By doing so, Defendants made it appear as if Plaintiff had incurred a mortgage-like, $336,000 personal credit obligation, when in reality this sum represented the total value of Plaintiff's eight-year commercial lease.

32. On June 11, 2025, Plaintiff's TransUnion credit file showed a loan delinquency exceeding $10,000 that had been reported to TransUnion and other credit agencies in February 2025

by "SDA/WATERMARK CAPITAL MANAGEMENT." The alleged loan delinquency—which matched Plaintiff's rental arrears at the time—was still falsely listed in June 2025 as more than 120 days overdue, even though Plaintiff was not in rental arrears in June 2025. Both the tradeline in general and this ongoing false report of loan delinquency in particular directly harmed Plaintiff's creditworthiness and business operations. (*A true, correct, and annotated copy of this tradeline from Plaintiff's personal TransUnion credit report for June 11, 2025, is annexed hereto as* ***Exhibit D***).

33. The fraudulent intent and nature of this tradeline taken out by Defendants is further evidenced by the irregular formatting of the account name and number. "SDA/WATERMARK CAPITAL MANAGEMENT" is not, upon information and belief, a registered entity in any jurisdiction, and the account number designated only as "CBD" is highly unusual, suggesting an effort by Defendants to conceal the origin of the reporting entity and evade scrutiny.

34. Also evidencing the tradeline's fraudulent nature is that other commercial tenants of Defendant YOEL KOHN who signed leases after the expiration of the Guaranty Ban in 2021 do not appear to have any tradelines similar to Plaintiff's with "SDA/WATERMARK CAPITAL MANAGEMENT." For example, the co-owners of a neighboring restaurant in the same building as Plaintiff who signed their lease and Personal Guaranties with Defendants KOHN and 788 FRANKLIN REALTY in December 2021—almost six months after the city's Guaranty Ban had been voluntarily lifted—confirmed to Plaintiff that no such "SDA/WATERMARK CAPITAL MANAGEMENT" account appears on their respective personal credit reports.

35. This confirms that the false credit tradeline attributed to Plaintiff was not routine but was selectively and intentionally used against commercial tenants of Defendant YOEL KOHN who had signed their leases during the Guaranty Ban period between March 2020 and June 2021, when Defendants KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP could not legally enforce the Personal Guaranty from those tenants directly. The elaborate and costly nature of this scheme (utilizing a fictitious entity and a Wyoming shell address) further indicates it was designed to target multiple small business owners who had signed commercial leases with Defendant YOEL KOHN through his various entities, and not just Plaintiff.

36. Plaintiff never authorized this tradeline, never signed a loan agreement, and never consented to having his lease obligations reclassified or reported as consumer debt. As a result, the conduct here of Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP violates the FCRA, New York Penal Law § 190.78 (Identity Theft), and the common law of fraudulent misrepresentation.

## D. Defendants' Use of a Notorious Wyoming Shell Address To Conceal Fraudulent Activity

37. Upon information and belief, Defendant WATERMARK CAPITAL GROUP is at least partially controlled by Defendant YOEL KOHN (one of three listed co-founders along with Wolfe Landau and David Tabak), and that WATERMARK CAPITAL GROUP operates in conjunction with or direct ownership of Defendant 788 FRANKLIN REALTY.

38. The Wyoming address associated with the fraudulent credit tradeline attributed to Plaintiff—30 North Gould Street, Suite 22928, in Sheridan, Wyoming—is widely recognized as a commercial mailbox facility used by fraudulent shell companies. This address has been flagged by the Better Business Bureau, the Wyoming Attorney General's Office, and multiple investigative journalists—and many others—for its role for more than two decades as the home of thousands of anonymous corporate entities around the world engaged in financial deception, regulatory evasion, and fraud. (*A true and correct copy of an August 6, 2021, article by The Sheridan Press detailing this controversy is annexed hereto as* ***Exhibit E***)

39. The deliberate use by Defendants YOEL KOHN and WATERMARK CAPITAL GROUP of a remote dropbox nearly 2,000 miles from their actual business operations in Brooklyn, New York—especially one internationally notorious for corporate fraud—strongly indicates intent to deceive Plaintiff and evade accountability.

40. The placement of a fabricated credit tradeline under a fictitious entity name using a Wyoming shell address by Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP constitutes a deceptive trade practice, fraudulent credit reporting, and evidence of willful misconduct under 15 U.S.C. § 1681n.

## E. Defendants' Continued and Escalated Malicious and Retaliatory Conduct

41. Plaintiff first discovered the fraudulent "SDA/WATERMARK CAPITAL MANAGEMENT" tradeline in early 2025, confirming through an analysis of his TransUnion credit report that Defendants YOEL KOHN and 788 FRANKLIN REALTY

had continuously reported this nonexistent, mortgage-like "loan" since the inception of his lease five years earlier.

42. Neither the lease agreement nor any associated documents contained provisions authorizing this fraudulent credit reporting. Defendants' use of Plaintiff's SSN, date of birth, and his New York State driver's license information to fabricate a consumer loan tradeline was done knowingly, intentionally, surreptitiously, and without legal basis.

43. After Plaintiff first filed this lawsuit in June 2025 and directly disputed the fraudulent tradeline with TransUnion and the other major CRAs, Defendants willfully chose to continue their malicious course of conduct. Rather than investigate or correct the false reporting, Defendants KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP, through "SDA/WATERMARK CAPITAL MANAGEMENT," ***deliberately re-verified the tradeline as accurate and valid in response to a query from TransUnion on or about July 16, 2025***. (*See TransUnion's letter to Plaintiff confirming the re-verification annexed hereto as* ***Exhibit F***). This action was taken in retaliation for Plaintiff's lawsuit and demonstrates a willful disregard for accuracy and an intent to further damage Plaintiff's credit.

44. Defendants' deliberate re-verification was not only unreasonable—it was retaliatory. It occurred after Defendant 788 FRANKLIN REALTY property manager Tom Rosenberg (upon information and belief, YOEL KOHN's top aide and a direct relative) had full knowledge of Plaintiff's federal complaint (see ***Exhibit G***), and despite clear evidence that the tradeline had been fabricated.

45. Following Defendants' re-verification, Plaintiff demanded that TransUnion conduct its own independent re-investigation into the tradeline at Plaintiff's request. On or about July 30, 2025, TransUnion ***determined the tradeline to be fraudulent and subsequently deleted it permanently from Plaintiff's personal credit profile***. (*See letter of confirmation from TransUnion annexed hereto as **Exhibit H***). This independent, third-party corroboration directly refutes Defendants' primary factual denials and unequivocally establishes the fraudulent nature of the reported tradeline and underscores their willful disregard for accuracy and consumer rights.

46. Coincident with Plaintiff's lawsuit, Defendants YOEL KOHN and WATERMARK CAPITAL GROUP began a concerted effort to scrub incriminating evidence of their connections. When Plaintiff filed this lawsuit (June 2025), the public-facing website for WATERMARK CAPITAL prominently listed KOHN as a founding partner, specifically with "property management" responsibilities. By August 2025, Plaintiff documented (via Internet Archive "Wayback Machine" screenshots) that ***KOHN and other key associates had been entirely deleted from the website***. (*See a breakdown of the changes by Plaintiff annexed hereto as **Exhibit I***). This sudden removal suggests an attempt by Defendants to conceal connections and evidence following litigation, indicating consciousness of wrongdoing and an effort to obfuscate their involvement.

47. After filing this complaint, Plaintiff also searched his records and found that nearly one year earlier, on or about August 28, 2024, he had received multiple copies of a letter from Defendant 788 FRANKLIN REALTY explicitly adopting the statutory language and procedural posture of a consumer debt collection notice governed by the Fair Debt

Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. The letter referred to Plaintiff as *"the consumer,"* identified 788 FRANKLIN REALTY as *"the creditor,"* and asserted Plaintiff's right to request verification of the alleged consumer debt under 15 US.C. § 1692g. It further stated, *"This is an attempt to collect a debt and any information obtained will be used for that purpose." (A true and correct copy of this letter is attached hereto as **Exhibit J**)*. Defendants' counsel later confirmed at the Initial Pretrial Conference held in this matter on September 30, 2025, that this FDCPA language had been *"required by law,"* thereby tacitly admitting that the Defendants were treating the commercial lease as a consumer debt for collection purposes.

48. Furthermore, on or about September 15, 2025, Defendant YOEL KOHN and 788 FRANKLIN REALTY deliberately escalated their campaign of retaliation by initiating a baseless and retaliatory eviction proceeding against Plaintiff (Kings County Civil Court Index No. LT-324841-25) in response to Plaintiff's assertion of legal rights in this federal action and a parallel state court case regarding a utility dispute that had unlawfully shut down Plaintiff's restaurant.

49. This eviction action directly followed Plaintiff's September 3, 2025, pre-litigation warning letter to Petitioners' Housing Court counsel explicitly stating that any such proceeding in light of Plaintiff's active litigation against KOHN and 788 FRANKLIN REALTY would be baseless, retaliatory, and an abuse of process. (*See Plaintiff's formal warning letter to Zev Schwartz, Esq., annexed hereto as **Exhibit K***).

50. This retaliatory eviction petition by Defendants YOEL KOHN and 788 FRANKLIN REALTY followed actions by both Defendants that had directly contributed to Plaintiff's

business being forced to temporarily close on July 23, 2025, causing further catastrophic financial harm to Plaintiff and leaving 10 people still unemployed as of the filing of this Second Amended Complaint. The alleged non-payment of rent for which eviction is sought is a direct consequence of Defendants' own fraudulent conduct involving the misattribution and manipulation of a utility meter, which led to the unlawful shutdown of Plaintiff's business.

51. Plaintiff's commercial utility provider, Consolidated Edison Company of New York, Inc., ("Con Edison") has since conceded by action that its July 23, 2025, seizure of the electric meter for Plaintiff's restaurant was wholly wrongful and based on errors traceable to their own longstanding failures, of which the Defendants contributed to and were equally aware. This independent, *de facto* confirmation (*extensively detailed in a state-court filing annexed hereto as **Exhibit L***) further undermines Defendants' *"unclean hands"* defense and highlights their fraudulent conduct related to Plaintiff's business operations.

52. On June 20, 2025, the same day he filed the Amended Complaint in this action (*Dkt. 5*), Plaintiff also contemporaneously reported the Defendants' alleged criminal acts of identity theft to the New York City Police Department, which generated a police report (Complaint No. 2025-077-004032) reflecting Plaintiff's immediate belief that he was a victim of a crime. *(A true and correct copy of this report is annexed hereto as **Exhibit M**)*.

### F. Plaintiff's Financial Harm and Severe Consequences

53. Plaintiff first discovered the fraudulent "SDA/WATERMARK CAPITAL MANAGEMENT" tradeline in early 2025, confirming through an analysis of his

TransUnion credit report that Defendants had continuously reported this nonexistent, mortgage-like "loan" since the day of the inception of his commercial lease five years earlier.

54. Neither the commercial lease agreement nor any associated documents contained provisions authorizing this fraudulent credit reporting. Defendants' use of Plaintiff's SSN, date of birth, and his New York State driver's license information to subsequently fabricate a consumer loan tradeline was therefore done knowingly, intentionally, and without legal basis.

55. Federal courts have consistently held that the unauthorized furnishing of false credit information—especially when done knowingly and with intent to harm—can support claims for actual damages, emotional distress, and punitive relief under the FCRA. In *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007), the Fourth Circuit upheld a jury award of $245,000 in emotional distress damages where the plaintiff's credit report was falsely linked to another person's bankruptcy, causing repeated credit denials and humiliation. The court emphasized that emotional harm stemming from reputational injury and financial disruption is compensable under the FCRA.

56. Similarly, in *Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010), the Third Circuit affirmed a $750,000 jury award for emotional distress and economic harm after TransUnion falsely reported the plaintiff as a terrorist suspect. The court found that the plaintiff's inability to obtain credit, coupled with reputational damage and psychological trauma, constituted actual damages under 15 U.S.C. § 1681n and § 1681o.

57. These cases confirm that Plaintiff's injuries—including credit denials, lost business opportunities, reputational harm, and emotional distress—are not speculative. They are the foreseeable and compensable consequences of willful and malicious conduct by Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP.

58. As a direct result of this unlawful conduct, Plaintiff has suffered:

- **A severely reduced credit score (466 as of September 15, 2025, per *Exhibit N*), all but eliminating access to conventional financing for his business operations;**
- **Repeated denials of credit, loans, and refinancing, making expansion and daily financial management impossible;**
- **Increased interest rates, imposing additional financial burdens;**
- **Loss of conventional financing opportunities, resulting in the forced closure of Plaintiff's second restaurant location in Manhattan, the permanent loss of a key vendor relationship with a Manhattan-based food distributor, and abandonment of a commercial catering kitchen in Manhattan due to credit restrictions directly caused by Defendants' fraudulent reporting;**
- **Severe reputational damage and emotional distress, stemming from the prolonged and unlawful credit defamation;** and
- **Loss of business income and associated costs due to the wrongful shutdown of Plaintiff's restaurant in Brooklyn and the retaliatory eviction stemming from Defendants' fraudulent and malicious conduct regarding the utility meter for that location.**

59. Defendants' conduct was knowing, willful, intentional, deceptive, and malicious, constituting federal statutory violations under the FCRA and FDCPA, identity theft under New York Penal Law § 190.78, fraudulent misrepresentation, and common-law fraud.

# V. CAUSES OF ACTION

## COUNT ONE: VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681s-2[a])

**(Against All Defendants)**

60. Plaintiff repeats and realleges all prior paragraphs.

61. Defendants knowingly and willfully misrepresented a $336,000 commercial lease as a personal consumer loan in Plaintiff's name, without his consent or legal justification. This false tradeline was deliberately structured to simulate a residential mortgage, thereby undermining Plaintiff's credit and violating the FCRA's accuracy and furnishing provisions.

62. Defendants furnished this fraudulent tradeline to credit bureaus with actual knowledge that no such consumer loan existed and that Plaintiff's commercial lease was not reportable as personal consumer debt. As demonstrated by their deliberate re-verification of the fraudulent tradeline despite Plaintiff's dispute, and TransUnion's ultimate finding of fraud and deletion, Defendants' actions were willful and malicious.

63. Defendants' conduct caused Plaintiff substantial financial harm, credit denial, and reputational damage, and was carried out with intent to manipulate credit markets and conceal their identity and the true nature of their fraudulent scheme.

64. Plaintiff seeks statutory, actual, and punitive damages pursuant to 15 U.S.C. §§ 1681n and 1681o, as well as injunctive relief requiring the permanent deletion of the unlawful tradeline.

**COUNT TWO:**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(15 U.S.C. § 1692 *et seq*.)**

**(Against Yoel Kohn a/k/a Joel Kohn and 788 Franklin Realty LLC)**

65. Plaintiff repeats and realleges all prior paragraphs.

66. Defendants, acting individually and through their agent "SDA/WATERMARK CAPITAL MANAGEMENT," knowingly and willfully attempted to collect a commercial lease obligation by improperly reclassifying it as a consumer debt.

67. On or about August 28, 2024, Plaintiff received a letter from Defendant 788 FRANKLIN REALTY that explicitly adopted the statutory language and procedural posture of a consumer debt collection notice governed by the FDCPA. The letter referred to Plaintiff as *"the consumer,"* identified 788 FRANKLIN REALTY as *"the creditor,"* and asserted Plaintiff's right to request verification of the alleged consumer debt under 15 U.S.C. § 1692g. It further stated, *"This is an attempt to collect a debt and any information obtained will be used for that purpose."*

68. Defendants' counsel later confirmed at the Initial Pretrial Conference held in this action on September 30, 2025, that Defendants had included this FDCPA language because it was *"required by law,"* thereby confirming that Defendants were improperly treating Plaintiff's commercial lease as a consumer debt for collection purposes. This reclassification was not inadvertent or clerical—it was a deliberate legal posture adopted by Defendants to invoke consumer debt collection mechanisms and pressure Plaintiff through credit reporting and statutory threat.

69. By reclassifying the lease obligation as a consumer debt and issuing a collection notice governed by FDCPA provisions, Defendants acted as *"debt collectors"* within the meaning of 15 U.S.C. § 1692a(6). Plaintiff, as the recipient of this reclassified debt notice, qualifies as a *"consumer"* under 15 U.S.C. § 1692a(3). Accordingly, FDCPA jurisdiction is properly invoked, and Defendants are subject to its statutory requirements and liabilities.

70. By engaging in collection actions for a commercial lease debt while simultaneously attempting to frame it as a consumer debt governed by the FDCPA, Defendants engaged in various unfair and deceptive practices under 15 U.S.C. §§ 1692e and 1692f, including:

- **Misrepresenting the character, amount, or legal status of the debt (15 U.S.C. § 1692e[2][A]);**
- **Using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (15 U.S.C. § 1692e[10]);**
- **Collecting any amount (including incidental charges, fees, or expenses) unless such amount is expressly authorized by the agreement creating the debt or permitted by law (15 U.S.C. § 1692f[1]);** and
- **Threatening to take any action that cannot legally be taken or that is not intended to be taken (15 U.S.C. § 1692e[5]).**

71. Defendants' conduct in treating a commercial lease as a consumer debt and sending FDCPA-specific communications for its collection was willful, knowing, and malicious. Plaintiff therefore seeks statutory damages, actual damages, and punitive damages pursuant to 15 U.S.C. § 1692k, as well as injunctive relief barring Defendants from further unlawful debt collection practices.

**COUNT THREE:**
**CREDIT DEFAMATION**
**(Against All Defendants)**

72. Plaintiff repeats and realleges all prior paragraphs.

73. Defendants knowingly published false and damaging credit information, falsely characterizing a commercial lease as a mortgage-like, $336,000 personal loan on Plaintiff's consumer credit file.

74. Defendants acted with actual malice and reckless disregard for the truth, using Plaintiff's personal information without consent to construct a fictitious debt relationship. Their malicious intent is further evidenced by their retaliatory re-verification of the fraudulent tradeline, subsequent scrubbing of Defendant YOEL KOHN's presence from the public-facing website of Defendant WATERMARK CAPITAL GROUP, and the initiation of a baseless and retaliatory eviction proceeding.

75. This false reporting directly caused denials of credit and financing opportunities essential to Plaintiff's business operations, and severely damaged his reputation.

76. Plaintiff is entitled to damages for credit defamation, including reputational injury and punitive relief for the malicious and deceptive nature of Defendants' actions.

**COUNT FOUR:**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

77. Plaintiff repeats and realleges all prior paragraphs.

78. Defendants intentionally misrepresented the purpose of the Personal Guaranty to Plaintiff in June 2020, knowing that personal guaranties were unenforceable at the time under N.Y.C. Admin. Code § 22-1005.

79. Defendants deliberately induced the signing of that document in order to extract Plaintiff's personal identifiers under false pretenses, then misappropriated those personal identifiers to fabricate a false consumer tradeline.

80. Defendants knew Plaintiff had no knowledge of or intent to enter into any personal, mortgage-like consumer loan, and they acted with the intent to harm and mislead financial institutions and credit bureaus. Plaintiff relied on Defendants' misrepresentation and was injured as a direct result. As a direct result, Plaintiff is entitled to compensatory and punitive damages.

**COUNT FIVE:
TORTIOUS INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE
(Against All Defendants)**

81. Plaintiff repeats and realleges all prior paragraphs.

82. Defendants intentionally interfered with Plaintiff's ongoing relationships with vendors, financial institutions, and commercial clients by falsely reporting a nonexistent loan and engaging in subsequent retaliatory actions, including the wrongful eviction attempt.

83. Defendants' wrongful conduct foreseeably and proximately resulted in lost financing opportunities, increased credit costs, and denial of critical business expansion paths.

84. Plaintiff's lost opportunities—totaling more than $1,000,000—were a direct consequence of Defendants' deliberate misreporting, concealment, and retaliatory conduct.

## COUNT SIX: ABUSE OF PROCESS (Against All Defendants)

85. Plaintiff repeats and realleges all prior paragraphs.

86. Defendants YOEL KOHN and 788 FRANKLIN REALTY, through their initiation of a baseless and retaliatory eviction proceeding (Kings County Civil Court Index No. LT-324841-25) on or about September 15, 2025, against Plaintiff, engaged in the malicious perversion of regularly issued legal process (a summary non-payment petition) to accomplish an improper purpose.

87. The Defendants initiated the Housing Court Action, not to collect legitimate rent arrears, but as an additional act of retaliation against Plaintiff for exercising his legal rights in this federal action and a parallel state court case, and to punish him for exposing their prior fraudulent conduct. This improper purpose is evidenced by Plaintiff's prior written pre-litigation warning to Zev Schwartz, Esq., *(see **Exhibit K**)*, and the fact that the alleged non-payment of rent was a direct consequence of Defendants' own fraudulent conduct regarding the manipulation of a utility meter and of the utility account for Plaintiff's premises, both of which directly led to the unlawful shutdown of Plaintiff's business on July 23, 2025.

88. Defendants' abuse of process has caused Plaintiff substantial financial harm, including business losses, legal fees, and emotional distress, and constitutes an unlawful attempt to silence and penalize Plaintiff for pursuing his valid legal claims.

89. Plaintiff seeks compensatory and punitive damages for Defendants' abuse of process.

## VI. PRAYER FOR RELIEF

90. **WHEREFORE**, Plaintiff respectfully demands that this Court enter judgment against Defendants YOEL KOHN a/k/a JOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP, individually and doing business as "SDA/ WATERMARK CAPITAL MANAGEMENT," as follows:

(i) **Statutory damages under 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1692k, up to $1,000 per violation;**

(ii) **Actual damages for financial loss, lost business opportunities, reputational harm, and emotional distress in excess of $1,000,000, including specific losses incurred due to the wrongful shutdown of Plaintiff's restaurant and the retaliatory eviction attempt;**

(iii) **Punitive damages for Defendants' intentional, fraudulent, malicious, and retaliatory conduct, in an amount sufficient to punish Defendants and deter similar future misconduct;**

(iv) **Injunctive relief permanently prohibiting Defendants from re-reporting the fraudulent account or furnishing any similar information concerning Plaintiff to any consumer reporting agency;**

(v) **Referral of this matter to the Consumer Financial Protection Bureau (CFPB), Federal Trade Commission (FTC), the New York Attorney General's Office, as well as to law enforcement for further investigation into Defendants' actions, including potential violations of federal and state fraud statutes;** and

(vi) **Such other and further relief as this Court deems just and proper.**

## VII. TRIAL BY JURY DEMANDED

91. Plaintiff demands a trial by jury on all issues so triable.

## VIII. PLAINTIFF'S JUSTIFICATION FOR PUNITIVE DAMAGES, AND CONCLUSION

92. This is not a case about a mistake. It is a case about a calculated, multi-stage fraud perpetrated by a landlord against its tenant. When the initial scheme of identity theft was exposed through a federal lawsuit, Defendants YOEL KOHN a/k/a JOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP were presented with a choice: cease the unlawful conduct or escalate it. They chose to escalate.

93. Their decision to maliciously re-verify a known falsehood to a major CRA—and to then initiate a baseless, retaliatory eviction proceeding against Plaintiff—transforms this case from one of simple fraud to one of egregious, bad-faith litigation conduct. It is a direct assault on the integrity of the legal process and the consumer protection statutes enacted by Congress. Defendants' conduct was not merely willful; it was contemptuous. The subsequent finding of fraud and permanent deletion of the account by TransUnion does not merely support Plaintiff's claim; it proves it.

94. Therefore, punitive damages are not merely warranted under 15 U.S.C. § 1681n(a)(2); they are essential. They are necessary to punish Defendants for their sustained and unrepentant campaign of deception and to deter them and others from ever believing that they can weaponize a citizen's credit report, abuse the legal process, defy federal law, and retaliate against those who seek justice, without facing the most severe consequences.

Dated: October 6, 2025
Brooklyn, New York

Respectfully submitted,

EDWARD B. HUBBUCH
394 Lincoln Place #A5
Brooklyn, N.Y. 11238
bhubbuch@gmail.com
(646) 544-7597

*Pro se*

TO: ANDREW W. TILEM, Esq.
228 Montrose Avenue
Brooklyn, New York 11206
andtile@googlemail.com
(718) 497-2552

*Attorney for Defendants* YOEL KOHN a/k/a JOEL KOHN, 788 FRANKLIN REALTY LLC, and WATERMARK CAPITAL GROUP LLC

# EXHIBIT 3

# EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br>Plaintiff,<br><br>*v.*<br><br>REGIONS FINANCIAL CORP.,<br>REGIONS BANK,<br>ASCENTIUM CAPITAL LLC, and<br>STUART-LIPPMAN & ASSOCIATES, INC.,<br><br>Defendants. | Case No. 25-CV-2724 (PKC) (TAM)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**[TRIAL BY JURY DEMANDED]** |

Plaintiff Edward B. Hubbuch, for and by this Second Amended Complaint, alleges as follows:

## I. INTRODUCTION

1. This lawsuit exposes a cynical and pervasive scheme orchestrated by Defendant STUART-LIPPMAN & ASSOCIATES, INC. ("STUART-LIPPMAN")—a scheme built on a foundation of criminal obfuscation, attorney-advised regulatory evasion, and a profound failure of corporate oversight by Defendant REGIONS FINANCIAL CORP. and its wholly owned subsidiaries REGIONS BANK and ASCENTIUM CAPITAL LLC (collectively, "the REGIONS DEFENDANTS"). It is an action to compel accountability from all Defendants for calculated and ongoing violations of federal and state law, including consumer protection statutes, pervasive common law fraud, and gross institutional negligence.

2. Plaintiff's complaint is not merely a private dispute for individual redress. It encompasses matters of profound public policy and consumer protection, striking at the heart of the integrity of the financial regulatory system. Specifically, this action seeks to expose and

halt a conspiracy between Defendant STUART-LIPPMAN and its Statutory Agent, LOUIS M. SPIVACK, Esq., to obstruct justice by destroying evidence after being formally noticed of this lawsuit. Plaintiff seeks to bring to light and put a stop to systemic fraudulent and deceptive practices by STUART-LIPPMAN that impact thousands of consumers across multiple states, and to hold accountable an unregulated debt collector and the federally regulated financial institution that enabled its misconduct.

3. An investigative journalist for more than 30 years before becoming a small-business owner, Plaintiff has conducted (and continues to conduct) an extensive investigation since filing his initial Amended Complaint (*Dkt. 11*) that reveals Defendant STUART-LIPPMAN has engaged in a protracted and brazen campaign to defraud state regulators for more than a decade. This scheme also involves LOUIS M. SPIVACK, Esq.—a direct relation to company president STUART SPIVACK and an Assistant District Attorney and criminal prosecutor for Pima County, Arizona, from 1983 to 2010—who served as the company's General Counsel and Statutory Agent during the most critical period of regulatory evasion (and still serves in those roles as of the date of this filing). The company's headquarters are located in Tucson, Arizona, which is the seat of Pima County, placing the debt collection enterprise in the precise geographical jurisdiction where LOUIS M. SPIVACK served as a senior criminal prosecutor for nearly three decades and, by his own estimation, prosecuted more than 300 cases in that time.

4. This campaign of fraud and concealment by Defendant STUART-LIPPMAN began with the active concealment of a damning August 2013 Consent Order from the Arizona Department of Insurance and Financial Institutions (the "Arizona Order"). This order

detailed egregious, wide-ranging misconduct by STUART-LIPPMAN's predecessor, "Stuart Allan & Associates, Inc." (operating under the same Arizona corporate entity ID), including a multi-million-dollar fiduciary trust account shortage, the illegal commingling of client funds for operational expenses, and a clear pattern of abusive and misleading collection practices against consumers. Rather than genuinely reform, however, STUART-LIPPMAN used this Arizona Order as a blueprint for evasion subsequently carried out nationwide.

5. Despite the Arizona regulator's explicit stipulation for a mandatory "full and complete transfer of ownership and control" to new, untainted leadership (JEROME D. LIPPMAN), Defendant STUART-LIPPMAN systematically circumvented this central remedy through a calculated charade over the succeeding five years. Public records demonstrate that current company leader STUART SPIVACK—who was STUART-LIPPMAN's president during the period of the severe misconduct detailed in the Arizona Order—was never truly removed from control. Instead, SPIVACK strategically remained in senior executive and board roles before ultimately returning to the presidency in 2020.

6. This calculated evasion was further enabled by the continuous, attorney-advised involvement of LOUIS M. SPIVACK, Esq., who served as the company's official counsel and legal agent, and whose local prominence may have previously shielded the enterprise from scrutiny, despite its financial entanglement with convicted federal money launderers. This deliberate leadership carousel rendered the mandated reform a profound and calculated sham, designed to mislead and defraud regulators and the public regarding the company's true ownership and operational integrity.

7. Armed with a new name and the manufactured appearance of fresh leadership, Defendant STUART-LIPPMAN began in 2014 a calculated campaign to deceive regulators on debt-collection license applications nationwide. In state after state—including Colorado and Illinois—it submitted applications riddled with falsehoods, brazenly concealing its disciplinary history and falsely asserting that it held no other licenses. This pattern of deliberate misrepresentation strongly supports the inference that STUART-LIPPMAN employed the same tactics in New York, securing its licenses through fraudulent omission and rendering its debt collection activities across the state unlawful from the outset.

8. This fraudulent enterprise was not a discreet solo act. It was enabled by the extreme reckless institutional entrustment and willful blindness of the REGIONS DEFENDANTS. As a sophisticated, publicly traded financial institution already a recent subject of multiple sanctions by the U.S. Securities and Exchange Commission ("SEC") for its own compliance failures and inadequate internal controls, the REGIONS DEFENDANTS bore an elevated duty to conduct rigorous due diligence on its vendors. The holding company and its subsidiaries failed catastrophically in this case, entrusting their debt collection to a documented bad actor that was financially entwined with one or more convicted federal felons imprisoned for wire fraud and money laundering. By allegedly failing to adequately oversee and control its vendor, the REGIONS DEFENDANTS became a direct and knowing participant in—and recipient of the benefits from—the resulting widespread consumer harm.

9. The initial collection attempt against Plaintiff, which deceptively employed the American Bar Association ("ABA") logo and issued patently false threats of invasive asset

investigations and interference in Plaintiff's business relationships, was not an isolated act of a rogue employee. Instead, it was the predictable output of a company whose entire operational model is predicated on deceiving consumers and evading regulatory oversight. This ongoing misconduct, coupled with the immediate and suspicious dismantling of its legal agent's professional assets (LOUIS M. SPIVACK, Esq.) upon notice of this litigation, strikes at the heart of basic regulatory integrity, sound commercial practice, and the rule of law.

10. Given the systemic and widespread nature of the violations and the profound public interest at stake, Plaintiff seeks to hold all Defendants accountable for their crucial roles in this fraudulent scheme. Plaintiff requests actual, statutory, and punitive damages to deter future misconduct, as well as broad declaratory and injunctive relief to protect the public from these egregious practices.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1692k(d), which provides for original jurisdiction in federal district courts over actions brought under the Fair Debt Collection Practices Act, and 28 U.S.C. § 1331, as this action arises under the laws of the United States.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in Kings County, New York, where Plaintiff resides and where Defendant STUART-LIPPMAN directed its unlawful collection communications. Venue is also proper under § 1391(b)(1), as at least one Defendant resides in this district for venue purposes by virtue of conducting substantial business here.

13. All Defendants are headquartered outside New York State, and the events giving rise to this action occurred in Kings County, New York.

## III. THE PARTIES

14. Plaintiff EDWARD B. HUBBUCH is a natural person residing in Kings County, New York. He is a sole proprietor and small business owner directly targeted by Defendants' unlawful debt collection practices.

15. Defendant REGIONS FINANCIAL CORPORATION is a publicly traded financial holding company headquartered in Birmingham, Alabama. It is subject to federal oversight and exercises control over the consumer-facing operations of its wholly owned subsidiaries REGIONS BANK and ASCENTIUM CAPITAL LLC. REGIONS BANK provides commercial lending services through the ASCENTIUM CAPITAL LLC brand name and referred Plaintiff's account to Defendant STUART-LIPPMAN for collection.

16. Defendant STUART-LIPPMAN & ASSOCIATES, INC., is a nationwide third-party debt collection agency headquartered in Tucson, Arizona, which is the seat of Pima County. It has a documented history of pervasive and systemic regulatory violations, including:

- **Operating under fraudulent licenses by repeatedly concealing its $2.2 million Arizona disciplinary history from multiple state regulators;**
- **Financial entanglement with one or more federal criminals, having been named a Garnishee in a federal criminal case—*United States v. Nero, et al*. (D. Ariz., No. 4:08-CR-744)—for a felon convicted and imprisoned for wire fraud and money laundering;** and
- **Operating under the legal authority of LOUIS M. SPIVACK, Esq. (a direct relation to its company president and a former Pima County criminal prosecutor), who is still listed as the Statutory Agent despite the company's alleged fraud and his recent attempt to obstruct discovery via the destruction of his law practice's public-facing assets.**

# IV. FACTUAL BACKGROUND

## A. The Initial Deceptive Collection Attempt

17. On April 14, 2025, Plaintiff received an unsettling and disturbing collection email from BRYAN SWAN, a representative of Defendant STUART-LIPPMAN. This communication conspicuously featured the American Bar Association ("ABA") logo and was formatted to simulate legal correspondence, in a deliberate and coercive attempt to intimidate Plaintiff by falsely implying attorney involvement. (*See* ***Exhibit A***.) The email's attachment further contained a formal letter on official STUART-LIPPMAN letterhead that included patently false threats of invasive personal asset investigations and interference with Plaintiff's banking relationships—tactics designed to simulate law enforcement authority and pressure immediate payment. (*See* ***Exhibit B***.) Notably, the ABA logo in SWAN's email is not included on STUART-LIPPMAN's public-facing website. (*See a comparison in* ***Exhibit C***.)

18. These actions in the email and attached formal letter by Defendant STUART-LIPPMAN on behalf of the REGIONS DEFENDANTS were direct, *per se* violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(3) (false implication of attorney involvement), and 15 U.S.C. § 1692e(10) (general deception).

19. Upon recognizing this willful deception, Plaintiff promptly lodged formal complaints with both the New York State Attorney General's Office and the Arizona Department of Insurance and Financial Institutions ("Arizona DiFi"). The Arizona DiFi, in turn, swiftly referred Plaintiff's concerns to the State Bar of Arizona.

20. The immediate response from the State Bar of Arizona, coming from Senior Bar Counsel Hunter F. Perlmeter (*see* ***Exhibit D***), underscores the unmistakable impropriety of Defendant STUART-LIPPMAN's conduct. Within mere hours of Mr. Perlmeter's outreach on May 1, 2025, STUART-LIPPMAN abruptly capitulated, agreeing to remove the unauthorized ABA logo from all collection communications nationwide.

21. In a subsequent and self-serving letter to the Arizona DiFi, STUART-LIPPMAN's Chief Compliance Officer, TAMARA HARRIS, attempted to rationalize the use of the ABA logo as an "*inadvertent*" error, claiming it stemmed from a representative copying signature elements from company president STUART SPIVACK, a non-attorney member of the ABA. HARRIS went so far as to baldly assert that "*the assumption falls on Mr. Hubbuch*" to have been misled. *(See* ***Exhibit E****.)*

22. Prior to the State Bar's formal intervention, Defendant STUART-LIPPMAN also initiated its own executive-level damage control. On April 30, 2025—the very day Plaintiff first engaged regulators—JUSTIN DAVIS, Vice President of Operations and a member of Defendant STUART-LIPPMAN's board of directors—personally intervened to place a formal *"Cease and Desist"* on Plaintiff's account and mark the file as disputed. *(See* ***Exhibit F****.)* This rapid, high-level executive action not only signaled STUART-LIPPMAN's internal recognition of misconduct and immediate legal exposure—it also functionally terminated the collection effort against Plaintiff, effectively extinguishing the alleged debt of $16,578.37 without any payment or resolution. This outcome underscores the coercive and indefensible nature of the original collection attempt and the power of regulatory scrutiny to compel immediate retreat.

23. However, these actions in the collective—immediate cessation of collection activities, high-level executive intervention to extinguish Plaintiff's debt, swift removal of the logo under regulatory pressure, and the ABA logo appearing in private communications but not in Defendant STUART-LIPPMAN's public-facing website—all fundamentally contradict TAMARA HARRIS' claim of mere inadvertence. Instead, these actions constitute an unequivocal admission that the original representations were indeed deceptive, improper, and legally indefensible, revealing a clear recognition of wrongdoing and a swift attempt at damage control by STUART-LIPPMAN.

### B. The 2013 Arizona Consent Order: A Blueprint for Evasion

24. Defendant STUART-LIPPMAN's current deceptive and unlawful practices are not isolated incidents but are deeply rooted in a documented history of severe and systemic misconduct by the company that predates its current name.

25. In August 2013, Defendant STUART-LIPPMAN's predecessor, Stuart Allan & Associates, Inc. (operating under the identical Arizona corporate entity ID No. 07572272, and therefore legally the same entity), was the subject of a comprehensive and damning Consent Order by the Arizona DiFi (the "Arizona Order"). This Order—a public record (see ***Exhibit K***)—detailed catastrophic and pervasive financial crimes and illegal activities by the company so severe that the Arizona DiFi explicitly deemed the company "a threat to the public welfare" that required comprehensive and immediate intervention to uphold fundamental regulatory standards and protect consumers from an untrustworthy financial actor.

26. Specifically, the Arizona Order documented that Stuart Allan & Associates, Inc.—under the leadership of then-President STUART SPIVACK (who was a named respondent in the Order)—had engaged in manifold egregious violations including:

- **A catastrophic fiduciary trust account shortage of more than $2.2 million, with an ongoing substantial shortage estimated as high as $2.87 million. This massive deficit reflected the illegal commingling and theft of client funds for its own operating expenses—a cardinal sin in financial service and a flagrant breach of fiduciary duty;**
- **Systematic failure to remit collected client funds, amounting to defaulting on payment of money collected for others and unlawfully retaining funds scheduled to be remitted to clients;**
- **Operation without a valid license for more than a year (from June 2012 to April 2013), yet continuing to engage in collection activities, including illegally hiring attorneys on its behalf to file collections lawsuits and coerce debt payments;**
- **Engagement in a consistent pattern of abusive, unfair, and misleading collection practices against consumers. This included misrepresenting the state of the law to debtors, using unauthorized or oppressive tactics designed to harass, and employing communications that tended to ridicule, disgrace, or humiliate individuals;**
- **Gross and total failure of financial record-keeping and internal controls, failing to maintain adequate books, or to prepare required monthly trust account reconciliations, or to provide essential financial documents for examination;** and
- **The imposition of continuous state oversight, mandating that Stuart Allan & Associates be subject to departmental examinations every six months until December 31, 2015, and requiring the submission of monthly trust account reconciliations prepared by outside accountants for twelve consecutive months, commencing in September 2013.**

27. The continuity of corporate identity between Stuart Allan & Associates, Inc., and Defendant STUART-LIPPMAN—including identical Arizona corporate registration—renders the 2013 Arizona Consent Order binding on the present entity. The Arizona Order's detailed findings are also admissible to show Defendants' knowledge of their legal obligations and the willfulness of subsequent violations.

28. In fact, the Arizona regulators deemed the misconduct by Defendant STUART-LIPPMAN so severe that, as a central and non-negotiable remedy to avoid outright dissolution and license revocation, the state mandated a "full and complete ownership and control" transfer of the company to new, independent leadership, represented by JEROME LIPPMAN. STUART SPIVACK was specifically identified and named in the Consent Order in his capacity as President, underscoring the regulators' intent to impose systemic changes from the very top. This forced transfer of ownership was the linchpin of the regulatory intervention, designed to ensure a genuine and lasting reform of the disgraced entity.

## C. The Spivack Family Enterprise: Attorney-Advised Fraud and Obstruction

29. The full scale of Defendant STUART-LIPPMAN's fraudulent enterprise is further revealed by the continuous involvement of its key legal actor, LOUIS M. SPIVACK, Esq., a direct relation to company president STUART SPIVACK, and the company's general counsel and its registered Statutory Agent.

30. LOUIS M. SPIVACK is a highly prominent member of the Pima (Ariz.) County Bar, having served twenty-seven (27) years as an Assistant District Attorney and criminal

prosecutor (1983–2010), gaining immense institutional knowledge and local influence. Despite his distinguished public service, LOUIS M. SPIVACK maintained a close professional and physical proximity to the family business: his law practice, LOU SPIVACK, P.C., and Defendant STUART-LIPPMAN's headquarters were located just one floor apart in the same building at 5447 East 5th Street in Tucson. The building is known as the "Lippman Building," which according to public records is owned by the family of JEROME LIPPMAN. The office locations—LOUIS M. SPIVACK in Suite 205 and STUART-LIPPMAN in Suite 110—establish a deep, three-way nexus of family, corporate control, and property ownership in the precise local jurisdiction where LOUIS M. SPIVACK served as a senior criminal prosecutor for nearly three decades.

31. This physical and professional entanglement was operational. On June 3, 2025, Plaintiff's process server successfully served the Summons and Complaint on Defendant STUART-LIPPMAN through Vice President of Operations JUSTIN DAVIS (who is also a member of the company's board). According to the process server's subsequent affidavit (*Dkt. 11*), DAVIS personally accepted service of the federal lawsuit while physically present inside LOUIS M. SPIVACK'S law office in Suite 205, which is located on an entirely different floor at 5447 East 5th Street from STUART-LIPPMAN's corporate offices in Suite 110. This act proves the intimate operational entanglement and coordination of the SPIVACK family enterprise in managing litigation risk.

32. This intimate relationship persisted even as the company's predecessor faced regulatory catastrophe. LOUIS M. SPIVACK served as the Statutory Agent for the company (then known as "Stuart Allan & Associates, Inc.") at the time it was subjected to the damning

August 2013 Arizona Consent Order *(See **Exhibit G**)*. This Order detailed catastrophic failures, including a multi-million-dollar fiduciary trust account shortage, illegal commingling of funds, and widespread abusive collection practices. LOUIS M. SPIVACK's role as the legal point of contact during this crisis, and his continued involvement as the Statutory Agent thereafter, confirms his direct knowledge of the scheme and supports the inference of attorney-advised regulatory evasion.

33. Furthermore, public records document that Defendant STUART-LIPPMAN, under the leadership of LOUIS M. SPIVACK's direct relation STUART SPIVACK, was named as a Garnishee in the 2008 federal criminal case *United States v. Nero, et al*. (D. Ariz., No. 4:08-CR-744). This fact confirms that STUART-LIPPMAN was financially entwined—via employment or contract—with one or more convicted federal felons who engaged in wire fraud and money laundering, forcing the U.S. Attorney's Office to seize the earnings one of the *Nero* convicted felons (ROY FIFE) from the collection agency.

34. The close professional and familial relationship between LOUIS M. SPIVACK (a sitting Assistant D.A. until 2010) and the leadership of a company financially linked to federal criminals in the same jurisdiction—Pima County, Arizona—strongly supports the inference of potential public office abuse and a concerted scheme to shield the family debt collection business from criminal and aggressive civil scrutiny for more than a decade.

35. On May 26, 2025, Plaintiff served LOUIS M. SPIVACK, as Registered Agent, with a formal Litigation Hold Letter *(see **Exhibit H**)* that explicitly warned against the destruction of all evidence, including website and digital records. In the months

immediately following this warning, LOUIS M. SPIVACK has appeared to take swift action to dismantle his law practice LOU SPIVACK, P.C., and to conceal its professional assets. Plaintiff has since discovered that the public-facing website for LOUIS M. SPIVACK's law firm, ***louspivackpc.com***, has been taken down and completely disabled, and while the law office phone line remains active, it appears to be no longer answered by a live person or staff, indicating the practice has ceased taking in new clients or conducting public-facing operations.

36. This rapid and highly suspicious professional retreat by LOUIS M. SPIVACK, occurring directly after the service of Plaintiff's litigation hold, provides compelling evidence of consciousness of guilt and an attempt to evade the discovery process. *(See* ***Exhibit N****: Screenshot of the disabled website taken November 1, 2025, attached alongside the Internet Archive screenshot of the same website taken February 24, 2025, showing a robust, detailed web presence for the firm.)*

37. As of the date of this filing, LOUIS M. SPIVACK's law license is still listed as "active" with the Arizona State Bar, and he remains the officially registered Statutory Agent for Defendant STUART-LIPPMAN on the Arizona Corporation Commission website. *(See* ***Exhibit I*** *and* ***Exhibit J****)*. This continuous legal role, coupled with the immediate and apparently total operational dismantling of his decades-long solo practice, constitutes compelling evidence of willful spoliation of evidence and a deliberate attempt to obstruct the federal judicial process by concealing and destroying records relating to the fraudulent enterprise, thereby warranting immediate judicial intervention.

### D. The Sham of Stuart Allan & Associates' Resulting 'New Ownership': Calculated Fraud on Regulators

38. The critical requirement imposed in the 2013 Consent Order by the Arizona DiFi—the mandatory "full and complete" transfer of ownership and control of Stuart Allan & Associates, Inc., to new, untainted leadership—was, in reality, a meticulously calculated charade designed to defraud the very regulators who issued the Order. Public records reveal a deliberate, long-term scheme executed by Defendant STUART-LIPPMAN to systematically circumvent this pivotal condition and maintain the problematic original leadership structure under false pretenses.

39. Despite the explicit terms of the 2013 Consent Order, public records show that STUART SPIVACK was never truly dislodged from a position of power and influence within the organization. Following the Order, STUART SPIVACK was indeed nominally "demoted" to Vice President, a title that still retained significant executive authority. Subsequently, he briefly transitioned to a Board Member role, further ensuring his continued presence in the core governance and strategic direction of the company. (*A detailed year-by-year roster of the company's Presidents, Vice Presidents, Treasurers, and individual Board Members from its founding to the present, compiled by Plaintiff from the company's annual reports, is annexed hereto as **Exhibit L**.)* This strategic retention allowed STUART SPIVACK to maintain substantial influence, thereby undermining the spirit and intent of the Consent Order's reform mandate from its inception.

40. JEROME LIPPMAN, the individual designated by the Arizona Order as the supposed new owner entrusted with "full and complete control" and tasked with implementing

fundamental reforms, remained involved with the company in a titled role for approximately five years. While his presence initially created the appearance of compliance and a new, clean chapter, LIPPMAN'S eventual departure in 2019 paved the way for the culmination of the original leadership's deliberate evasion strategy.

41. With the immediate regulatory scrutiny of the Arizona Order receding and the designated "new" leader's tenure concluded, STUART SPIVACK ultimately returned to his original and most powerful position as President of Defendant STUART-LIPPMAN in late 2019, per the company's annual report filed with the Arizona Corporation Commission. STUART SPIVACK has remained in this role to the present day.

42. This calculated leadership carousel, extending over more than six years from the issuance of the Arizona Order, demonstrates unequivocally that the cosmetic rebrand from "Stuart Allan & Associates, Inc." to "STUART-LIPPMAN & ASSOCIATES, INC." was far more than a mere change of name. It was an integral part of a sophisticated, fraudulent scheme meticulously designed to convince Arizona regulators that a substantive and permanent reform had occurred, when in fact the problematic leadership responsible for the initial egregious misconduct was merely waiting for a strategic moment to reassume full control and perpetuate the company's dubious *modus operandi*. This sustained deception deeply implicates Defendant STUART-LIPPMAN in an ongoing fraud against regulatory authorities.

### E. Non-Compliance By Design: The Illusory 'Compliance Officer'

43. Strikingly, the corporate fraud by Defendant STUART-LIPPMAN was not merely one of evasion but of institutional design. The catastrophic regulatory failures detailed in the

2013 Arizona Order, which constituted grounds for license revocation and were explicitly resolved by the company to avoid outright dissolution and license revocation, persist through the company's deliberate structural indifference to oversight.

44. This is best evidenced by the appointment of TAMARA HARRIS as Chief Compliance Officer of Defendant STUART-LIPPMAN. This critical promotion occurred in April 2014—just one month before the company officially recorded its rebranding from Stuart Allan & Associates, Inc. HARRIS eventually accumulated the additional titles of Secretary of the Board and Director, further reinforcing her status as an unqualified internal loyalist entrusted with the highest executive oversight roles.

45. Despite the critical oversight duties of these roles, publicly available records show that TAMARA HARRIS holds no postsecondary degree, possesses no documented compliance or legal credentials, and had spent nearly two decades exclusively as a Collection Manager (1997–2012) for Defendant STUART-LIPPMAN and its predecessors before being named to this crucial and highly specialized executive role.

46. Such a sudden promotion of an unqualified internal loyalist into three critical executive oversight positions following a major regulatory sanction is not a procedural misstep—it was an affirmative, calculated choice by Defendant STUART-LIPPMAN designed to neutralize accountability. This "surface-level compliance" mechanism ensured that regulatory concerns were structurally suppressed and neutralized, thereby preventing any substantive roadblocks to the company's continued use of deceptive or illegal collection practices.

47. The installation of an unqualified Chief Compliance Officer institutionalized "non-compliance by design." This structural indifference is powerful evidence that Defendant STUART-LIPPMAN's leadership choices were not intended to reform the enterprise, but to structurally resist accountability and continue the fraudulent *modus operandi*.

## F. A Multi-State Pattern of Fraudulent Regulatory Concealment And Unlicensed Operations

48. Armed with a new name and the false pretense of new leadership—a deception designed to obscure its egregious violations in Arizona—Defendant STUART-LIPPMAN immediately embarked on a systematic, multi-state campaign of fraudulent concealment and regulatory evasion to obtain and maintain its licenses to operate across the country. This pervasive pattern of misconduct, documented by regulatory findings in multiple states, unequivocally demonstrates STUART-LIPPMAN's deliberate intent to operate outside the bounds of law through deceit.

49. This extensive record of regulatory fraud is highlighted by the following key findings:

### *i. The 2017 Colorado Order: Irrefutable Evidence of Deceit and Unlicensed Activity*

50. Colorado regulators, in a Stipulation and Final Agency Order issued on August 7, 2017 (*the "Colorado Order,"* ***Exhibit M***), documented Defendant STUART-LIPPMAN's flagrant disregard for licensing requirements and its brazen attempts to defraud licensing authorities. The Order meticulously detailed findings that:

- **STUART-LIPPMAN operated unlicensed for a period of approximately one year (July 2014–April 2015), during which it illegally collected from approximately 400 Colorado consumer accounts. This was not an oversight—**

**it was a deliberate continuation of business without the legal authority to do so;**

- **Following this, even after reactivating its license, STUART-LIPPMAN again operated without a valid license from September 2015 to September 2016, during which it illegally collected from approximately 874 Colorado consumer accounts. This demonstrated a clear, recidivist pattern of operating outside licensed parameters, engaging in unlawful collections from more than 1,200 consumers in Colorado alone over these two periods of unlicensed activity;**

- **Despite the explicit requirement to disclose such information, STUART-LIPPMAN deliberately and fraudulently concealed the damning 2013 Arizona Order on its 2015 Colorado license application. This was a direct, material misrepresentation to a licensing authority;**

- **Further compounding the deception, STUART-LIPPMAN falsely claimed it *had no other state licenses* on its 2015 Colorado application, even though it was actively licensed as a collection agency in Arizona at that time. This was a clear lie under oath on a regulatory document, demonstrating a pervasive intent to mislead;** and

- **The Colorado Order explicitly affirmed that STUART-LIPPMAN's actions violated multiple Colorado Revised Statutes pertaining to collection agency licenses and fair debt collection practices. STUART-LIPPMAN, while denying wrongdoing, agreed to this Order and paid a fine of $30,000, signifying its concurrence with the factual findings documented by the Colorado regulator.**

51. In sum, the Colorado Order stands as irrefutable state-level documentation that Defendant STUART-LIPPMAN not only engaged in repeated, large-scale unlicensed debt collection from consumers, but also actively perpetrated calculated fraud against a regulatory authority by lying on official documents and concealing its extensive history of severe misconduct.

52. This systematic deception by Defendant STUART-LIPPMAN directly impacts the integrity of consumer protection and financial regulation, demonstrating a pervasive disregard for the public interest in lawful and transparent business operations.

### *ii. The 2017 Illinois Regulatory Action: Further Confirmation of a Pattern*

53. Just as in Colorado, Illinois regulators documented a similar, calculated act of concealment. In a comparable administrative action cited and finalized in 2017, Defendant STUART-LIPPMAN was disciplined for the same offense: failing to disclose the highly material 2013 Arizona Order on its Illinois license application. This independent finding from a second state confirms that STUART-LIPPMAN's fraudulent concealment of its disciplinary history was not an isolated incident or an inadvertent error, but a deliberate and systemic tactic employed across multiple jurisdictions to evade regulatory scrutiny.

### *iii. The New York Deception: Likely Operating For At Least 11 Years Under Fraudulently Obtained Licenses*

54. The documented pattern of fraudulent concealment in Colorado and Illinois, where Defendant STUART-LIPPMAN actively lied on license applications by omitting its Arizona disciplinary history, provides overwhelming evidence of its *modus operandi*. Plaintiff's June 2025 Freedom of Information Law ("FOIL") request to the New York City Department of Consumer and Worker Protection ("NYC DCWP")—the agency responsible for licensing debt collectors in New York—revealed that STUART-LIPPMAN has confirmed that it collected debts from at least 7,358 New York consumers

between 2018 and 2024. *(See the contents of the DCWP's reply to Plaintiff's FOIL request annexed hereto as* ***Exhibit N****.)*

55. Given the precise and repeated nature of its documented deceit in other states during the same time period after the Arizona Order (2014-2017), it is highly probable and logically inferred that Defendant STUART-LIPPMAN also filed fraudulent license applications in New York in 2014 and 2015 by knowingly omitting its severe Arizona disciplinary history. NYC DCWP regulations specifically require applicants to disclose any enforcement actions over the previous two years. Therefore, STUART-LIPPMAN's deliberate omission of the 2013 Arizona Order would have been a highly material misrepresentation, likely serving as disqualifying grounds or a basis for denial of its license.

56. This constitutes compelling evidence that Defendant STUART-LIPPMAN has been operating in New York since 2014 under licenses obtained through fraudulent omission, thereby rendering its collections across the state unlawful from their inception due to a material misrepresentation of the company's own regulatory standing. This systemic deception directly impacts the integrity of consumer protection and financial regulation.

57. Upon information and belief, the 7,358 New York consumers disclosed by Defendant STUART-LIPPMAN in licensing filings represent only a portion of the total affected population. Given the Defendant's operation in other large, major jurisdictions—among them Colorado, Illinois, Arizona, California, and Washington State—while concealing similar regulatory enforcement history, Plaintiff estimates ***the number of impacted consumers nationwide likely exceeds 25,000***. These figures underscore that STUART-

LIPPMAN's conduct is not only consumer-oriented but pervasive, systemic, and gravely injurious to the public at large.

### G. Reckless Entrustment by the REGIONS DEFENDANTS

58. As sophisticated, federally regulated, and publicly traded financial institutions, the REGIONS DEFENDANTS are held to exceptionally strict legal and regulatory standards for vendor risk management. Their obligations—dictated by federal statutes and regulations from bodies such as the Federal Deposit Insurance Corporation ("FDIC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), and the SEC—mandate rigorous due diligence before any engagement with third-party debt collectors, and continuous, robust oversight thereafter. This duty is not merely advisory; it is a critical component of ensuring consumer protection and maintaining the integrity of the financial system.

59. In this paramount duty, the REGIONS DEFENDANTS failed spectacularly. They entrusted their debt collection activities—a sensitive function subject to federal law directly impacting consumers—to Defendant STUART-LIPPMAN, a vendor whose egregious and persistent regulatory misconduct was not merely discoverable but a matter of widely available public record. This readily accessible history of misconduct included:

- **The devastating 2013 Arizona Order, which meticulously detailed millions of dollars in client trust fund shortages, illegal commingling of funds, widespread abusive collection practices, and operation without a valid license;**

- **STUART-LIPPMAN's subsequent, documented pattern of fraudulent concealment, explicitly lying on license applications in multiple other states,**

**such as Colorado and Illinois, by intentionally failing to disclose this critical Arizona disciplinary history;**

- **The clear signs of fundamental regulatory evasion, including the sham leadership transfer and the strategic reinstatement of STUART SPIVACK, the very individual whose presidency oversaw the catastrophic misconduct leading to the Arizona Order;**

- **The undeniable financial entanglement with convicted federal criminals, where the U.S. Attorney's Office was compelled to garnish wages from STUART-LIPPMAN for ROY FIFE, a felon convicted and imprisoned for wire fraud and money laundering in the same Arizona jurisdiction;**

- **The internal, structural commitment to "non-compliance by design," evidenced by the promotion of TAMARA HARRIS, a former Collection Manager with no formal compliance credentials, to the roles of Chief Compliance Officer, Board Secretary and Director in the years after the 2013 regulatory sanction;** and

- **The egregious ethical risk posed by STUART-LIPPMAN's use of LOUIS M. SPIVACK, Esq.—a direct relation to company president STUART SPIVACK and a former Pima (Ariz.) County criminal prosecutor—as its general counsel and Statutory Agent during and after the 2013 regulatory crisis, thereby highlighting a profound conflict of interest and potential abuse of public office.**

60. The failure by the REGIONS DEFENDANTS to identify and act upon these glaring red flags is not an isolated lapse in judgment, but rather a profound manifestation of systemic internal control deficiencies. This pattern of oversight failure is starkly consistent with REGIONS FINANCIAL's own recent history of non-compliance, including, but not limited to, the following high-profile SEC sanctions:

- **TSEC Record-keeping Violations (September 2024):** *REGIONS FINANCIAL was recently sanctioned by the SEC for record-keeping failures, which resulted in penalties against its subsidiary REGIONS SECURITIES LLC, demonstrating a pattern of persistent compliance failures;* and

- **Fraudulent Misclassification of Loans (2014):** *The SEC charged executives of REGIONS FINANCIAL subsidiary REGIONS BANK with fraudulently misclassifying loans, leading to overstated earnings and misleading financial disclosures.*

61. Despite being explicitly put on direct notice by Plaintiff regarding Defendant STUART-LIPPMAN's deceptive communication tactics and regulatory issues in a prelitigation letter emailed on May 9, 2025 (*see* ***Exhibit O***), the REGIONS DEFENDANTS failed to investigate Plaintiff's information, take corrective action, withdraw the account, or ensure regulatory compliance. This knowing inaction and deliberate refusal to intervene, even when directly presented with evidence of their agent's blatant misconduct, underscores their willful blindness and constitutes an implicit ratification of STUART-LIPPMAN's unlawful practices.

62. A financial institution of the REGIONS DEFENDANTS' size and stature—equipped with extensive legal teams, compliance departments, and sophisticated due-diligence tools—cannot plausibly claim ignorance of such publicly documented and severe misconduct by a crucial vendor. By continuing to partner with and refer accounts to a demonstrably fraudulent, non-compliant, and illegally operating vendor, the REGIONS DEFENDANTS acted with extreme recklessness and willful blindness. Their actions, or deliberate inaction, directly contributed to and facilitated Defendant STUART-LIPPMAN's continued deceptive practices, making the REGIONS DEFENDANTS

directly and knowingly complicit in the resulting harm to Plaintiff, to other consumers, and to the integrity of the regulated market.

63. The widespread nature of Defendant STUART-LIPPMAN's operations, evidenced by nationwide collection activities documented through public records by Plaintiff for other major corporations—a lengthy list (*see* ***Exhibit P***) that public records show includes BERKSHIRE HATHAWAY, BANK OF AMERICA, U-HAUL, PRUDENTIAL INSURANCE, STATE FARM INSURANCE, MASSACHUSETTS MUTUAL LIFE INSURANCE, and subsidiaries of ZURICH INSURANCE—further highlights the systemic risk posed by the REGIONS DEFENDANTS' catastrophic failure of oversight and underscores the necessity of judicial intervention to ensure their adherence to fundamental regulatory and ethical obligations.

## V. CAUSES OF ACTION

### COUNT ONE:
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (15 U.S.C. § 1692, *ET SEQ*.)

**(Against All Defendants)**

64. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65. By engaging in the unlawful conduct described herein, Defendants have knowingly, willfully, and maliciously violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., designed to protect consumers from abusive and deceptive debt collection practices.

66. Specifically, Defendant STUART-LIPPMAN directly violated:

- **15 U.S.C. § 1692e(3):** *By clearly creating a false representation or implication that any individual involved in the communication was an attorney or that the communication itself was from an attorney. This was manifest through the deceptive use of the ABA logo, coupled with legal-style formatting in its April 14, 2025, collection email to Plaintiff. This tactic was explicitly designed to imbue the communication with undeserved legal authority and intimidate Plaintiff into believing he faced imminent legal action from an attorney or law firm;* and

- **15 U.S.C. § 1692e(10):** *By employing false representations or deceptive means to collect a debt. This included the fraudulent threats of invasive personal asset investigations and interference with banking relationships, which falsely implied a legal enforcement capacity that STUART-LIPPMAN did not, and does not, possess. Such coercive and manipulative tactics are a clear and direct violation of the FDCPA's prohibition against deceptive practices.*

67. Furthermore, Defendant STUART-LIPPMAN's conduct constitutes a *per se* violation of 15 U.S.C. § 1692e by falsely representing its legal status and authority. By attempting to

collect a debt from Plaintiff in New York, while operating under a license likely obtained through fraudulent concealment and therefore demonstrably invalid or improperly obtained, STUART-LIPPMAN engaged in a fundamental misrepresentation of its legal right and authority to conduct debt collection in New York.

68. A debt collector operating without proper licensure, or with a license obtained through deceit, is inherently misrepresenting a material aspect of its very existence and its power to engage in collection activities, irrespective of the nature of the underlying debt. This pervasive act of deception by Defendant STUART-LIPPMAN, inherent in its alleged unlicensed or fraudulently licensed operation, forms an independent and actionable basis for a violation of the FDCPA's mandate against false or misleading representations.

69. The REGIONS DEFENDANTS are directly and vicariously liable for the severe FDCPA violations committed by their hand-picked and authorized debt collection agent, Defendant STUART-LIPPMAN. Despite receiving explicit prior notice from Plaintiff regarding Defendant STUART-LIPPMAN's deceptive communication tactics and regulatory issues in two June 2025 settlement letters, and despite possessing substantial evidence of STUART-LIPPMAN's widespread pattern of fraudulent conduct and regulatory evasion, the REGIONS DEFENDANTS failed to take any corrective action, withdraw accounts, or terminate their relationship with the demonstrably non-compliant agent.

70. This knowing inaction and continued entrustment of debt collection by the REGIONS DEFENDANTS to a notorious bad actor constitutes ratification of the egregious misconduct and establishes both their direct liability for complicity in the deceptive

scheme and their vicarious liability for the actions undertaken by Defendant STUART-LIPPMAN on behalf of the REGIONS DEFENDANTS.

71. As a direct and proximate result of the REGIONS DEFENDANTS' knowing, willful, and malicious misconduct, Plaintiff has suffered and continues to suffer significant actual damages, including emotional distress, humiliation, anxiety, reputational harm, business interference, and loss of peace of mind. Plaintiff is also entitled to statutory damages under 15 U.S.C. § 1692k and punitive damages for Defendants' calculated and ongoing violations of federal law.

## COUNT TWO:
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
**(Against All Defendants)**

72. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73. Defendant STUART-LIPPMAN and the REGIONS DEFENDANTS, through their concerted actions and willful omissions, committed deceptive acts and practices in the conduct of their business, trade, and commerce, in violation of New York General Business Law ("GBL") § 349. This statute prohibits materially misleading consumer-facing conduct and demands that such practices be "consumer-oriented" with a broad impact on the public. Defendants' actions directly satisfy all statutory requirements.

74. First, Defendants' deceptive conduct was unmistakably consumer-oriented and possessed a pervasive impact on the public. The scheme perpetrated by Defendant STUART-LIPPMAN, and enabled by the REGIONS DEFENDANTS, extended far beyond a singular interaction with Plaintiff. As detailed above, STUART-LIPPMAN has a documented history of operating unlicensed in multiple states, including collecting from more than 1,200 consumer accounts while illegally unlicensed just in the state of Colorado alone (*as per the 2017 Colorado Order*).

75. Crucially, public records obtained by Plaintiff via FOIL requests confirm that Defendant STUART-LIPPMAN targeted and collected from at least 7,358 consumers within the State of New York between 2018 and 2024. This widespread operational reach, combined with its serial acts of deception, demonstrates a profound and systemic impact on

consumers at large, transforming this from any semblance of a private dispute into a matter of clear public interest and policy. The very act of operating under licenses allegedly obtained through fraudulent concealment fundamentally constitutes a deceptive business practice that directly harms the public by circumventing safeguards designed for consumer protection.

76. Second, the Defendants' conduct was materially misleading. Defendant STUART-LIPPMAN's tactics—including the deceptive use of the ABA logo and threats of asset investigations—were deliberately designed to implant false perceptions of authority and urgency, coercing consumers through intimidation.

77. Beyond these direct misrepresentations in communications, the underlying practice by Defendant STUART-LIPPMAN of conducting debt collection activities while operating under licenses obtained through deceit (by concealing severe regulatory sanctions and previous instances of unlicensed activity) is inherently and profoundly misleading. It misrepresents the fundamental legitimacy and lawful operational status of the entity itself, information that is absolutely material to any consumer receiving a collection demand.

78. Third, Plaintiff—a natural person and resident of Kings County, New York—was directly harmed as a result of Defendants' deceptive conduct. Plaintiff was an immediate recipient of Defendant STUART-LIPPMAN's misleading communications, which caused him significant emotional distress, anxiety, and business interference, as further outlined below. Furthermore, as a New York consumer affected by STUART-LIPPMAN's alleged fraudulent operational practices (operating under a likely fraudulently obtained license

impacting thousands), Plaintiff suffered direct harm from the systemic and unlawful circumvention of consumer protection safeguards intended to ensure the integrity of debt collection services.

79. Given the brazen and well-documented nature of these violations, spanning multiple states and impacting numerous consumers, Plaintiff seeks not only actual and statutory damages under GBL § 349 but also punitive damages to deter future egregious and unlawful conduct by Defendant STUART-LIPPMAN.

80. The foregoing conduct constitutes a repeated pattern or practice of deception affecting the consuming public and is thus subject to enhanced remedies under GBL § 349(h).

## COUNT THREE:

### RECKLESS INSTITUTIONAL ENTRUSTMENT AND GROSSLY NEGLIGENT SUPERVISION

**(Against the REGIONS DEFENDANTS)**

81. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82. The REGIONS DEFENDANTS are directly liable for their own independent acts of reckless institutional entrustment and grossly negligent supervision. As sophisticated, federally regulated, and publicly traded financial institutions, the REGIONS DEFENDANTS bore a heightened, non-delegable duty to conduct rigorous due diligence and continuous oversight over its third-party vendors, particularly those engaged in sensitive, consumer-facing activities such as debt collection. This duty demanded higher level of care commensurate with the immense risks associated with financial services.

83. The REGIONS DEFENDANTS failed in this critical duty with catastrophic consequences. They knowingly (or with extreme and reckless disregard) entrusted their debt collection activities to Defendant STUART-LIPPMAN, a vendor clearly engaged for more than a decade in a pervasive, multi-state pattern of fraud, regulatory evasion, and consumer abuse. This egregious history was not obscure; it was a matter of readily ascertainable public record, easily discoverable through the exercise of reasonable diligence mandated for a financial institution of REGIONS BANKS's size and stature.

84. Specifically, the REGIONS DEFENDANTS knew or should have known:

- **Of the severe 2013 Arizona Order, which detailed STUART-LIPPMAN's predecessor's staggering multi-million-dollar trust account shortage, illegal commingling of client funds, pervasive abusive collection practices, and unauthorized operation without a valid license;**

- **Of STUART-LIPPMAN's subsequent, documented fraud on state regulators in Colorado and Illinois, where it repeatedly and falsely concealed the 2013 Arizona Order on its license applications;**

- **That STUART-LIPPMAN engaged in a calculated sham to circumvent the explicit leadership transfer mandate of the 2013 Arizona Order, allowing the very individual responsible for the initial widespread misconduct, STUART SPIVACK, to remain in positions of influence and ultimately return to the company's presidency, thereby perpetuating a fraudulent scheme against regulators;** and

- **That, as a direct result of these patterns of deceit, STUART-LIPPMAN was likely operating for years under licenses in multiple states obtained through fraud and deception, meaning the company's very authority to collect debts was deeply compromised**.

85. The REGIONS DEFENDANTS' failure to uncover or address this pervasive misconduct constitutes an extreme departure from the standard of care required of a financial institution and amounts to gross negligence. This is not an isolated lapse but instead consistent with REGIONS FINANCIAL's own recent history of similar compliance failures, including multiple SEC sanctions for inadequate internal controls. By willfully disregarding (or recklessly failing to uncover) these highly material and publicly available red flags concerning its chosen debt collector, the REGIONS DEFENDANTS not only breached their duty but effectively provided a platform—and financial incentive—for the continuation of Defendant STUART-LIPPMAN's nationwide fraudulent enterprise.

86. As a direct and proximate result of the REGIONS DEFENDANTS' reckless institutional entrustment and grossly negligent supervision, Plaintiff suffered the unlawful collection attempt detailed herein, which was a foreseeable consequence of entrusting a notoriously deceptive and non-compliant third-party vendor. This conduct warrants an award of punitive damages to deter such extreme corporate dereliction in the future.

## COUNT FOUR:

### CIVIL CONSPIRACY AND AIDING AND ABETTING CONSUMER FRAUD

**(Against All Defendants and Unnamed Co-Conspirators)**

87. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

88. Under New York law, civil conspiracy is not an independent tort but requires a primary, underlying unlawful act. Here, the underlying tort for this conspiracy is Defendant STUART-LIPPMAN's serial and persistent fraud on state regulators, its sustained engagement in unlawful business practices, and the obstruction of justice by its General Counsel and Statutory Agent, LOUIS M. SPIVACK, Esq., all designed to exploit and collect from consumers under false pretenses. This includes, but is not limited to::

- **Operating under licenses obtained through systemic fraudulent concealment (specifically confirmed in Colorado and Illinois, and strongly inferred in New York);**
- **Making false statements on official license applications to deliberately hide its severe disciplinary history (the 2013 Arizona Order);**
- **Flagrantly circumventing the mandatory leadership reform stipulated in the 2013 Arizona Order, by maintaining STUART SPIVACK's influence and ultimately restoring him to the presidency, thus defrauding the Arizona Department of Insurance and Financial Institutions;**
- **Engaging in a concerted scheme with LOUIS M. SPIVACK, Esq., the company's General Counsel and Statutory Agent, to conceal and destroy relevant evidence following the initiation of this lawsuit, including the suspicious dismantling of his law practice's public-facing assets;** and
- **Engaging in deceptive collection tactics, such as the false implication of attorney involvement and fraudulent threats of personal asset investigations.**

89. The REGIONS DEFENDANTS, along with their authorized agent STUART-LIPPMAN and its co-conspirator LOUIS M. SPIVACK, Esq., knowingly aided, abetted, and conspired to facilitate and perpetuate this fraudulent scheme and its harmful impact on consumers. Such conspiracy and aiding and abetting are demonstrated by the following elements:

- **Agreement:** *An agreement between the conspirators—including STUART-LIPPMAN, STUART SPIVACK, and LOUIS M. SPIVACK—can be inferred from their conduct, including their continuous family and corporate control of the enterprise during and after the 2013 regulatory fraud, and their immediate, synchronized actions to conceal evidence following the Litigation Hold Letter. The REGIONS DEFENDANTS' willful blindness and continued provision of accounts further implies a tacit agreement to benefit from the illegal operations;*

- **Overt Acts in Furtherance of Conspiracy by STUART-LIPPMAN (and its Agents):**

  - *Consistently filing fraudulent license applications across states;*

  - *Operating unlicensed while collecting from thousands of consumer accounts;*

  - *Actively concealing the true nature of its corporate leadership and regulatory compliance;*

  - *Engaging in financial entanglement with one or more convicted federal felons imprisoned for wire fraud and money laundering (United States v. Nero, et al., D. Ariz., No. 4:08-CR-744);*

  - *LOUIS M. SPIVACK, Esq., as General Counsel and Statutory Agent, failing to perform his professional duty by immediately dismantling his law practice's assets following the service of the Litigation Hold Letter, in a clear effort to obstruct discovery and commit spoliation;* and

  - *Sending deliberately deceptive collection communications to consumers like Plaintiff.*

- **<u>Overt Acts in Furtherance of Conspiracy by the REGIONS DEFENDANTS</u>:**
    - *Continuing to provide STUART-LIPPMAN with a steady stream of delinquent accounts for collection, thereby sustaining and enabling STUART-LIPPMAN'S fraudulent enterprise;*
    - *Failing to conduct adequate due diligence required of a federally regulated financial institution;* and
    - *Failing to take corrective action, withdraw accounts, or terminate their relationship with STUART-LIPPMAN even after receiving explicit notice from Plaintiff regarding specific instances of deceptive conduct.*
- **<u>Intentional Participation</u>:** *The conspirators' intentional participation is demonstrated by*:

    (i) *The SPIVACK family's documented continuous control and attorney-advised regulatory evasion;*

    *(ii) LOUIS M. SPIVACK's deliberate act of destroying evidence after receiving the Litigation Hold Warning;* and

    *(iii) the REGIONS DEFENDANTS' willful blindness to the overwhelming public evidence of pervasive fraud and links to financial crime;* and
- **<u>Resulting Damage</u>:** *As a direct and foreseeable result of this concerted, fraudulent scheme, Plaintiff suffered direct harm, including being subjected to deceptive collection practices intended to coerce payment, and emotional distress. Furthermore, the broader public suffered harm from being subjected to collections by an entity operating under allegedly fraudulently obtained licenses, undermining the integrity of regulatory oversight.*

90. The REGIONS DEFENDANTS provided substantial assistance to Defendant STUART-LIPPMAN's fraudulent activities, enabling the scheme to continue operating under false pretenses and through the destruction of evidence, all while financially benefiting from these arrangements. Plaintiff seeks full compensation for damages sustained, and punitive damages to deter such malicious and concerted actions in the future.

## COUNT FIVE:
## DECLARATORY RELIEF
**(Against All Defendants)**

91. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92. An actual, concrete, and justiciable controversy exists between Plaintiff, Defendants STUART-LIPPMAN, and the REGIONS DEFENDANTS concerning their widespread and ongoing fraudulent debt collection practices, deliberate regulatory evasion, and profound failures of corporate oversight. This controversy presents a live dispute as to Defendants' adherence to federal and state consumer protection laws and standards of ethical business conduct.

93. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that:

- **The communications issued by Defendant STUART-LIPPMAN to Plaintiff, including the deceptive use of the American Bar Association logo and false threats of asset investigations, were unlawful and violated 15 U.S.C. §§ 1692e(3) and 1692e(10) of the FDCPA, and New York General Business Law § 349;**

- **Defendant STUART-LIPPMAN's conduct of collecting debts in New York (and other states) while operating under licenses obtained through fraudulent concealment and other deliberate acts of regulatory evasion constitutes an unlawful and deceptive business practice;**

- **The REGIONS DEFENDANTS' reckless institutional entrustment and grossly negligent supervision of Defendant STUART-LIPPMAN, given its documented history of severe misconduct and serial fraud on regulators, constitute a failure to adhere to legal and regulatory standards of care applicable to financial institutions;** and

- **The collective conduct of all Defendants constitutes civil conspiracy and aiding and abetting consumer fraud, thereby violating applicable state and federal laws.**

94. Given the deeply embedded pattern of multi-state regulatory evasion and deceptive practices by Defendant STUART-LIPPMAN, and the profound failure of oversight by the REGIONS DEFENDANTS, declaratory relief is not merely a formality but a critical necessity. Such a judgment will not only adjudicate the rights and duties of the parties directly involved but will also establish precedent to safeguard literally thousands of consumers who have been, and may continue to be, subjected to collection efforts by an entity operating under allegedly fraudulently obtained licenses.

95. The public interest strongly favors judicial intervention to clearly affirm the unlawfulness of such systemic evasion and to compel greater accountability from both debt collectors and the financial institutions that employ them. This comprehensive declaratory judgment is indispensable for clarifying the legal landscape and ensuring compliance with the fundamental principles of fair debt collection and regulatory integrity.

**COUNT SIX:**
**INJUNCTIVE RELIEF**
**(Against All Defendants)**

96. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

97. The violations and misconduct detailed throughout this Complaint are not isolated incidents but rather part of a pervasive, long-standing, and systemic pattern of deceptive, unlawful, and fraudulent practices engaged in by Defendant STUART-LIPPMAN, enabled by the gross negligence and willful blindness of the REGIONS DEFENDANTS.

98. This scheme is compounded by the documented attempts by Defendant STUART-LIPPMAN's General Counsel and Statutory Agent, LOUIS M. SPIVACK, Esq., to obstruct justice and conceal evidence via the abrupt dismantling of his law practice's public-facing assets. This coordinated conduct poses an ongoing, substantial, and irreparable threat to Plaintiff and to potentially tens of thousands of consumers across multiple states, as well as to the integrity of the regulatory frameworks designed to protect them. The nature and scale of these violations demonstrate a clear disregard for legal obligations and ethical standards, necessitating robust judicial intervention.

99. Given the deeply embedded and multi-faceted nature of Defendants' misconduct, Plaintiff seeks both preliminary and permanent injunctive relief to abate these unlawful practices and to prevent future harm.

100. Specifically, Plaintiff requests that this Court issue an injunction:

- **Permanently prohibiting Defendant STUART-LIPPMAN from engaging in any debt collection activities while operating under any license obtained through fraudulent concealment or without proper, valid licensure in any jurisdiction. This includes, but is not limited to, requiring STUART-LIPPMAN to immediately cease collection activities in any state where its license relied on false or misleading information;**

- **Permanently enjoining Defendant STUART-LIPPMAN from employing any simulated legal correspondence, including the use of logos or branding (such as the American Bar Association logo) that falsely imply attorney involvement or other unauthorized legal authority;**

- **Permanently enjoining Defendant STUART-LIPPMAN from making any fraudulent threats regarding asset investigations, interference with banking relationships, or other coercive tactics that misrepresent their legal power or authority;**

- **Mandating that Defendant STUART-LIPPMAN immediately remove LOUIS M. SPIVACK, Esq., as the Statutory Agent and Registered Agent for all corporate entities in every state where he currently serves, and appoint a neutral, independent third party to accept service of process;**

- **Ordering Defendant STUART-LIPPMAN and LOUIS M. SPIVACK, Esq., to immediately produce a sworn declaration attesting to the preservation of all electronic data related to the *louspivackpc.com* website, and mandating a forensic mirror image of all computers and electronic devices used by LOUIS M. SPIVACK from 2000 to the present;**

- **Mandating that the REGIONS DEFENDANTS to adopt, implement, and rigorously enforce enhanced due diligence, vendor compliance, and oversight protocols for all future debt collection agents, subject to independent audit and reporting to the Court for a specified period. This includes a requirement to conduct comprehensive and ongoing reviews to ensure all third-party vendors are properly and legitimately licensed, and are compliant with all relevant federal and state consumer protection laws;** and

- **Prohibiting the REGIONS DEFENDANTS from entrusting any future debt collection to Defendant STUART-LIPPMAN or any entity that has a history of major regulatory sanctions, fraudulent licensing, or serial non-compliance.**

101. Plaintiff and the public have no adequate remedy at law for the ongoing and threatened harm, which includes the subversion of regulatory oversight and the erosion of trust in financial services. Injunctive relief is critical not only to protect Plaintiff from further misconduct but also, in the clear public interest, to safeguard thousands of other consumers from pervasive and unchecked deceptive practices, and to restore integrity to debt collection processes.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, given the egregious, systemic, and multi-state nature of Defendants' violations of federal and state law, Plaintiff respectfully demands judgment against Defendant STUART-LIPPMAN and the REGIONS DEFENDANTS, jointly and severally, as follows:

**(a) Actual damages in an amount to be determined at trial, sufficient to fully compensate Plaintiff for all harm suffered, including but not limited to emotional distress, reputational harm, business interference, and other ascertained losses resulting from Defendants' unlawful conduct;**

**(b) Statutory damages for each and every violation alleged under the Fair Debt Collection Practices Act (15 U.S.C. § 1692k) and New York General Business Law § 349, in the maximum amounts permitted by law;**

**(c) Punitive damages in an amount sufficient to punish Defendants for their willful, malicious, fraudulent, and reckless conduct, and to powerfully deter similar egregious misconduct by them and others in the future;**

**(d) Declaratory relief as more fully set forth in Count 5 of this Complaint;**

**(e) Injunctive relief, both preliminary and permanent, as more fully set forth in Count 6 of this Complaint, including, but not limited to:**

- *Prohibiting STUART-LIPPMAN from engaging in any debt collection activities while operating under any license obtained through fraudulent concealment or without proper, valid licensure in any jurisdiction;*

- *Prohibiting STUART-LIPPMAN from employing any simulated legal correspondence or fraudulent threats; and*

- *Requiring the REGIONS DEFENDANTS to adopt, implement, and report on enhanced due diligence, vendor compliance procedures, and oversight protocols for all future debt collection agents, to ensure fundamental regulatory compliance and prevent recurrence of such systemic failures;*

**(f)** **Costs and reasonable legal fees incurred in prosecuting this action, as permitted by 15 U.S.C. § 1692k(a)(3) and New York General Business Law § 349(h), given Plaintiff's status as a *pro se* litigant;** and

**(g)** **Such other and further relief as the Court deems just and proper in the interests of justice, consumer protection, and deterrence.**

## VII. CONCLUSION

102. Plaintiff respectfully submits that the facts and exhibits presented herein establish a sustained, multi-jurisdictional pattern of calculated criminal enterprise, regulatory evasion, and obstruction of justice. Defendant STUART-LIPPMAN has operated for more than a decade under fraudulently obtained licenses, deploying deceptive collection tactics against thousands of consumers while concealing its disciplinary history from licensing authorities in Arizona, Colorado, Illinois, and likely New York.

103. The fraudulent scheme is actively compounded by the documented attempt of Defendant STUART-LIPPMAN's general counsel, registered Statutory Agent and co-conspirator, LOUIS M. SPIVACK, Esq., to destroy evidence and obstruct the federal discovery process. The REGIONS DEFENDANTS knowingly entrusted consumer accounts to this recidivist fraudulent entity despite readily available evidence of egregious misconduct and financial entanglement with one or more convicted federal felons, thereby compounding the harm and enabling its continuation.

104. This is not a private dispute—it is a matter of profound public interest, public policy, and public integrity. The conduct alleged implicates the rights of more than 7,300 New Yorkers and potentially tens of thousands of consumers nationwide. It constitutes a systemic assault on the rule of law, demonstrating a failure of oversight so catastrophic it extends from the C-suite of a large, federally regulated bank down to the attempted spoliation of evidence by a former criminal prosecutor. The underlying conduct and the subsequent acts of obstruction undermine the regulatory framework designed to protect the public from abusive debt collection practices and erode trust in the institutions responsible for enforcing it.

105. Plaintiff therefore seeks declaratory and injunctive relief to halt ongoing violations, statutory damages under the FDCPA and GBL § 349, and any further relief this Honorable Court deems just and proper to restore accountability, prevent the destruction of evidence, and uphold the integrity of this Court's process.

## JURY DEMAND

Plaintiff demands trial by jury in Brooklyn, New York, on all issues so triable as a matter of right pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: XXXXXXXXX, 2025
Brooklyn, New York

Respectfully submitted,

EDWARD B. HUBBUCH
394 Lincoln Place #A5
Brooklyn, New York 11238
(646) 544-7597
bhubbuch@gmail.com

Plaintiff, *pro se*

TO: AARON R. EASLEY, Esq.
Sessions, Israel & Shartle, LLC
3 Cross Creek Drive
Flemington, New Jersey 08822
(908) 237-1660
aeasley@sessions.legal

*Counsel for Defendant* STUART-LIPPMAN & ASSOCIATES, INC.

ROBERT L. HORNBY, Esq.
CORY A. SIMMONS, Esq.
Chiesa Shahinian & Giantomasi PC
11 Times Square, 34th Floor
New York, New York 10036
(212) 973-0572
rhornby@csglaw.com

*Counsel for Defendants* REGIONS FINANCIAL CORP., ET AL.

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br>Plaintiff,<br>*v.*<br>YOEL KOHN a/k/a JOEL KOHN,<br>788 FRANKLIN REALTY LLC, and<br>WATERMARK CAPITAL GROUP LLC,<br>individually and doing business as<br>"SDA/WATERMARK CAPITAL MANAGEMENT,"<br>Defendants. | 25-CV-4924 (JMF)<br>**SECOND AMENDED COMPLAINT (PURSUANT TO LEAVE)**<br>**[ TRIAL BY JURY DEMANDED ]** |

Plaintiff Edward B. Hubbuch, proceeding *pro se*, hereby files this Second Amended Complaint against Defendants YOEL KOHN a/k/a JOEL KOHN ("YOEL KOHN"), 788 FRANKLIN REALTY LLC ("788 FRANKLIN REALTY"), and WATERMARK CAPITAL GROUP LLC ("WATERMARK CAPITAL GROUP"), seeking redress for their persistent, deliberate, and malicious pattern of fraudulent conduct, aggravated identity theft, credit defamation, and unlawful debt collection practices.

## I. INTRODUCTION

1. Plaintiff Edward B. Hubbuch brings this civil action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and New York common law, asserting claims for credit defamation, fraudulent misrepresentation, aggravated identity theft, tortious interference with prospective economic advantage, and abuse of process.

2. This action seeks redress against Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP for their deliberate, multi-pronged scheme to:

- **Misuse Plaintiff's personal identifying information to fabricate a consumer loan on his credit file;**
- **Unlawfully attempt to collect a commercial debt as consumer debt;**
- **Cause Plaintiff severe financial, reputational, and emotional harm;** and
- **Systematically weaponize his credit report and other legal processes as part of a broader, extortionate pattern of conduct designed to circumvent New York City law and maliciously retaliate against Plaintiff for asserting his legal rights.**

3. In June 2020, during the height of the COVID-19 pandemic and amid an active ban on the enforcement of personal guaranties in commercial leases under N.Y.C. Admin. Code § 22-1005 (the "Guaranty Ban"), Defendants pressured Plaintiff to provide personal identifying information—his Social Security Number ("SSN"), date of birth, and New York State driver's license—and to sign a Personal Guaranty ("Guaranty"), even though both Plaintiff and Defendant YOEL KOHN knew the Guaranty would be unenforceable under the newly implemented Guaranty Ban. Plaintiff signed in good faith, however, unaware that his personal identifiers would instead be used to create a fraudulent credit tradeline and facilitate unlawful debt collection.

4. Immediately thereafter, Defendants used Plaintiff's personal identifiers to create a fraudulent consumer tradeline with the major Credit Reporting Agencies ("CRAs") that deliberately mischaracterized the entirety of his eight-year commercial lease consisting of rent payments totaling approximately $336,000 as a mortgage-like, personal installment "loan" of approximately $336,000 allegedly owed to "SDA/WATERMARK CAPITAL MANAGEMENT"—a fictitious entity that, upon information and belief, is not formally registered in any jurisdiction. By reframing a commercial lease as a mortgage-style debt, Defendants intentionally assumed Plaintiff's identity in order to create the false

impression to TransUnion and other credit agencies that Plaintiff had personally borrowed approximately $336,000 to finance his business premises, despite there being no such loan or credit relationship whatsoever between Plaintiff and Defendants.

5. Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL also deliberately obscured their identity and link to this fraudulent tradeline by listing the official business address of "SDA/WATERMARK CAPITAL MANAGEMENT" with the major CRAs as 30 North Gould Street, Suite 22928, in Sheridan, Wyoming—a commercial dropbox widely recognized as a notorious international hub for fraudulent shell companies and corporate anonymity. Investigations by numerous consumer protection authorities, journalists, and regulatory agencies have documented this address —which had housed more than 54,000 anonymous LLCs through just a handful of registered agents working from this location as of August 2021—as a longstanding international tool for fraudulent corporate operations designed to evade oversight from regulators and law enforcement.

6. Defendants' actions were not merely negligent but instead a deliberate, deceptive, and calculated scheme designed to fabricate consumer debt, illegally attempt to collect on it, damage Plaintiff's credit profile, and obscure the true origin of the reporting. The deliberate use of this structure allowed Defendant YOEL KOHN to secretly and unlawfully position himself as a personal creditor in the event Plaintiff defaulted or filed bankruptcy, even though Plaintiff's Guaranty with KOHN was legally void and no personal obligation lawfully existed. The extensive and highly sophisticated nature of this conspiracy—particularly its disproportionate cost to establish relative to Plaintiff's single,

$3,000 monthly commercial lease, as well as the use of a notorious shell entity address in a state 2,000 miles from Defendants' corporate headquarters—strongly indicates this was part of a broader, systemic enterprise by KOHN intended to defraud his numerous commercial tenants.

7. In effect, Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP created a fraudulent workaround to New York City's emergency, COVID-related Guaranty Ban in effect at the time by weaponizing Plaintiff's credit report to simulate a mortgage-style loan obligation they could never have otherwise enforced through lawful means. This scheme later inflicted catastrophic harm to Plaintiff's financial standing, including repeated denial of credit, loss of business opportunities, and reputational injury.

8. As a direct consequence of the deliberately unlawful actions of Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP, Plaintiff has suffered significant financial harm, reputational injury, and emotional distress, including the closure of a second restaurant location in Manhattan, permanent loss of a key vendor relationship with a Manhattan-based food distributor, and the forced abandonment of a critical catering kitchen—also located in Manhattan—due to repeated financing denials by major lenders that were among the ramifications of Defendants' fraudulent credit-reporting scheme.

9. More egregiously, Defendants' fraudulent and malicious conduct continued even *after* Plaintiff filed this federal lawsuit. On or about July 16, 2025, Defendants retaliatory re-verified the fraudulent tradeline to TransUnion despite Plaintiff's formal dispute to this

particular CRA. Simultaneously, Defendants engaged in a deliberate pattern of obfuscation, most notably the scrubbing of Defendant YOEL KOHN's "Joel Kohn" identity from the public-facing website of Defendant WATERMARK CAPITAL GROUP LLC. This campaign of deliberate retaliation culminated in Defendants KOHN and 788 FRANKLIN REALTY initiating a baseless eviction proceeding against Plaintiff in September 2025 after his business had been unlawfully shut down two months earlier due to utility issues directly tied to the prior fraudulent conduct of KOHN and 788 FRANKLIN REALTY.

10. Given the severity of these actions—including the fraudulent misuse of Plaintiff's SSN, date of birth, and New York State driver's license information in execution of identity theft, deceptive credit reporting, illegal debt collection practices, and abuse of process—Plaintiff contemporaneously reported these alleged criminal acts of identity theft to the New York City Police Department, which generated a police report (No. 2025-077-004032) on June 20, 2025, reflecting Plaintiff's immediate belief that he was a victim of a crime committed by Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP. Plaintiff reserves the right to refer this matter to federal and state regulatory agencies, including the U.S. Consumer Financial Protection Bureau ("CFPB"), the Federal Trade Commission ("FTC"), the New York State Attorney General's Office, as well as to law enforcement for further investigation into potential violations of federal, state and local fraud statutes.

## II. JURISDICTION AND VENUE

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p and § 1692k(d), as Plaintiff's claims arise under the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the wrongful conduct and resulting harm occurred within the Southern District of New York. Specifically:

- **Defendants' fraudulent credit reporting targeted financial institutions headquartered in Manhattan, including banks and credit bureaus that relied on the false tradeline data;**
- **Plaintiff suffered material financial harm within this District, as the inability to obtain loans and financing—caused by Defendants' wrongful reporting—forced Plaintiff to close a second restaurant location in Manhattan, suffer the permanent loss of a key vendor relationship with a Manhattan-based food distributor, and caused him to abandon a critical catering kitchen in Manhattan;** and
- **The direct impact of Defendants' fraudulent tradeline affected Plaintiff's financial standing in the Southern District, where credit markets and commercial leasing decisions crucial to his business were centered.**

13. Although Plaintiff resides in Kings County, his financial losses, business closures, and reputational damage occurred in the Southern District, making it the proper venue for adjudicating these claims.

## III. PARTIES

14. Plaintiff Edward B. Hubbuch ("Plaintiff") is a natural person residing in Kings County, New York, and the sole owner and operator of Memphis Seoul, a restaurant located in Brooklyn, New York.

15. Defendant YOEL KOHN a/k/a JOEL KOHN (and, additionally, "Joe Kohn") is an individual residing in the State of New York. Upon information and belief, KOHN is a founding partner of WATERMARK CAPITAL GROUP LLC along with Wolfe Landau and David Tabak. Upon information and belief, KOHN also is the principal owner and controlling member of 788 FRANKLIN REALTY LLC.

16. Defendant 788 FRANKLIN REALTY LLC is a New York limited liability company with its principal place of business officially listed as 543 Bedford Avenue, Suite 264, in Brooklyn, New York, but which in reality is a commercial mailbox without any identifiable physical office space.

17. Defendant WATERMARK CAPITAL GROUP LLC, both individually and doing business as "SDA/WATERMARK CAPITAL MANAGEMENT," is a New York limited liability company with its principal place of business officially listed as 185 Marcy Avenue, Suite 304, in Brooklyn, New York. Upon information and belief, WATERMARK CAPITAL GROUP, under the direction of founding partner YOEL KOHN, deliberately concocted the fictitious and unregistered name "SDA/WATERMARK CAPITAL MANAGEMENT" to fraudulently furnish tradeline data to consumer credit bureaus, misrepresenting Plaintiff's commercial lease as a personal, mortgage-like consumer loan while concealing the true identity and business purpose of the entity.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Personal InformationObtained Under False Pretenses

18. On or about July 1, 2020, Plaintiff Edward B. Hubbuch entered into a commercial lease with Defendants YOEL KOHN and 788 FRANKLIN REALTY for the premises at 569 Lincoln Place, Store #3, in Brooklyn, New York. (*A true and correct copy of Plaintiff's lease and accompanying documents is annexed hereto as **Exhibit A***).

19. In separate emails sent to Plaintiff on June 25, 2020 (at 11:42 a.m. and again at 1:30 p.m.) finalizing execution of the lease, Defendant YOEL KOHN signed his name as "Joel Kohn." *(True and correct copies of these emails are annexed as **Exhibit B**)*. This communication establishes that Defendant YOEL KOHN holds himself out as and uses the name "Joel Kohn" (and, additionally, as "Joe Kohn") in his business dealings, including those directly related to the lease at issue in this lawsuit.

20. This lease was strictly for commercial purposes—to operate Plaintiff's quick-service restaurant, Memphis Seoul—and contained no provisions authorizing consumer credit reporting, personal loan agreements, or enforcement by a third-party credit servicer.

### B. Misrepresentation of the Personal Guaranty As a Routine but Necessary Document

21. At the time Plaintiff entered into the lease, he was aware through numerous media reports that the New York City Council—in response to the COVID-19 pandemic then raging in the city—had recently enacted N.Y.C. Admin. Code § 22-1005 (Local Law 55 of 2020), which rendered the standard Personal Guaranty in commercial leases permanently unenforceable if—as was the case with Plaintiff—the lease had been signed between

March 7, 2020, and June 30, 2021, and subsequently defaulted upon. Plaintiff understood this law had been passed to protect small business owners like himself from pandemic-related personal liability, and he had eagerly followed its development and enforcement.

22. On or about June 26, 2020—just days before Plaintiff's lease with Defendants YOEL KOHN and 788 FRANKLIN REALTY commenced—Defendant YOEL KOHN's agent presented Plaintiff at the signing of his lease with a separate Personal Guaranty. When Plaintiff expressed reluctance and noted that personal guaranties had recently been legally barred during the ongoing pandemic, KOHN's agent assured him that the document was *"no big deal"* and only necessary *"for record-keeping purposes."* However, Defendants' agent also informed Plaintiff that Defendants would not allow his lease to proceed without Plaintiff's signed Personal Guaranty, which also included his personal identifying details in the signature box.

23. Relying on that assurance—and believing the document had no legal force or risk due to the city's Guaranty Ban—Plaintiff signed the Guaranty and, as requested, provided his SSN, date of birth, and a copy of his New York State driver's license. (*A true and correct copy of the Personal Guaranty, with Plaintiff's personal identifying information redacted, is annexed hereto as* ***<u>Exhibit C</u>***)

24. Unknown to Plaintiff, Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP would later misuse Plaintiff's personal information to fabricate a fraudulent consumer tradeline with the major CRAs. This tradeline deliberately and unlawfully misrepresented his standard commercial lease—an obligation

not permissible for consumer credit reporting—as a mortgage-style consumer loan, a falsehood designed to create an unenforceable personal liability.

25. In 2024, the U.S. Court of Appeals for the Second Circuit reaffirmed that New York City's Guaranty Ban from March 2020 to June 2021 had been constitutional and that landlord enforcement rights under any Personal Guaranty executed during this protected period had been permanently extinguished. (See *Bochner v. City of New York*, 118 F.4th 505 [2d Cir. 2024]; and *Melendez v. City of New York*, 16 F.4th 992 [2d Cir. 2021]). Thus, Plaintiff's Personal Guaranty with Defendants signed in June 2020 ***is now permanently void and unenforceable as a matter of law***.

26. The misrepresentation by Defendants in June 2020 that Plaintiff's Personal Guaranty was meaningless and purely administrative was in fact, a nefarious pretext. Defendants then illegally used the document and Plaintiff's personal identifiers to simulate a personal loan tradeline in his name, with the intent to later enforce a disguised version of the lease obligation through credit-reporting pressure.

## C. The Fraudulent Credit Reporting Scheme

27. Beginning in or around July 2020, Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP knowingly and willfully furnished false tradeline data to TransUnion and the other major CRAs that mischaracterized Plaintiff as a borrower on a mortgage-like, consumer loan allegedly owed to "SDA/ WATERMARK CAPITAL MANAGEMENT," with an account number designated only as "CBD."

28. This tradeline wrongfully appeared on Plaintiff's personal credit reports as a "Loan" with the description "Loan Type - RENTAL AGREEMENT" despite there being no loan, no consumer credit transaction, and no agreement authorizing Defendants to report on Plaintiff's personal credit file.

29. The Eleventh Circuit has held that furnishing false tradeline data—especially when done willfully and without a legitimate debt relationship—can support multiple claims under the FCRA. In *Pinson v. JPMorgan Chase Bank, N.A.*, 16-17107 (11th Cir. 2019), the court reversed dismissal of a *pro se* plaintiff's FCRA claims where the bank allegedly furnished inaccurate credit data and failed to investigate disputes, emphasizing that even large institutions are liable when they misrepresent debt relationships.

30. Here, Defendants not only misrepresented the nature of the lease obligation but fabricated a fictitious entity ("SDA/WATERMARK CAPITAL MANAGEMENT") to conceal their identity and simulate a consumer loan, thereby violating both the accuracy and permissible purpose provisions of the FCRA.

31. Defendants further structured the tradeline to falsely resemble a personal mortgage or installment loan, in an apparent attempt to circumvent the unenforceability of the Personal Guaranty. By doing so, Defendants made it appear as if Plaintiff had incurred a mortgage-like, $336,000 personal credit obligation, when in reality this sum represented the total value of Plaintiff's eight-year commercial lease.

32. On June 11, 2025, Plaintiff's TransUnion credit file showed a loan delinquency exceeding $10,000 that had been reported to TransUnion and other credit agencies in February 2025

by "SDA/WATERMARK CAPITAL MANAGEMENT." The alleged loan delinquency—which matched Plaintiff's rental arrears at the time—was still falsely listed in June 2025 as more than 120 days overdue, even though Plaintiff was not in rental arrears in June 2025. Both the tradeline in general and this ongoing false report of loan delinquency in particular directly harmed Plaintiff's creditworthiness and business operations. (*A true, correct, and annotated copy of this tradeline from Plaintiff's personal TransUnion credit report for June 11, 2025, is annexed hereto as* ***<u>Exhibit D</u>***).

33. The fraudulent intent and nature of this tradeline taken out by Defendants is further evidenced by the irregular formatting of the account name and number. "SDA/WATERMARK CAPITAL MANAGEMENT" is not, upon information and belief, a registered entity in any jurisdiction, and the account number designated only as "CBD" is highly unusual, suggesting an effort by Defendants to conceal the origin of the reporting entity and evade scrutiny.

34. Also evidencing the tradeline's fraudulent nature is that other commercial tenants of Defendant YOEL KOHN who signed leases after the expiration of the Guaranty Ban in 2021 do not appear to have any tradelines similar to Plaintiff's with "SDA/WATERMARK CAPITAL MANAGEMENT." For example, the co-owners of a neighboring restaurant in the same building as Plaintiff who signed their lease and Personal Guaranties with Defendants KOHN and 788 FRANKLIN REALTY in December 2021—almost six months after the city's Guaranty Ban had been voluntarily lifted—confirmed to Plaintiff that no such "SDA/WATERMARK CAPITAL MANAGEMENT" account appears on their respective personal credit reports.

35. This confirms that the false credit tradeline attributed to Plaintiff was not routine but was selectively and intentionally used against commercial tenants of Defendant YOEL KOHN who had signed their leases during the Guaranty Ban period between March 2020 and June 2021, when Defendants KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP could not legally enforce the Personal Guaranty from those tenants directly. The elaborate and costly nature of this scheme (utilizing a fictitious entity and a Wyoming shell address) further indicates it was designed to target multiple small business owners who had signed commercial leases with Defendant YOEL KOHN through his various entities, and not just Plaintiff.

36. Plaintiff never authorized this tradeline, never signed a loan agreement, and never consented to having his lease obligations reclassified or reported as consumer debt. As a result, the conduct here of Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP violates the FCRA, New York Penal Law § 190.78 (Identity Theft), and the common law of fraudulent misrepresentation.

### D. Defendants' Use of a Notorious Wyoming Shell Address To Conceal Fraudulent Activity

37. Upon information and belief, Defendant WATERMARK CAPITAL GROUP is at least partially controlled by Defendant YOEL KOHN (one of three listed co-founders along with Wolfe Landau and David Tabak), and that WATERMARK CAPITAL GROUP operates in conjunction with or direct ownership of Defendant 788 FRANKLIN REALTY.

38. The Wyoming address associated with the fraudulent credit tradeline attributed to Plaintiff—30 North Gould Street, Suite 22928, in Sheridan, Wyoming—is widely recognized as a commercial mailbox facility used by fraudulent shell companies. This address has been flagged by the Better Business Bureau, the Wyoming Attorney General's Office, and multiple investigative journalists—and many others—for its role for more than two decades as the home of thousands of anonymous corporate entities around the world engaged in financial deception, regulatory evasion, and fraud. (*A true and correct copy of an August 6, 2021, article by The Sheridan Press detailing this controversy is annexed hereto as* ***Exhibit E***)

39. The deliberate use by Defendants YOEL KOHN and WATERMARK CAPITAL GROUP of a remote dropbox nearly 2,000 miles from their actual business operations in Brooklyn, New York—especially one internationally notorious for corporate fraud—strongly indicates intent to deceive Plaintiff and evade accountability.

40. The placement of a fabricated credit tradeline under a fictitious entity name using a Wyoming shell address by Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP constitutes a deceptive trade practice, fraudulent credit reporting, and evidence of willful misconduct under 15 U.S.C. § 1681n.

### E. Defendants' Continued and Escalated Malicious and Retaliatory Conduct

41. Plaintiff first discovered the fraudulent "SDA/WATERMARK CAPITAL MANAGEMENT" tradeline in early 2025, confirming through an analysis of his TransUnion credit report that Defendants YOEL KOHN and 788 FRANKLIN REALTY

had continuously reported this nonexistent, mortgage-like "loan" since the inception of his lease five years earlier.

42. Neither the lease agreement nor any associated documents contained provisions authorizing this fraudulent credit reporting. Defendants' use of Plaintiff's SSN, date of birth, and his New York State driver's license information to fabricate a consumer loan tradeline was done knowingly, intentionally, surreptitiously, and without legal basis.

43. After Plaintiff first filed this lawsuit in June 2025 and directly disputed the fraudulent tradeline with TransUnion and the other major CRAs, Defendants willfully chose to continue their malicious course of conduct. Rather than investigate or correct the false reporting, Defendants KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP, through "SDA/WATERMARK CAPITAL MANAGEMENT," ***deliberately re-verified the tradeline as accurate and valid in response to a query from TransUnion on or about July 16, 2025***. (*See TransUnion's letter to Plaintiff confirming the re-verification annexed hereto as* ***Exhibit F***). This action was taken in retaliation for Plaintiff's lawsuit and demonstrates a willful disregard for accuracy and an intent to further damage Plaintiff's credit.

44. Defendants' deliberate re-verification was not only unreasonable—it was retaliatory. It occurred after Defendant 788 FRANKLIN REALTY property manager Tom Rosenberg (upon information and belief, YOEL KOHN's top aide and a direct relative) had full knowledge of Plaintiff's federal complaint (see ***Exhibit G***), and despite clear evidence that the tradeline had been fabricated.

45. Following Defendants' re-verification, Plaintiff demanded that TransUnion conduct its own independent re-investigation into the tradeline at Plaintiff's request. On or about July 30, 2025, TransUnion ***determined the tradeline to be fraudulent and subsequently deleted it permanently from Plaintiff's personal credit profile***. (*See letter of confirmation from TransUnion annexed hereto as* ***Exhibit H***). This independent, third-party corroboration directly refutes Defendants' primary factual denials and unequivocally establishes the fraudulent nature of the reported tradeline and underscores their willful disregard for accuracy and consumer rights.

46. Coincident with Plaintiff's lawsuit, Defendants YOEL KOHN and WATERMARK CAPITAL GROUP began a concerted effort to scrub incriminating evidence of their connections. When Plaintiff filed this lawsuit (June 2025), the public-facing website for WATERMARK CAPITAL prominently listed KOHN as a founding partner, specifically with "property management" responsibilities. By August 2025, Plaintiff documented (via Internet Archive "Wayback Machine" screenshots) that ***KOHN and other key associates had been entirely deleted from the website***. (*See a breakdown of the changes by Plaintiff annexed hereto as* ***Exhibit I***). This sudden removal suggests an attempt by Defendants to conceal connections and evidence following litigation, indicating consciousness of wrongdoing and an effort to obfuscate their involvement.

47. After filing this complaint, Plaintiff also searched his records and found that nearly one year earlier, on or about August 28, 2024, he had received multiple copies of a letter from Defendant 788 FRANKLIN REALTY explicitly adopting the statutory language and procedural posture of a consumer debt collection notice governed by the Fair Debt

Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. The letter referred to Plaintiff as *"the consumer,"* identified 788 FRANKLIN REALTY as *"the creditor,"* and asserted Plaintiff's right to request verification of the alleged consumer debt under 15 US.C. § 1692g. It further stated, *"This is an attempt to collect a debt and any information obtained will be used for that purpose." (A true and correct copy of this letter is attached hereto as* ***Exhibit J****)*. Defendants' counsel later confirmed at the Initial Pretrial Conference held in this matter on September 30, 2025, that this FDCPA language had been *"required by law,"* thereby tacitly admitting that the Defendants were treating the commercial lease as a consumer debt for collection purposes.

48. Furthermore, on or about September 15, 2025, Defendant YOEL KOHN and 788 FRANKLIN REALTY deliberately escalated their campaign of retaliation by initiating a baseless and retaliatory eviction proceeding against Plaintiff (Kings County Civil Court Index No. LT-324841-25) in response to Plaintiff's assertion of legal rights in this federal action and a parallel state court case regarding a utility dispute that had unlawfully shut down Plaintiff's restaurant.

49. This eviction action directly followed Plaintiff's September 3, 2025, pre-litigation warning letter to Petitioners' Housing Court counsel explicitly stating that any such proceeding in light of Plaintiff's active litigation against KOHN and 788 FRANKLIN REALTY would be baseless, retaliatory, and an abuse of process. (*See Plaintiff's formal warning letter to Zev Schwartz, Esq., annexed hereto as* ***Exhibit K***).

50. This retaliatory eviction petition by Defendants YOEL KOHN and 788 FRANKLIN REALTY followed actions by both Defendants that had directly contributed to Plaintiff's

business being forced to temporarily close on July 23, 2025, causing further catastrophic financial harm to Plaintiff and leaving 10 people still unemployed as of the filing of this Second Amended Complaint. The alleged non-payment of rent for which eviction is sought is a direct consequence of Defendants' own fraudulent conduct involving the misattribution and manipulation of a utility meter, which led to the unlawful shutdown of Plaintiff's business.

51. Plaintiff's commercial utility provider, Consolidated Edison Company of New York, Inc., ("Con Edison") has since conceded by action that its July 23, 2025, seizure of the electric meter for Plaintiff's restaurant was wholly wrongful and based on errors traceable to their own longstanding failures, of which the Defendants contributed to and were equally aware. This independent, *de facto* confirmation (*extensively detailed in a state-court filing annexed hereto as **Exhibit L***) further undermines Defendants' *"unclean hands"* defense and highlights their fraudulent conduct related to Plaintiff's business operations.

52. On June 20, 2025, the same day he filed the Amended Complaint in this action (*Dkt. 5*), Plaintiff also contemporaneously reported the Defendants' alleged criminal acts of identity theft to the New York City Police Department, which generated a police report (Complaint No. 2025-077-004032) reflecting Plaintiff's immediate belief that he was a victim of a crime. *(A true and correct copy of this report is annexed hereto as **Exhibit M**)*.

### F. Plaintiff's Financial Harm and Severe Consequences

53. Plaintiff first discovered the fraudulent "SDA/WATERMARK CAPITAL MANAGEMENT" tradeline in early 2025, confirming through an analysis of his

TransUnion credit report that Defendants had continuously reported this nonexistent, mortgage-like "loan" since the day of the inception of his commercial lease five years earlier.

54. Neither the commercial lease agreement nor any associated documents contained provisions authorizing this fraudulent credit reporting. Defendants' use of Plaintiff's SSN, date of birth, and his New York State driver's license information to subsequently fabricate a consumer loan tradeline was therefore done knowingly, intentionally, and without legal basis.

55. Federal courts have consistently held that the unauthorized furnishing of false credit information—especially when done knowingly and with intent to harm—can support claims for actual damages, emotional distress, and punitive relief under the FCRA. In *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495 (4th Cir. 2007), the Fourth Circuit upheld a jury award of $245,000 in emotional distress damages where the plaintiff's credit report was falsely linked to another person's bankruptcy, causing repeated credit denials and humiliation. The court emphasized that emotional harm stemming from reputational injury and financial disruption is compensable under the FCRA.

56. Similarly, in *Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010), the Third Circuit affirmed a $750,000 jury award for emotional distress and economic harm after TransUnion falsely reported the plaintiff as a terrorist suspect. The court found that the plaintiff's inability to obtain credit, coupled with reputational damage and psychological trauma, constituted actual damages under 15 U.S.C. § 1681n and § 1681o.

57. These cases confirm that Plaintiff's injuries—including credit denials, lost business opportunities, reputational harm, and emotional distress—are not speculative. They are the foreseeable and compensable consequences of willful and malicious conduct by Defendants YOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP.

58. As a direct result of this unlawful conduct, Plaintiff has suffered:

- **A severely reduced credit score (466 as of September 15, 2025, per *Exhibit N*), all but eliminating access to conventional financing for his business operations;**
- **Repeated denials of credit, loans, and refinancing, making expansion and daily financial management impossible;**
- **Increased interest rates, imposing additional financial burdens;**
- **Loss of conventional financing opportunities, resulting in the forced closure of Plaintiff's second restaurant location in Manhattan, the permanent loss of a key vendor relationship with a Manhattan-based food distributor, and abandonment of a commercial catering kitchen in Manhattan due to credit restrictions directly caused by Defendants' fraudulent reporting;**
- **Severe reputational damage and emotional distress, stemming from the prolonged and unlawful credit defamation;** and
- **Loss of business income and associated costs due to the wrongful shutdown of Plaintiff's restaurant in Brooklyn and the retaliatory eviction stemming from Defendants' fraudulent and malicious conduct regarding the utility meter for that location.**

59. Defendants' conduct was knowing, willful, intentional, deceptive, and malicious, constituting federal statutory violations under the FCRA and FDCPA, identity theft under New York Penal Law § 190.78, fraudulent misrepresentation, and common-law fraud.

# V. CAUSES OF ACTION

## COUNT ONE: VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681s-2[a])

**(Against All Defendants)**

60. Plaintiff repeats and realleges all prior paragraphs.

61. Defendants knowingly and willfully misrepresented a $336,000 commercial lease as a personal consumer loan in Plaintiff's name, without his consent or legal justification. This false tradeline was deliberately structured to simulate a residential mortgage, thereby undermining Plaintiff's credit and violating the FCRA's accuracy and furnishing provisions.

62. Defendants furnished this fraudulent tradeline to credit bureaus with actual knowledge that no such consumer loan existed and that Plaintiff's commercial lease was not reportable as personal consumer debt. As demonstrated by their deliberate re-verification of the fraudulent tradeline despite Plaintiff's dispute, and TransUnion's ultimate finding of fraud and deletion, Defendants' actions were willful and malicious.

63. Defendants' conduct caused Plaintiff substantial financial harm, credit denial, and reputational damage, and was carried out with intent to manipulate credit markets and conceal their identity and the true nature of their fraudulent scheme.

64. Plaintiff seeks statutory, actual, and punitive damages pursuant to 15 U.S.C. §§ 1681n and 1681o, as well as injunctive relief requiring the permanent deletion of the unlawful tradeline.

## COUNT TWO: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. § 1692 *et seq.*)

**(Against Yoel Kohn a/k/a Joel Kohn and 788 Franklin Realty LLC)**

65. Plaintiff repeats and realleges all prior paragraphs.

66. Defendants, acting individually and through their agent "SDA/WATERMARK CAPITAL MANAGEMENT," knowingly and willfully attempted to collect a commercial lease obligation by improperly reclassifying it as a consumer debt.

67. On or about August 28, 2024, Plaintiff received a letter from Defendant 788 FRANKLIN REALTY that explicitly adopted the statutory language and procedural posture of a consumer debt collection notice governed by the FDCPA. The letter referred to Plaintiff as *"the consumer,"* identified 788 FRANKLIN REALTY as *"the creditor,"* and asserted Plaintiff's right to request verification of the alleged consumer debt under 15 U.S.C. § 1692g. It further stated, *"This is an attempt to collect a debt and any information obtained will be used for that purpose."*

68. Defendants' counsel later confirmed at the Initial Pretrial Conference held in this action on September 30, 2025, that Defendants had included this FDCPA language because it was *"required by law,"* thereby confirming that Defendants were improperly treating Plaintiff's commercial lease as a consumer debt for collection purposes. This reclassification was not inadvertent or clerical—it was a deliberate legal posture adopted by Defendants to invoke consumer debt collection mechanisms and pressure Plaintiff through credit reporting and statutory threat.

69. By reclassifying the lease obligation as a consumer debt and issuing a collection notice governed by FDCPA provisions, Defendants acted as *"debt collectors"* within the meaning of 15 U.S.C. § 1692a(6). Plaintiff, as the recipient of this reclassified debt notice, qualifies as a *"consumer"* under 15 U.S.C. § 1692a(3). Accordingly, FDCPA jurisdiction is properly invoked, and Defendants are subject to its statutory requirements and liabilities.

70. By engaging in collection actions for a commercial lease debt while simultaneously attempting to frame it as a consumer debt governed by the FDCPA, Defendants engaged in various unfair and deceptive practices under 15 U.S.C. §§ 1692e and 1692f, including:

- **Misrepresenting the character, amount, or legal status of the debt (15 U.S.C. § 1692e[2][A]);**
- **Using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer (15 U.S.C. § 1692e[10]);**
- **Collecting any amount (including incidental charges, fees, or expenses) unless such amount is expressly authorized by the agreement creating the debt or permitted by law (15 U.S.C. § 1692f[1]);** and
- **Threatening to take any action that cannot legally be taken or that is not intended to be taken (15 U.S.C. § 1692e[5]).**

71. Defendants' conduct in treating a commercial lease as a consumer debt and sending FDCPA-specific communications for its collection was willful, knowing, and malicious. Plaintiff therefore seeks statutory damages, actual damages, and punitive damages pursuant to 15 U.S.C. § 1692k, as well as injunctive relief barring Defendants from further unlawful debt collection practices.

**COUNT THREE:**
**CREDIT DEFAMATION**
**(Against All Defendants)**

72. Plaintiff repeats and realleges all prior paragraphs.

73. Defendants knowingly published false and damaging credit information, falsely characterizing a commercial lease as a mortgage-like, $336,000 personal loan on Plaintiff's consumer credit file.

74. Defendants acted with actual malice and reckless disregard for the truth, using Plaintiff's personal information without consent to construct a fictitious debt relationship. Their malicious intent is further evidenced by their retaliatory re-verification of the fraudulent tradeline, subsequent scrubbing of Defendant YOEL KOHN's presence from the public-facing website of Defendant WATERMARK CAPITAL GROUP, and the initiation of a baseless and retaliatory eviction proceeding.

75. This false reporting directly caused denials of credit and financing opportunities essential to Plaintiff's business operations, and severely damaged his reputation.

76. Plaintiff is entitled to damages for credit defamation, including reputational injury and punitive relief for the malicious and deceptive nature of Defendants' actions.

**COUNT FOUR:**
**FRAUDULENT MISREPRESENTATION**
**(Against All Defendants)**

77. Plaintiff repeats and realleges all prior paragraphs.

78. Defendants intentionally misrepresented the purpose of the Personal Guaranty to Plaintiff in June 2020, knowing that personal guaranties were unenforceable at the time under N.Y.C. Admin. Code § 22-1005.

79. Defendants deliberately induced the signing of that document in order to extract Plaintiff's personal identifiers under false pretenses, then misappropriated those personal identifiers to fabricate a false consumer tradeline.

80. Defendants knew Plaintiff had no knowledge of or intent to enter into any personal, mortgage-like consumer loan, and they acted with the intent to harm and mislead financial institutions and credit bureaus. Plaintiff relied on Defendants' misrepresentation and was injured as a direct result. As a direct result, Plaintiff is entitled to compensatory and punitive damages.

**COUNT FIVE:**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**(Against All Defendants)**

81. Plaintiff repeats and realleges all prior paragraphs.

82. Defendants intentionally interfered with Plaintiff's ongoing relationships with vendors, financial institutions, and commercial clients by falsely reporting a nonexistent loan and engaging in subsequent retaliatory actions, including the wrongful eviction attempt.

83. Defendants' wrongful conduct foreseeably and proximately resulted in lost financing opportunities, increased credit costs, and denial of critical business expansion paths.

84. Plaintiff's lost opportunities—totaling more than $1,000,000—were a direct consequence of Defendants' deliberate misreporting, concealment, and retaliatory conduct.

## COUNT SIX:
## ABUSE OF PROCESS
**(Against All Defendants)**

85. Plaintiff repeats and realleges all prior paragraphs.

86. Defendants YOEL KOHN and 788 FRANKLIN REALTY, through their initiation of a baseless and retaliatory eviction proceeding (Kings County Civil Court Index No. LT-324841-25) on or about September 15, 2025, against Plaintiff, engaged in the malicious perversion of regularly issued legal process (a summary non-payment petition) to accomplish an improper purpose.

87. The Defendants initiated the Housing Court Action, not to collect legitimate rent arrears, but as an additional act of retaliation against Plaintiff for exercising his legal rights in this federal action and a parallel state court case, and to punish him for exposing their prior fraudulent conduct. This improper purpose is evidenced by Plaintiff's prior written pre-litigation warning to Zev Schwartz, Esq., *(see **Exhibit K**),* and the fact that the alleged non-payment of rent was a direct consequence of Defendants' own fraudulent conduct regarding the manipulation of a utility meter and of the utility account for Plaintiff's premises, both of which directly led to the unlawful shutdown of Plaintiff's business on July 23, 2025.

88. Defendants' abuse of process has caused Plaintiff substantial financial harm, including business losses, legal fees, and emotional distress, and constitutes an unlawful attempt to silence and penalize Plaintiff for pursuing his valid legal claims.

89. Plaintiff seeks compensatory and punitive damages for Defendants' abuse of process.

## VI. PRAYER FOR RELIEF

90. **WHEREFORE**, Plaintiff respectfully demands that this Court enter judgment against Defendants YOEL KOHN a/k/a JOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP, individually and doing business as "SDA/ WATERMARK CAPITAL MANAGEMENT," as follows:

(i) **Statutory damages under 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1692k, up to $1,000 per violation;**

(ii) **Actual damages for financial loss, lost business opportunities, reputational harm, and emotional distress in excess of $1,000,000, including specific losses incurred due to the wrongful shutdown of Plaintiff's restaurant and the retaliatory eviction attempt;**

(iii) **Punitive damages for Defendants' intentional, fraudulent, malicious, and retaliatory conduct, in an amount sufficient to punish Defendants and deter similar future misconduct;**

(iv) **Injunctive relief permanently prohibiting Defendants from re-reporting the fraudulent account or furnishing any similar information concerning Plaintiff to any consumer reporting agency;**

(v) **Referral of this matter to the Consumer Financial Protection Bureau (CFPB), Federal Trade Commission (FTC), the New York Attorney General's Office, as well as to law enforcement for further investigation into Defendants' actions, including potential violations of federal and state fraud statutes;** and

(vi) **Such other and further relief as this Court deems just and proper.**

## VII. TRIAL BY JURY DEMANDED

91. Plaintiff demands a trial by jury on all issues so triable.

## VIII. PLAINTIFF'S JUSTIFICATION FOR PUNITIVE DAMAGES, AND CONCLUSION

92. This is not a case about a mistake. It is a case about a calculated, multi-stage fraud perpetrated by a landlord against its tenant. When the initial scheme of identity theft was exposed through a federal lawsuit, Defendants YOEL KOHN a/k/a JOEL KOHN, 788 FRANKLIN REALTY, and WATERMARK CAPITAL GROUP were presented with a choice: cease the unlawful conduct or escalate it. They chose to escalate.

93. Their decision to maliciously re-verify a known falsehood to a major CRA—and to then initiate a baseless, retaliatory eviction proceeding against Plaintiff—transforms this case from one of simple fraud to one of egregious, bad-faith litigation conduct. It is a direct assault on the integrity of the legal process and the consumer protection statutes enacted by Congress. Defendants' conduct was not merely willful; it was contemptuous. The subsequent finding of fraud and permanent deletion of the account by TransUnion does not merely support Plaintiff's claim; it proves it.

94. Therefore, punitive damages are not merely warranted under 15 U.S.C. § 1681n(a)(2); they are essential. They are necessary to punish Defendants for their sustained and unrepentant campaign of deception and to deter them and others from ever believing that they can weaponize a citizen's credit report, abuse the legal process, defy federal law, and retaliate against those who seek justice, without facing the most severe consequences.

Dated: October 6, 2025
Brooklyn, New York

Respectfully submitted,

EDWARD B. HUBBUCH
394 Lincoln Place #A5
Brooklyn, N.Y. 11238
bhubbuch@gmail.com
(646) 544-7597

*Pro se*

TO: ANDREW W. TILEM, Esq.
228 Montrose Avenue
Brooklyn, New York 11206
andtile@googlemail.com
(718) 497-2552

*Attorney for Defendants* YOEL KOHN a/k/a JOEL KOHN, 788 FRANKLIN REALTY LLC, and WATERMARK CAPITAL GROUP LLC

# EXHIBIT 5

www.impact-lit.com 67%



**ABOUT**

## Christopher Leung is a seasoned litigator and trial attorney working to protect the public interest.

His specialties include complex litigation and class actions, aimed at protecting workers, whistleblowers, consumers, and the public health.

Before founding his own firm, Christopher was an equity partner at a New York litigation boutique, where he successfully brought **ground-breaking litigation** against the U.S. Food & Drug Administration, which required the agency to take the first step towards banning menthol cigarettes. He also defended the State of New Mexico in a **high-stakes arbitration** involving tens of millions of dollars against Big Tobacco, and led cases to protect the rights of whistleblowers and consumers.

For many years, Christopher served as Special Counsel and an Assistant Attorney General to the New York State Attorney General's Office. His work there included **successfully defending 30 State Attorneys General** from alleged violations of federal antitrust laws and the dormant Commerce Clause; co-leading the New York Attorney General's multi-state investigation into the drug distributors' role in contributing to the opioid crisis; and successfully leading New York's litigation against United Parcel Service for its unlawful delivery of contraband cigarettes. Following a two-week bench trial conducted with the City of New York, his team obtained a combined award of **$247 million in damages and penalties**—the largest award of its kind received by the Attorney General's Office at trial.

Christopher has also worked at Earthjustice and Lieff Cabraser Heimann & Bernstein, LLP where he **represented national and local environmental organizations, injured employees, and consumers** in class action litigation, mass torts, and environmental litigation.

He holds degrees from U.C. Berkeley and U.C. Law San Francisco, served as a law clerk to the Honorable Oliver W. Wanger, U.S. District Court Judge ( for the Eastern District of California, and extern to the Honorable James Larson, U.S. Chief Magistrate Judge for the Northern District of California.

Outside of work, Christopher enjoys camping, cooking, biking, and music.

### HONORS & RECOGNITIONS

For his work, Christopher has received several honors and recognitions, including the following:

- The New York Law Journal's **Distinguished Leader Award**
- The New York State Attorney General's **Louis J. Lefkowitz Award**
- Action on Smoking & Health's **Project Sunset Award for Courage in Public Health**
- Fellow of the American Bar Foundation — an honorary society of attorneys, judges, and scholars whose careers demonstrate outstanding dedication to the highest principles of the legal profession

# EXHIBIT 2

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AT&T** | | | | | | | | |
| **Phone Number: 6465447597** | | | | | | | | |
| **Bill Cycle: Jul 02, 2025 - Aug 01, 2025** | | | | | | | | |
| **Total Charges: $0** | | | | | | | | |
| | | | | | | | | |
| **Incoming/Outgoing** | **Date** | **Time** | **Contact** | **Location** | **Type** | **Minutes** | **Geography** | **Charges** |
| INCOMING | Jul 10, 2025 | 6:02 pm | 983.210.9807 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 11:20 am | 973.623.7600 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 5:09 pm | 943.276.4722 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 11:18 am | 929.495.5515 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 10:10 am | 929.323.2649 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 12:08 pm | 917.717.8143 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 7:00 pm | 917.497.1376 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 11, 2025 | 9:43 pm | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 11:10 am | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 11:10 am | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 11:09 am | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 11:09 am | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 9:37 am | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 9:32 am | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 9:32 am | 917.340.9284 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 16, 2025 | 10:02 am | 917.291.4593 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 25, 2025 | 11:57 am | 917.259.2641 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 11:59 am | 904.822.8958 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 1:23 pm | 888.993.2902 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 08, 2025 | 12:49 pm | 888.993.2902 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 11:32 am | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 25, 2025 | 11:34 am | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 22, 2025 | 6:55 pm | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 12:42 pm | 862.347.2790 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 10:07 am | 844.762.8180 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 18, 2025 | 12:26 pm | 838.831.9876 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 9:48 am | 838.332.9462 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 24, 2025 | 11:02 am | 800.660.1779 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 8:31 am | 800.660.1779 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 16, 2025 | 8:51 am | 800.660.1779 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 10:20 am | 800.660.1779 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 10:02 am | 781.366.0995 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 4:56 pm | 754.285.9815 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 9:54 am | 727.216.8586 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 24, 2025 | 11:28 am | 718.789.4332 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 25, 2025 | 2:13 pm | 718.750.0061 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 31, 2025 | 10:18 am | 716.576.9392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 7:46 pm | 701.970.1507 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 11:50 am | 701.205.1784 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 5:43 pm | 651.409.0076 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 10:52 am | 646.995.1783 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 11:39 am | 646.970.1883 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 1:44 pm | 646.922.1784 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 18, 2025 | 11:23 am | 646.882.6208 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 18, 2025 | 2:23 pm | 646.875.8214 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 1:29 pm | 646.828.0908 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 10:19 am | 646.723.4980 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 3:13 pm | 646.722.0292 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 10:18 am | 646.590.8117 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 25, 2025 | 11:09 am | 646.578.8464 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 10:04 am | 646.577.6264 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 10:04 am | 646.577.6264 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 5:16 pm | 646.554.7360 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 4:53 pm | 646.520.1218 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 28, 2025 | 5:03 pm | 646.480.1020 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 28, 2025 | 5:02 pm | 646.480.1020 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 12:43 pm | 646.480.1020 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 3:12 pm | 646.461.2816 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 9:44 am | 646.435.3446 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 24, 2025 | 11:32 am | 646.435.3056 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 28, 2025 | 5:00 pm | 646.347.9798 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 24, 2025 | 3:09 pm | 646.347.9798 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 12:45 pm | 646.347.9798 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 11, 2025 | 9:24 am | 646.347.9796 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 1:01 pm | 646.337.1518 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 18, 2025 | 2:12 pm | 646.265.6636 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 4:22 pm | 646.265.6636 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 5:47 pm | 607.627.3791 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 31, 2025 | 11:49 am | 607.235.0425 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 1:23 pm | 561.673.7414 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Jul 31, 2025 | 12:09 pm | 518.490.4068 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 10:06 am | 516.986.1553 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 10:03 am | 516.986.1553 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 12:52 pm | 516.866.9349 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 01, 2025 | 2:18 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 31, 2025 | 6:30 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 5:21 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 5:13 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 3:23 pm | 516.547.1247 | Incoming | Network | 14 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 11:47 am | 516.547.1247 | Incoming | Network | 19 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 6:25 pm | 516.547.1247 | Incoming | Network | 14 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 1:59 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 10:50 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 10:48 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 28, 2025 | 6:59 pm | 516.547.1247 | Incoming | Network | 13 | Domestic | $0.00 |
| INCOMING | Jul 28, 2025 | 2:37 pm | 516.547.1247 | Incoming | Network | 12 | Domestic | $0.00 |
| INCOMING | Jul 28, 2025 | 11:59 am | 516.547.1247 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Jul 26, 2025 | 6:20 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 26, 2025 | 6:01 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 26, 2025 | 3:18 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 25, 2025 | 7:15 pm | 516.547.1247 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Jul 25, 2025 | 4:31 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 12:44 pm | 516.547.1247 | Call Wait | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 11:47 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 22, 2025 | 1:39 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 7:21 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 6:55 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 1:48 pm | 516.547.1247 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Jul 18, 2025 | 9:52 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 8:22 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 5:46 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 10:58 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 16, 2025 | 2:18 pm | 516.547.1247 | Incoming | Network | 19 | Domestic | $0.00 |
| INCOMING | Jul 16, 2025 | 8:56 am | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 16, 2025 | 8:49 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 6:02 pm | 516.547.1247 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 5:50 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 4:03 pm | 516.547.1247 | Incoming | Network | 11 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 1:14 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 1:12 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 1:04 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 1:01 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 12:59 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 12:56 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 12:55 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 12:34 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 6:49 pm | 516.547.1247 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 6:00 pm | 516.547.1247 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 5:11 pm | 516.547.1247 | Incoming | Network | 11 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 4:33 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 4:03 pm | 516.547.1247 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 3:40 pm | 516.547.1247 | Incoming | Network | 7 | Domestic | $0.00 |
| INCOMING | Jul 11, 2025 | 12:51 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 6:36 pm | 516.547.1247 | Incoming | Network | 7 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 5:31 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 10:21 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 3:37 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 08, 2025 | 3:57 pm | 516.547.1247 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 6:33 pm | 516.547.1247 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 4:31 pm | 516.547.1247 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Jul 05, 2025 | 3:01 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 04, 2025 | 9:18 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 04, 2025 | 8:48 am | 516.547.1247 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 9:49 am | 516.547.1247 | Incoming | Network | 13 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 11:34 am | 516.363.7616 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 02, 2025 | 9:26 am | 508.876.7109 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 31, 2025 | 11:15 pm | 469.834.7661 | Incoming | Network | 35 | Domestic | $0.00 |
| INCOMING | Jul 11, 2025 | 11:28 am | 401.227.4566 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 5:57 pm | 401.227.4566 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 28, 2025 | 5:21 pm | 347.891.3341 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 19, 2025 | 11:24 pm | 347.891.3341 | Incoming | Network | 11 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 5:52 pm | 347.891.3341 | Incoming | Network | 13 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 7:41 am | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 7:40 am | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 05, 2025 | 3:46 pm | 347.891.3341 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Jul 05, 2025 | 2:36 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| INCOMING | Jul 31, 2025 | 2:14 pm | 347.726.7049 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 12:18 pm | 347.705.5129 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 11:32 am | 347.623.4263 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 15, 2025 | 12:54 pm | 347.623.4263 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 24, 2025 | 2:06 pm | 347.453.2234 | Call Wait | Network | 14 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 5:08 pm | 347.378.0825 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 3:34 pm | 332.900.7202 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 10:43 am | 332.900.7098 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 2:41 pm | 332.267.8857 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 31, 2025 | 10:46 am | 332.267.8695 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 3:08 pm | 315.996.3552 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 23, 2025 | 11:07 am | 315.996.3552 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 10:25 am | 315.996.3552 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 10:05 am | 315.951.8120 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 25, 2025 | 1:04 pm | 315.951.8120 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 3:40 pm | 315.951.8120 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 5:28 pm | 315.843.0054 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 29, 2025 | 2:54 pm | 315.645.2998 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 12:31 pm | 315.645.2998 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 16, 2025 | 10:06 am | 315.610.7864 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 14, 2025 | 1:24 pm | 315.375.7347 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 2:31 pm | 315.375.7347 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 1:11 pm | 315.375.7347 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 1:21 pm | 312.509.9000 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 21, 2025 | 5:52 pm | 312.313.4936 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 5:50 pm | 307.533.9677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 11, 2025 | 11:20 am | 305.771.8631 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 4:14 pm | 305.771.8631 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 10:05 am | 305.771.8631 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 09, 2025 | 11:46 am | 305.771.8631 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 1:30 pm | 305.337.7556 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 1:29 pm | 305.337.7556 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 10:16 am | 305.337.7556 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 07, 2025 | 10:16 am | 305.337.7556 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 11:40 am | 305.337.6610 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 11:38 am | 305.337.6610 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 10:55 am | 305.337.6610 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 10:22 am | 305.337.6610 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 03, 2025 | 1:11 pm | 305.337.1135 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 18, 2025 | 3:26 pm | 262.464.8636 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 10, 2025 | 12:18 pm | 253.461.8622 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 17, 2025 | 5:32 pm | 214.686.7146 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Jul 30, 2025 | 3:19 pm | 212.857.2100 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Jul 24, 2025 | 12:51 pm | 201.210.9693 | Incoming | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 01, 2025 | 2:18 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 01, 2025 | 1:58 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 01, 2025 | 12:15 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 01, 2025 | 11:42 am | 561.673.7414 | Belleglade, FL | Network | 32 | Domestic | $0.00 |
| OUTGOING | Aug 01, 2025 | 10:13 am | 518.285.8989 | Troy, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Jul 31, 2025 | 11:14 pm | 469.834.7661 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 31, 2025 | 7:33 pm | 516.547.1247 | Floralpark, NY | Network | 11 | Domestic | $0.00 |
| OUTGOING | Jul 31, 2025 | 3:24 pm | 516.547.1247 | Floralpark, NY | Network | 5 | Domestic | $0.00 |
| OUTGOING | Jul 30, 2025 | 4:23 pm | 212.857.8527 | New York, NY | Network | 8 | Domestic | $0.00 |
| OUTGOING | Jul 30, 2025 | 3:16 pm | 212.857.8527 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 30, 2025 | 12:06 pm | 516.547.1247 | Floralpark, NY | Network | 35 | Domestic | $0.00 |
| OUTGOING | Jul 30, 2025 | 12:23 am | 516.547.1247 | Floralpark, NY | Network | 12 | Domestic | $0.00 |
| OUTGOING | Jul 29, 2025 | 4:26 pm | 212.805.0800 | New York, NY | Network | 17 | Domestic | $0.00 |
| OUTGOING | Jul 29, 2025 | 4:14 pm | 212.805.0136 | New York, NY | Network | 8 | Domestic | $0.00 |
| OUTGOING | Jul 29, 2025 | 12:56 pm | 516.547.1247 | Floralpark, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Jul 29, 2025 | 12:52 pm | 347.891.3341 | Queens Nyc, NY | Network | 5 | Domestic | $0.00 |
| OUTGOING | Jul 28, 2025 | 5:47 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 28, 2025 | 12:35 pm | 213.204.3751 | Losangeles, CA | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 26, 2025 | 4:16 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 26, 2025 | 3:23 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 26, 2025 | 3:22 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 25, 2025 | 3:33 pm | 516.547.1247 | Floralpark, NY | Network | 13 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 9:22 pm | 516.547.1247 | Floralpark, NY | Network | 14 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 3:12 pm | 212.460.3057 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 3:11 pm | 212.805.0800 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 2:52 pm | 718.613.2290 | Bklyn Nyc, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 2:49 pm | 718.613.2610 | Bklyn Nyc, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 1:57 pm | 516.547.1247 | Floralpark, NY | Network | 9 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 1:43 pm | 212.805.0800 | New York, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 1:42 pm | 551.404.6073 | Hackensack, NJ | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 1:37 pm | 201.210.9693 | Union City, NJ | Network | 4 | Domestic | $0.00 |
| OUTGOING | Jul 24, 2025 | 1:35 pm | 212.460.3057 | New York, NY | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| OUTGOING | Jul 23, 2025 | 6:34 pm | 516.547.1247 | Floralpark, NY | Network | 16 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 6:27 pm | 347.623.4263 | Bklyn Nyc, NY | Network | 5 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 3:38 pm | 646.922.1784 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 3:37 pm | 646.922.1784 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 1:12 pm | 718.757.6676 | Bklyn Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:41 pm | 718.757.6676 | Bklyn Nyc, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:28 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:27 pm | 212.460.4972 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:26 pm | 212.460.2186 | New York, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:25 pm | 347.453.2234 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:21 pm | 212.243.1900 | New York, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:15 pm | 212.243.1900 | New York, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:14 pm | 718.853.9815 | Bklyn Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:13 pm | 718.853.9815 | Bklyn Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 23, 2025 | 12:12 pm | 718.853.9815 | Bklyn Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Jul 22, 2025 | 3:50 pm | 212.805.0800 | New York, NY | Network | 11 | Domestic | $0.00 |
| OUTGOING | Jul 21, 2025 | 9:44 pm | 636.362.9556 | Harvester, MO | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 21, 2025 | 9:16 pm | 516.547.1247 | Floralpark, NY | Network | 22 | Domestic | $0.00 |
| OUTGOING | Jul 20, 2025 | 4:38 pm | 347.891.3341 | Queens Nyc, NY | Network | 13 | Domestic | $0.00 |
| OUTGOING | Jul 18, 2025 | 9:52 am | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 18, 2025 | 9:50 am | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 17, 2025 | 9:42 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 17, 2025 | 6:06 pm | 214.686.7146 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 17, 2025 | 5:30 pm | 214.686.7146 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 17, 2025 | 4:10 pm | 212.857.8527 | New York, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Jul 16, 2025 | 5:24 pm | 347.703.6458 | Bklyn Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 16, 2025 | 2:37 pm | 347.891.3341 | Queens Nyc, NY | Network | 5 | Domestic | $0.00 |
| OUTGOING | Jul 16, 2025 | 2:12 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 16, 2025 | 2:11 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 16, 2025 | 8:53 am | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 16, 2025 | 8:52 am | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 15, 2025 | 5:54 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 15, 2025 | 5:43 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 15, 2025 | 5:43 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 15, 2025 | 5:24 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 15, 2025 | 5:23 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 15, 2025 | 4:40 pm | 516.605.5653 | Hicksville, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 15, 2025 | 2:45 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 14, 2025 | 8:20 pm | 214.686.7146 | Grand Prar, TX | Network | 14 | Domestic | $0.00 |
| OUTGOING | Jul 14, 2025 | 3:14 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 11, 2025 | 3:30 pm | 516.547.1247 | Floralpark, NY | Network | 30 | Domestic | $0.00 |
| OUTGOING | Jul 11, 2025 | 12:55 pm | 866.494.7227 | Toll Free | Network | 6 | Domestic | $0.00 |
| OUTGOING | Jul 11, 2025 | 12:43 pm | 516.547.1247 | Floralpark, NY | Network | 7 | Domestic | $0.00 |
| OUTGOING | Jul 10, 2025 | 6:55 pm | 917.497.1376 | New York, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Jul 10, 2025 | 6:26 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 10, 2025 | 12:33 pm | 212.857.8527 | New York, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Jul 10, 2025 | 12:32 pm | 212.857.8527 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 09, 2025 | 6:05 pm | 516.547.1247 | Floralpark, NY | Network | 24 | Domestic | $0.00 |
| OUTGOING | Jul 09, 2025 | 1:22 pm | 855.700.6000 | Toll Free | Network | 7 | Domestic | $0.00 |
| OUTGOING | Jul 08, 2025 | 3:48 pm | 516.547.1247 | Floralpark, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Jul 07, 2025 | 3:30 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 07, 2025 | 2:32 pm | 516.547.1247 | Floralpark, NY | Network | 21 | Domestic | $0.00 |
| OUTGOING | Jul 07, 2025 | 1:13 pm | 917.717.8143 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 06, 2025 | 4:34 pm | 516.547.1247 | Floralpark, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Jul 06, 2025 | 2:47 pm | 866.494.7227 | Toll Free | Network | 4 | Domestic | $0.00 |
| OUTGOING | Jul 04, 2025 | 12:27 am | 305.337.6610 | Miami, FL | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 03, 2025 | 11:57 pm | 347.891.3341 | Queens Nyc, NY | Network | 30 | Domestic | $0.00 |
| OUTGOING | Jul 03, 2025 | 4:12 pm | 305.337.1135 | Miami, FL | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 02, 2025 | 11:11 am | 508.876.7109 | Blackstone, MA | Network | 2 | Domestic | $0.00 |
| OUTGOING | Jul 02, 2025 | 11:11 am | 917.340.9284 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 02, 2025 | 11:10 am | 917.340.9284 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 02, 2025 | 11:01 am | 917.340.9284 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Jul 02, 2025 | 10:46 am | 347.500.7322 | Queens Nyc, NY | Network | 3 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AT&T** | | | | | | | | |
| **Phone Number: 6465447597** | | | | | | | | |
| **Bill Cycle: Aug 02, 2025 - Sep 01, 2025** | | | | | | | | |
| **Total Charges: $0** | | | | | | | | |
| | | | | | | | | |
| **Incoming/Outgoing** | **Date** | **Time** | **Contact** | **Location** | **Type** | **Minutes** | **Geography** | **Charges** |
| INCOMING | Aug 25, 2025 | 1:07 pm | 973.623.7600 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 2:04 pm | 973.623.7600 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 12:19 pm | 973.623.7600 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 6:16 pm | 972.322.1247 | Incoming | Network | 7 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 2:42 pm | 972.322.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 9:29 am | 972.322.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 12:02 pm | 954.380.7555 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 10:39 am | 941.992.6364 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 7:09 pm | 929.747.5397 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 07, 2025 | 2:36 pm | 917.831.7722 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 26, 2025 | 12:45 pm | 917.473.1991 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 12:27 pm | 917.352.3448 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 2:02 pm | 914.580.4347 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 2:00 pm | 914.580.4347 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 07, 2025 | 1:44 pm | 888.994.2320 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 1:50 pm | 888.881.4494 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 10:55 am | 888.866.0863 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 5:42 pm | 888.848.6062 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 8:42 pm | 888.271.7609 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 1:28 pm | 877.476.0167 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 9:57 am | 866.803.3426 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 6:41 pm | 866.507.3142 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 12:45 pm | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 7:27 pm | 866.422.5871 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 3:55 pm | 866.422.5871 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 5:42 pm | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 5:41 pm | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 11:37 am | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 08, 2025 | 11:54 am | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 3:09 pm | 866.408.4070 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 11:25 am | 855.914.2585 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 07, 2025 | 11:54 am | 855.815.0396 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 07, 2025 | 4:14 pm | 855.579.4858 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 12:46 pm | 844.407.1307 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 11:03 am | 833.445.4578 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 25, 2025 | 8:58 am | 786.228.9464 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 2:59 pm | 785.333.1605 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 6:50 pm | 785.333.1605 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 2:50 pm | 785.333.1605 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 12:43 pm | 785.333.1605 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 11:38 am | 785.333.1605 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 3:09 pm | 737.399.1273 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 4:22 pm | 718.814.2496 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 12:22 pm | 718.801.8206 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 30, 2025 | 10:55 am | 718.789.4332 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 3:58 pm | 718.789.4332 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 3:57 pm | 718.789.4332 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 23, 2025 | 4:04 pm | 718.789.4332 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 6:10 pm | 718.789.4332 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 10:39 am | 718.785.4178 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 25, 2025 | 2:55 pm | 701.365.9534 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 11:25 pm | 678.498.2706 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 25, 2025 | 10:24 am | 646.979.3945 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 28, 2025 | 1:06 pm | 646.933.2728 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 1:58 pm | 646.933.2726 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 10:54 am | 646.904.6918 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 1:12 pm | 646.902.0847 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 4:10 pm | 646.892.3611 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 1:20 pm | 646.817.1493 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 2:52 pm | 646.817.1089 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 06, 2025 | 9:33 am | 646.777.3778 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 06, 2025 | 10:57 am | 646.777.1801 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 10:51 am | 646.706.4818 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 9:18 am | 646.631.7138 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 11:51 am | 646.590.7410 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 1:15 pm | 646.580.9525 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 25, 2025 | 12:50 pm | 646.567.2036 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 08, 2025 | 10:20 am | 646.564.6546 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 11:59 am | 646.544.7597 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 12:21 pm | 646.518.7395 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Aug 15, 2025 | 10:46 am | 646.516.5993 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 4:53 pm | 646.417.9043 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 2:28 pm | 646.386.2979 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 30, 2025 | 9:24 am | 646.349.6243 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 2:13 pm | 646.349.6243 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 9:36 am | 646.349.6243 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 10:53 am | 646.337.1514 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 07, 2025 | 6:28 pm | 646.259.0142 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 18, 2025 | 8:59 am | 646.201.5399 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 11:25 am | 631.349.3243 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 10:27 am | 607.900.5312 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 11:01 am | 585.973.8937 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 26, 2025 | 10:39 am | 585.774.9450 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 07, 2025 | 2:34 pm | 518.965.1022 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 12:33 pm | 518.740.8920 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 1:29 pm | 518.490.4125 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 1:27 pm | 518.490.4068 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 01, 2025 | 8:08 pm | 518.304.0236 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 1:23 pm | 518.302.2583 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 16, 2025 | 4:55 pm | 518.252.0251 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 01, 2025 | 12:43 pm | 516.547.1247 | Incoming | Network | 30 | Domestic | $0.00 |
| INCOMING | Aug 28, 2025 | 3:51 pm | 516.547.1247 | Incoming | Network | 20 | Domestic | $0.00 |
| INCOMING | Aug 25, 2025 | 3:50 pm | 516.547.1247 | Incoming | Network | 5 | Domestic | $0.00 |
| INCOMING | Aug 23, 2025 | 3:58 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 21, 2025 | 2:25 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 4:33 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 9:31 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 9:24 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 9:23 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 3:58 pm | 516.547.1247 | Incoming | Network | 13 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 2:12 pm | 516.547.1247 | Incoming | Network | 44 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 4:51 pm | 516.547.1247 | Incoming | Network | 35 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 12:02 pm | 516.547.1247 | Incoming | Network | 22 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 7:02 pm | 516.547.1247 | Incoming | Network | 24 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 5:13 pm | 516.547.1247 | Incoming | Network | 13 | Domestic | $0.00 |
| INCOMING | Aug 11, 2025 | 8:22 pm | 516.547.1247 | Incoming | Network | 18 | Domestic | $0.00 |
| INCOMING | Aug 11, 2025 | 3:43 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 11, 2025 | 2:49 pm | 516.547.1247 | Incoming | Network | 8 | Domestic | $0.00 |
| INCOMING | Aug 11, 2025 | 11:25 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 06, 2025 | 2:02 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 05, 2025 | 5:51 pm | 516.547.1247 | Incoming | Network | 20 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 2:35 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 2:03 pm | 516.547.1247 | Incoming | Network | 14 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 12:31 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 9:18 am | 516.202.0220 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 6:07 pm | 510.347.8536 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 26, 2025 | 10:48 am | 510.254.4039 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 25, 2025 | 11:58 am | 501.277.7147 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 3:17 pm | 484.556.8982 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 6:41 pm | 469.834.7661 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 28, 2025 | 3:21 pm | 347.929.0685 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 30, 2025 | 1:12 pm | 347.891.3341 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Aug 24, 2025 | 3:44 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 24, 2025 | 10:00 am | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 5:17 pm | 347.891.3341 | Incoming | Network | 7 | Domestic | $0.00 |
| INCOMING | Aug 19, 2025 | 5:04 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 7:42 pm | 347.891.3341 | Incoming | Network | 18 | Domestic | $0.00 |
| INCOMING | Aug 26, 2025 | 12:41 pm | 347.879.1865 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 11, 2025 | 6:58 pm | 347.703.6458 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 11, 2025 | 6:57 pm | 347.703.6458 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 30, 2025 | 7:01 pm | 332.378.1481 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 8:57 am | 332.378.1481 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 3:52 pm | 332.378.1480 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 11:26 am | 332.295.3131 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 29, 2025 | 12:42 pm | 332.206.2610 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 18, 2025 | 9:59 am | 329.203.0096 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 5:01 pm | 318.203.5838 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 13, 2025 | 3:28 pm | 315.951.8120 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 15, 2025 | 12:47 pm | 315.610.7864 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 3:01 pm | 315.610.7864 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 11:27 am | 315.279.2382 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 27, 2025 | 5:23 pm | 312.509.9000 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 20, 2025 | 3:46 pm | 312.509.9000 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 04, 2025 | 9:01 am | 308.217.0199 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 14, 2025 | 3:22 pm | 223.206.5816 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Aug 12, 2025 | 6:45 pm | 216.537.1607 | Incoming | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Aug 12, 2025 | 10:11 am | 000.000.0000 | Blocked | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 29, 2025 | 7:46 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 28, 2025 | 7:43 pm | 561.673.7414 | Belleglade, FL | Network | 6 | Domestic | $0.00 |
| OUTGOING | Aug 27, 2025 | 11:12 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 25, 2025 | 4:04 pm | 843.353.8174 | Myrtle Bch, SC | Network | 18 | Domestic | $0.00 |
| OUTGOING | Aug 25, 2025 | 3:55 pm | 516.547.1247 | Floralpark, NY | Network | 8 | Domestic | $0.00 |
| OUTGOING | Aug 25, 2025 | 2:53 pm | 843.353.8174 | Myrtle Bch, SC | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 25, 2025 | 2:52 pm | 614.266.1487 | Columbus, OH | Network | 2 | Domestic | $0.00 |
| OUTGOING | Aug 23, 2025 | 7:16 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 23, 2025 | 7:16 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 23, 2025 | 7:15 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 23, 2025 | 7:06 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 23, 2025 | 5:32 pm | 516.547.1247 | Floralpark, NY | Network | 20 | Domestic | $0.00 |
| OUTGOING | Aug 22, 2025 | 3:59 pm | 518.457.9000 | Albany, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Aug 22, 2025 | 3:57 pm | 518.704.2704 | Albany, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 22, 2025 | 3:57 pm | 518.704.2704 | Albany, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 22, 2025 | 10:01 am | 212.857.8527 | New York, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Aug 21, 2025 | 10:36 pm | 866.494.7227 | Toll Free | Network | 8 | Domestic | $0.00 |
| OUTGOING | Aug 21, 2025 | 3:04 pm | 516.547.1247 | Floralpark, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Aug 21, 2025 | 2:39 pm | 516.547.1247 | Floralpark, NY | Network | 22 | Domestic | $0.00 |
| OUTGOING | Aug 21, 2025 | 2:01 pm | 972.322.1247 | Grand Prar, TX | Network | 14 | Domestic | $0.00 |
| OUTGOING | Aug 21, 2025 | 10:19 am | 732.928.2000 | Lakewood, NJ | Network | 3 | Domestic | $0.00 |
| OUTGOING | Aug 19, 2025 | 4:35 pm | 516.547.1247 | Floralpark, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Aug 19, 2025 | 4:23 pm | 347.891.3341 | Queens Nyc, NY | Network | 7 | Domestic | $0.00 |
| OUTGOING | Aug 19, 2025 | 3:38 pm | 718.789.4332 | Bklyn Nyc, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Aug 19, 2025 | 3:37 pm | 646.933.2726 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 19, 2025 | 3:37 pm | 972.322.1247 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 19, 2025 | 2:37 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 19, 2025 | 1:49 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 18, 2025 | 11:16 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 18, 2025 | 11:15 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 18, 2025 | 11:15 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 18, 2025 | 8:37 pm | 972.322.1247 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 18, 2025 | 1:59 pm | 516.547.1247 | Floralpark, NY | Network | 19 | Domestic | $0.00 |
| OUTGOING | Aug 18, 2025 | 10:07 am | 518.965.1022 | Hudson, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Aug 18, 2025 | 10:07 am | 518.965.1022 | Hudson, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 16, 2025 | 8:55 am | 561.673.7414 | Belleglade, FL | Network | 11 | Domestic | $0.00 |
| OUTGOING | Aug 15, 2025 | 5:45 pm | 732.928.2000 | Lakewood, NJ | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 15, 2025 | 5:44 pm | 732.928.2000 | Lakewood, NJ | Network | 2 | Domestic | $0.00 |
| OUTGOING | Aug 15, 2025 | 4:29 pm | 516.547.1247 | Floralpark, NY | Network | 16 | Domestic | $0.00 |
| OUTGOING | Aug 15, 2025 | 3:24 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 15, 2025 | 3:08 pm | 518.965.1022 | Hudson, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Aug 14, 2025 | 3:29 pm | 561.673.7414 | Belleglade, FL | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 14, 2025 | 12:41 pm | 347.703.6458 | Bklyn Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 14, 2025 | 12:35 pm | 972.239.7778 | Addison, TX | Network | 2 | Domestic | $0.00 |
| OUTGOING | Aug 14, 2025 | 12:33 pm | 212.335.4089 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 13, 2025 | 8:27 pm | 516.547.1247 | Floralpark, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Aug 13, 2025 | 3:46 pm | 917.767.0360 | Queens Nyc, NY | Network | 14 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 10:23 pm | 347.891.3341 | Queens Nyc, NY | Network | 9 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 4:39 pm | 347.891.3341 | Queens Nyc, NY | Network | 8 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 4:22 pm | 212.857.8527 | New York, NY | Network | 5 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 4:15 pm | 718.250.2112 | Bklyn Nyc, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 1:05 pm | 212.335.4089 | New York, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 12:58 pm | 347.891.3341 | Queens Nyc, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 12:17 am | 516.547.1247 | Floralpark, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Aug 12, 2025 | 12:11 am | 347.891.3341 | Queens Nyc, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Aug 11, 2025 | 7:03 pm | 347.891.3341 | Queens Nyc, NY | Network | 5 | Domestic | $0.00 |
| OUTGOING | Aug 11, 2025 | 6:56 pm | 347.703.6458 | Bklyn Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 11, 2025 | 6:55 pm | 347.703.6458 | Bklyn Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 11, 2025 | 1:56 pm | 347.891.3341 | Queens Nyc, NY | Network | 7 | Domestic | $0.00 |
| OUTGOING | Aug 11, 2025 | 10:43 am | 347.296.1382 | Bklyn Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Aug 11, 2025 | 10:32 am | 561.673.7414 | Belleglade, FL | Network | 9 | Domestic | $0.00 |
| OUTGOING | Aug 10, 2025 | 5:36 pm | 469.834.7661 | Grand Prar, TX | Network | 11 | Domestic | $0.00 |
| OUTGOING | Aug 10, 2025 | 5:36 pm | 469.834.7661 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 10, 2025 | 5:04 pm | 516.547.1247 | Floralpark, NY | Network | 31 | Domestic | $0.00 |
| OUTGOING | Aug 09, 2025 | 11:18 pm | 866.494.7227 | Toll Free | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 08, 2025 | 1:05 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 08, 2025 | 12:27 pm | 866.494.7227 | Toll Free | Network | 11 | Domestic | $0.00 |
| OUTGOING | Aug 08, 2025 | 12:18 pm | 866.494.7227 | Toll Free | Network | 9 | Domestic | $0.00 |
| OUTGOING | Aug 08, 2025 | 12:11 pm | 866.494.7227 | Toll Free | Network | 3 | Domestic | $0.00 |
| OUTGOING | Aug 07, 2025 | 2:25 pm | 347.891.3341 | Queens Nyc, NY | Network | 8 | Domestic | $0.00 |
| OUTGOING | Aug 07, 2025 | 11:56 am | 516.547.1247 | Floralpark, NY | Network | 75 | Domestic | $0.00 |
| OUTGOING | Aug 07, 2025 | 11:00 am | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 06, 2025 | 4:29 pm | 516.547.1247 | Floralpark, NY | Network | 15 | Domestic | $0.00 |
| OUTGOING | Aug 06, 2025 | 9:19 am | 516.547.1247 | Floralpark, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Aug 05, 2025 | 6:13 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| OUTGOING | Aug 05, 2025 | 2:50 pm | 469.834.7661 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 05, 2025 | 1:24 pm | 646.580.9525 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 05, 2025 | 1:20 pm | 516.547.1247 | Floralpark, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Aug 04, 2025 | 7:32 pm | 516.547.1247 | Floralpark, NY | Network | 17 | Domestic | $0.00 |
| OUTGOING | Aug 04, 2025 | 4:23 pm | 516.547.1247 | Floralpark, NY | Network | 5 | Domestic | $0.00 |
| OUTGOING | Aug 04, 2025 | 4:19 pm | 929.923.2387 | Bronx Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 04, 2025 | 2:02 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Aug 02, 2025 | 1:36 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AT&T** | | | | | | | | |
| **Phone Number: 6465447597** | | | | | | | | |
| **Bill Cycle: Sep 02, 2025 - Oct 01, 2025** | | | | | | | | |
| **Total Charges: $0** | | | | | | | | |
| | | | | | | | | |
| **Incoming/Outgoing** | **Date** | **Time** | **Contact** | **Location** | **Type** | **Minutes** | **Geography** | **Charges** |
| INCOMING | Sep 22, 2025 | 8:16 am | 978.444.5800 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 10:17 am | 978.444.5800 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 26, 2025 | 9:59 am | 973.623.7600 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 1:43 pm | 973.623.7600 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 10:36 am | 973.623.7600 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 12:03 pm | 973.623.7600 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 3:04 pm | 973.623.7600 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 4:53 pm | 973.623.7600 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 9:53 am | 973.329.0796 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 12:14 pm | 973.329.0796 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 2:09 pm | 972.752.8378 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 13, 2025 | 11:34 am | 970.969.6825 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 8:17 pm | 949.401.4414 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 12:11 pm | 945.222.8131 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 10:25 am | 934.943.9443 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 7:17 pm | 934.420.9417 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 9:52 am | 929.545.4496 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 9:50 am | 929.545.4496 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 6:13 pm | 929.206.0911 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 4:34 pm | 920.978.2376 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 4:45 pm | 920.384.9588 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 25, 2025 | 12:07 pm | 917.566.6062 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 10:22 am | 917.444.9047 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 9:59 am | 917.444.9047 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 10:52 am | 915.666.4063 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 3:31 pm | 914.913.9994 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 3:45 pm | 914.580.4347 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 3:44 pm | 914.580.4347 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 4:43 pm | 914.279.7534 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 11:38 am | 914.208.8638 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 11:43 am | 912.795.4281 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 1:32 pm | 912.505.0570 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 1:54 pm | 888.615.8311 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 2:20 pm | 888.303.5888 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 4:38 pm | 866.803.3426 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 6:09 pm | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 12:41 pm | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 6:39 pm | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 12:44 pm | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 02, 2025 | 6:55 pm | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 12:57 pm | 866.422.5871 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 1:30 pm | 863.821.4775 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 1:13 pm | 863.240.2445 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 3:19 pm | 858.351.9992 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 04, 2025 | 11:50 am | 855.995.6473 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 8:34 am | 855.944.1873 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 23, 2025 | 11:18 am | 855.591.6465 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 1:12 pm | 855.525.8914 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 23, 2025 | 6:29 pm | 845.919.6552 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 11:51 am | 845.812.6332 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 9:56 am | 845.801.6379 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 24, 2025 | 2:19 pm | 845.493.9545 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 8:07 pm | 838.222.8065 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 6:45 pm | 838.209.1294 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 12:25 pm | 828.300.6708 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 25, 2025 | 11:47 am | 828.300.4536 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 4:18 pm | 800.752.6633 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 2:52 pm | 800.752.6633 | Incoming | Network | 5 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 2:46 pm | 800.752.6633 | Call Wait | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 2:19 pm | 800.752.6633 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 11:56 am | 800.752.6633 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 2:58 pm | 800.752.6633 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 11:12 am | 800.752.6633 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 9:14 am | 800.752.6633 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 9:14 am | 800.752.6633 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 10:05 am | 800.752.6633 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 10:42 am | 800.752.6633 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 3:11 pm | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 1:06 pm | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 10:10 am | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Sep 19, 2025 | 8:06 am | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 7:07 pm | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 4:25 pm | 800.488.2085 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 2:20 pm | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 12:40 pm | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 5:19 pm | 731.200.3279 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 11:47 am | 719.873.8139 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 1:23 pm | 718.814.2507 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 1:22 pm | 718.814.2507 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 2:15 pm | 718.785.4178 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 25, 2025 | 4:43 pm | 716.287.8940 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 1:00 pm | 716.231.6351 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 24, 2025 | 1:43 pm | 680.488.9891 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 11:00 am | 646.993.9277 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 29, 2025 | 4:07 pm | 646.991.1241 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 2:06 pm | 646.989.1275 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 1:29 pm | 646.975.2875 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 9:17 am | 646.918.5740 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 6:45 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 5:31 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 1:54 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 7:02 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 12:24 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 4:09 pm | 646.892.7183 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 5:46 pm | 646.887.6748 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 2:29 pm | 646.882.4337 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 1:26 pm | 646.882.3546 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 10:58 am | 646.882.3122 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 3:21 pm | 646.870.5072 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 1:45 pm | 646.869.8083 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 04, 2025 | 6:50 pm | 646.838.6545 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 10:20 am | 646.817.1971 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 4:46 pm | 646.817.1516 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 2:10 pm | 646.817.1516 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 2:49 pm | 646.817.1516 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 3:01 pm | 646.817.1493 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 11:55 am | 646.817.1493 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 12:14 pm | 646.813.2967 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 4:56 pm | 646.712.8140 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 23, 2025 | 1:09 pm | 646.687.1246 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 1:33 pm | 646.631.7138 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 3:32 pm | 646.631.7138 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 25, 2025 | 3:07 pm | 646.630.9324 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 20, 2025 | 4:52 pm | 646.630.9080 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 10:21 am | 646.601.0151 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 5:11 pm | 646.540.9094 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 20, 2025 | 11:04 am | 646.536.1608 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 11:54 am | 646.495.0232 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 04, 2025 | 11:52 am | 646.480.8820 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 04, 2025 | 4:55 pm | 646.480.1020 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 6:13 pm | 646.466.2461 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 10:53 am | 646.453.4224 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 9:17 am | 646.435.3057 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 4:08 pm | 646.419.8331 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 2:03 pm | 646.414.0191 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 1:46 pm | 646.394.7298 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 4:23 pm | 646.349.6243 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 1:29 pm | 646.349.6243 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 10:18 am | 646.337.1502 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 3:12 pm | 646.291.6767 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 4:58 pm | 646.248.6358 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 1:37 pm | 646.226.6510 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 12:11 pm | 631.729.0370 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 1:19 pm | 631.306.8205 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 12:28 pm | 608.995.5187 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 4:14 pm | 607.713.9889 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 1:04 pm | 607.562.5670 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 23, 2025 | 5:01 pm | 607.219.9328 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 9:14 am | 607.202.4705 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 4:47 pm | 601.755.6430 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 12:56 pm | 601.755.6430 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 2:47 pm | 585.361.5097 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 9:13 am | 585.361.5039 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 4:04 pm | 559.236.3309 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 10:18 am | 518.839.1018 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 12:47 pm | 518.839.1018 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Sep 20, 2025 | 10:58 am | 518.770.9398 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 29, 2025 | 5:45 pm | 518.666.0543 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 23, 2025 | 12:16 pm | 518.568.6296 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 1:32 pm | 518.490.4125 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 23, 2025 | 12:20 pm | 518.490.4125 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 25, 2025 | 1:16 pm | 518.490.4068 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 1:14 pm | 518.490.4068 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 6:19 pm | 516.631.5064 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 01, 2025 | 2:34 pm | 516.547.1247 | Incoming | Network | 16 | Domestic | $0.00 |
| INCOMING | Sep 29, 2025 | 5:53 pm | 516.547.1247 | Incoming | Network | 14 | Domestic | $0.00 |
| INCOMING | Sep 26, 2025 | 9:18 pm | 516.547.1247 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Sep 24, 2025 | 2:22 pm | 516.547.1247 | Incoming | Network | 7 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 2:58 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 4:14 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 2:17 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 1:00 pm | 516.547.1247 | Incoming | Network | 9 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 9:10 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 1:39 pm | 516.547.1247 | Incoming | Network | 18 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 1:28 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 02, 2025 | 3:00 pm | 516.547.1247 | Incoming | Network | 14 | Domestic | $0.00 |
| INCOMING | Sep 15, 2025 | 4:36 pm | 516.363.7381 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 25, 2025 | 1:37 pm | 502.796.4816 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 06, 2025 | 1:48 pm | 484.968.2926 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 10:26 am | 484.831.8989 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 23, 2025 | 12:17 pm | 430.499.5644 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 2:46 pm | 363.444.8069 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 2:45 pm | 363.444.8069 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 2:26 pm | 361.504.5761 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 22, 2025 | 10:35 am | 361.400.1355 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 16, 2025 | 12:13 pm | 347.973.2034 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 5:09 pm | 347.891.3341 | Incoming | Network | 4 | Domestic | $0.00 |
| INCOMING | Sep 27, 2025 | 1:29 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 25, 2025 | 1:16 pm | 347.891.3341 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 21, 2025 | 11:33 am | 347.891.3341 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 20, 2025 | 1:29 pm | 347.891.3341 | Incoming | Network | 11 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 8:17 pm | 347.891.3341 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Sep 14, 2025 | 1:53 pm | 347.891.3341 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 8:59 am | 347.646.7367 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 3:00 pm | 347.646.7367 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 04, 2025 | 12:27 pm | 347.493.3291 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 2:19 pm | 347.453.2234 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 05, 2025 | 9:04 am | 347.315.3455 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 24, 2025 | 11:52 am | 346.841.7678 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 5:00 pm | 332.867.1048 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 4:59 pm | 332.867.1048 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 30, 2025 | 12:36 pm | 332.230.7714 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 19, 2025 | 2:17 pm | 329.208.0561 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 10, 2025 | 11:57 am | 312.509.9000 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 24, 2025 | 12:29 pm | 304.967.4156 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 2:03 pm | 304.322.6749 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 17, 2025 | 4:27 pm | 272.249.8799 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 1:12 pm | 262.464.1723 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Sep 18, 2025 | 9:42 am | 229.657.7582 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 11, 2025 | 6:00 pm | 219.221.8855 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 11:17 am | 212.857.2100 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 03, 2025 | 12:31 pm | 212.529.5688 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 26, 2025 | 4:37 pm | 212.389.6668 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 1:22 pm | 207.346.5138 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Sep 08, 2025 | 10:22 am | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 30, 2025 | 6:46 pm | 917.394.8643 | Bronx Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 30, 2025 | 5:08 pm | 347.891.3341 | Queens Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 30, 2025 | 4:00 pm | 855.244.8681 | Toll Free | Network | 27 | Domestic | $0.00 |
| OUTGOING | Sep 28, 2025 | 6:46 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 26, 2025 | 6:25 pm | 516.547.1247 | Floralpark, NY | Network | 28 | Domestic | $0.00 |
| OUTGOING | Sep 26, 2025 | 4:43 pm | 347.349.2561 | Stn Is Nyc, NY | Network | 16 | Domestic | $0.00 |
| OUTGOING | Sep 26, 2025 | 2:57 pm | 800.342.3377 | Toll Free | Network | 23 | Domestic | $0.00 |
| OUTGOING | Sep 25, 2025 | 5:24 pm | 866.475.1911 | Toll Free | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 25, 2025 | 5:11 pm | 347.891.3341 | Queens Nyc, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Sep 25, 2025 | 10:06 am | 347.891.3341 | Queens Nyc, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Sep 22, 2025 | 1:45 pm | 516.547.1247 | Floralpark, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 22, 2025 | 1:02 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 22, 2025 | 10:12 am | 516.547.1247 | Floralpark, NY | Network | 22 | Domestic | $0.00 |
| OUTGOING | Sep 20, 2025 | 1:19 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 19, 2025 | 1:21 pm | 646.386.3033 | New York, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Sep 19, 2025 | 1:14 pm | 646.386.3737 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 18, 2025 | 12:35 pm | 929.545.4496 | Bklyn Nyc, NY | Network | 3 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| OUTGOING | Sep 17, 2025 | 4:55 pm | 646.226.6510 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 17, 2025 | 3:47 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 17, 2025 | 2:48 pm | 516.547.1247 | Floralpark, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Sep 17, 2025 | 2:32 pm | 516.547.1247 | Floralpark, NY | Network | 14 | Domestic | $0.00 |
| OUTGOING | Sep 16, 2025 | 1:02 pm | 212.780.6743 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 16, 2025 | 9:41 am | 212.780.6743 | New York, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Sep 15, 2025 | 6:28 pm | 516.547.1247 | Floralpark, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Sep 15, 2025 | 11:06 am | 212.780.6743 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 12, 2025 | 5:24 pm | 347.349.2561 | Stn Is Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 12, 2025 | 5:20 pm | 347.349.2561 | Stn Is Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 12, 2025 | 5:17 pm | 347.349.2561 | Stn Is Nyc, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Sep 12, 2025 | 10:51 am | 516.547.1247 | Floralpark, NY | Network | 20 | Domestic | $0.00 |
| OUTGOING | Sep 12, 2025 | 10:50 am | 212.780.6743 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 11, 2025 | 2:40 pm | 516.547.1247 | Floralpark, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 11, 2025 | 2:31 pm | 516.547.1247 | Floralpark, NY | Network | 9 | Domestic | $0.00 |
| OUTGOING | Sep 11, 2025 | 2:29 pm | 212.780.6743 | New York, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 11, 2025 | 2:28 pm | 212.788.0674 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 11, 2025 | 12:59 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 10, 2025 | 7:02 pm | 516.547.1247 | Floralpark, NY | Network | 31 | Domestic | $0.00 |
| OUTGOING | Sep 10, 2025 | 3:33 pm | 347.891.3341 | Queens Nyc, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Sep 10, 2025 | 12:21 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 09, 2025 | 8:36 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 09, 2025 | 9:17 am | 212.805.0800 | New York, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Sep 05, 2025 | 1:36 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 05, 2025 | 11:33 am | 877.777.4778 | Toll Free | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 04, 2025 | 12:22 pm | 646.480.8820 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 5:22 pm | 347.891.3341 | Queens Nyc, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 4:18 pm | 347.891.3341 | Queens Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 3:21 pm | 347.401.9537 | Bklyn Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 2:35 pm | 800.829.8374 | Toll Free | Network | 5 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 2:33 pm | 877.777.4778 | Toll Free | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 12:34 pm | 917.793.5483 | Bronx Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 12:32 pm | 212.857.8527 | New York, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Sep 03, 2025 | 12:27 pm | 212.392.6045 | New York, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Sep 02, 2025 | 2:32 pm | 347.401.9537 | Bklyn Nyc, NY | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AT&T** | | | | | | | | |
| **Phone Number: 6465447597** | | | | | | | | |
| **Bill Cycle: Oct 02, 2025 - Nov 01, 2025** | | | | | | | | |
| **Total Charges: $0** | | | | | | | | |
| | | | | | | | | |
| **Incoming/Outgoing** | **Date** | **Time** | **Contact** | **Location** | **Type** | **Minutes** | **Geography** | **Charges** |
| INCOMING | Oct 16, 2025 | 10:02 am | 970.738.8896 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 10:11 am | 970.272.6179 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 10:51 am | 959.270.2008 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 28, 2025 | 9:13 am | 941.931.6391 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 11, 2025 | 11:31 am | 929.748.3750 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 3:35 pm | 929.482.2373 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 1:48 pm | 929.207.0473 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 5:16 pm | 917.566.6062 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 2:23 pm | 917.566.6062 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 11:39 am | 917.516.4967 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 14, 2025 | 6:25 pm | 917.497.1376 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 9:31 am | 917.444.9047 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 01, 2025 | 4:35 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 01, 2025 | 10:55 am | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 3:23 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 3:21 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 5:21 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 28, 2025 | 10:33 am | 915.359.8543 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 12:05 pm | 914.530.6238 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 4:13 pm | 914.436.0653 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 9:45 am | 914.353.8642 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 16, 2025 | 3:54 pm | 910.400.0693 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 4:37 pm | 910.310.4395 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 4:09 pm | 901.305.8583 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 12:28 pm | 888.994.2320 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 12:14 pm | 888.993.2902 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 16, 2025 | 7:26 pm | 888.866.2790 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 11:26 am | 888.746.5037 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 7:07 pm | 888.717.7655 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 17, 2025 | 12:43 pm | 888.304.5675 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 4:20 pm | 888.290.8151 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 28, 2025 | 2:38 pm | 877.819.6234 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 18, 2025 | 2:21 pm | 877.747.4175 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 9:49 am | 877.354.6468 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 4:14 pm | 866.857.1989 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 9:42 am | 866.803.3426 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 8:34 pm | 866.801.2644 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 12:17 pm | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 11:27 am | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 17, 2025 | 11:05 am | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 11:17 am | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 11:29 am | 866.456.0677 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 3:05 pm | 863.300.6315 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 1:54 pm | 858.351.9772 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 9:07 am | 855.509.6324 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 1:06 pm | 854.205.9418 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 11:42 am | 845.780.9509 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 11, 2025 | 1:53 pm | 845.630.6627 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 17, 2025 | 12:52 pm | 844.979.0594 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Nov 01, 2025 | 6:19 pm | 844.908.6260 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 28, 2025 | 10:13 am | 844.675.2879 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 5:11 pm | 844.673.5618 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 7:36 pm | 844.673.3001 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 11:23 am | 844.671.8068 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 4:17 pm | 838.831.9450 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 11:35 am | 835.251.0241 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 5:22 pm | 833.585.3008 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 1:50 pm | 833.509.7757 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 3:04 pm | 833.501.6566 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 11:02 am | 828.831.1288 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 7:29 pm | 828.300.8886 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 1:50 pm | 817.330.2128 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 12:38 pm | 740.736.8098 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 9:13 am | 740.662.9205 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 1:51 pm | 718.435.7250 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 4:14 pm | 716.502.6961 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 11:59 am | 702.448.1015 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 10:48 am | 680.844.9873 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 6:55 pm | 680.422.8422 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 6:55 pm | 680.271.3869 | Incoming | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Oct 09, 2025 | 4:44 pm | 646.995.7421 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 14, 2025 | 12:21 pm | 646.967.8149 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 1:17 pm | 646.933.2726 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 5:23 pm | 646.930.7272 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 6:43 pm | 646.921.3594 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 16, 2025 | 7:54 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 5:19 pm | 646.895.6950 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 3:31 pm | 646.882.4064 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 11:07 am | 646.882.1219 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 1:17 pm | 646.870.6887 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 10:22 am | 646.870.6013 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 11:57 am | 646.870.0783 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 2:19 pm | 646.856.9637 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 11:41 am | 646.850.3982 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 3:52 pm | 646.849.1302 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 11:46 am | 646.818.9287 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 14, 2025 | 5:16 pm | 646.780.5673 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 16, 2025 | 10:41 am | 646.777.8911 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 5:30 pm | 646.774.4278 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 12:20 pm | 646.757.1879 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 6:19 pm | 646.755.7519 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 6:36 pm | 646.738.7486 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 1:42 pm | 646.736.5625 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 9:49 am | 646.702.8308 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 14, 2025 | 1:35 pm | 646.669.9482 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 1:07 pm | 646.669.8617 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 10, 2025 | 6:51 pm | 646.666.2968 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 6:38 pm | 646.657.3808 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 1:36 pm | 646.655.5272 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 9:58 am | 646.643.8983 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 12:12 pm | 646.609.9283 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 11:26 am | 646.601.0583 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 28, 2025 | 10:34 am | 646.601.0581 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 12:13 pm | 646.601.0580 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 2:36 pm | 646.601.0580 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 4:48 pm | 646.585.7915 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 17, 2025 | 12:44 pm | 646.585.2159 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 4:36 pm | 646.582.2329 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 3:46 pm | 646.559.0190 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 1:09 pm | 646.558.1930 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 10:31 am | 646.551.2949 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 7:03 pm | 646.550.3336 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 5:45 pm | 646.518.8019 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 2:17 pm | 646.517.8661 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 2:17 pm | 646.517.8660 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 10:21 am | 646.516.5815 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 6:00 pm | 646.512.8570 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 10:24 am | 646.506.4308 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 5:26 pm | 646.490.5475 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 15, 2025 | 1:18 pm | 646.490.4683 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 4:46 pm | 646.466.1717 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 16, 2025 | 6:20 pm | 646.462.4143 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 5:49 pm | 646.452.0232 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 11:52 am | 646.432.7462 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 9:30 am | 646.417.9235 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 3:48 pm | 646.402.8372 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 12:44 pm | 646.392.0279 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 4:01 pm | 646.337.1496 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 3:57 pm | 646.307.1634 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 8:47 am | 646.286.8944 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 6:31 pm | 646.225.9219 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 6:31 pm | 646.225.9219 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 15, 2025 | 11:07 am | 646.215.9403 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 10:41 am | 645.212.4636 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 30, 2025 | 9:26 am | 645.212.3686 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 12:10 pm | 631.201.1206 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 7:59 pm | 607.793.2861 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 2:46 pm | 607.353.8805 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 11:01 am | 607.209.6301 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 11:11 am | 602.693.9801 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 6:01 pm | 585.408.6621 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 8:01 pm | 561.673.7414 | Incoming | Network | 20 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 10:34 am | 561.673.7414 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 11:28 am | 541.208.5826 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 4:51 pm | 518.938.9930 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 17, 2025 | 9:16 am | 518.900.5227 | Incoming | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Oct 02, 2025 | 1:57 pm | 518.568.6587 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 10:27 am | 518.214.1486 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 6:01 pm | 516.966.9761 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 1:26 pm | 516.749.6379 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 06, 2025 | 1:26 pm | 516.749.6379 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 01, 2025 | 4:37 pm | 516.547.1247 | Incoming | Network | 5 | Domestic | $0.00 |
| INCOMING | Oct 28, 2025 | 3:35 pm | 516.547.1247 | Incoming | Network | 9 | Domestic | $0.00 |
| INCOMING | Oct 24, 2025 | 12:06 pm | 516.547.1247 | Incoming | Network | 38 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 5:43 pm | 516.547.1247 | Incoming | Network | 26 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 12:20 pm | 516.547.1247 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Oct 15, 2025 | 1:37 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 14, 2025 | 11:19 am | 516.547.1247 | Incoming | Network | 9 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 2:51 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 5:28 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 11:54 am | 502.947.9853 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 18, 2025 | 11:13 am | 502.879.1272 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 11:20 am | 484.404.7468 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 08, 2025 | 5:20 pm | 480.300.7823 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 01, 2025 | 2:33 pm | 445.316.7032 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 11:24 am | 434.240.5219 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 12:37 pm | 364.224.9470 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 2:43 pm | 352.301.4078 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 28, 2025 | 8:42 pm | 347.891.3341 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 9:17 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 5:42 pm | 347.891.3341 | Incoming | Network | 16 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 3:08 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 22, 2025 | 3:07 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 1:20 pm | 347.891.3341 | Incoming | Network | 10 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 8:43 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 3:27 pm | 347.891.3341 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 18, 2025 | 1:36 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 18, 2025 | 10:14 am | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 5:52 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 12, 2025 | 5:52 pm | 347.891.3341 | Incoming | Network | 13 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 7:57 pm | 347.891.3341 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Oct 04, 2025 | 10:44 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 6:35 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 29, 2025 | 1:19 pm | 347.667.0190 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 4:20 pm | 346.841.7434 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 7:32 pm | 332.378.1481 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 02, 2025 | 12:24 pm | 332.230.7714 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 2:32 pm | 323.213.2711 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 10:32 am | 315.843.2129 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 27, 2025 | 9:30 am | 315.843.2129 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 14, 2025 | 9:59 am | 301.612.1802 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 16, 2025 | 11:32 am | 240.232.4609 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 20, 2025 | 11:27 am | 208.675.1567 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Oct 31, 2025 | 3:54 pm | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 21, 2025 | 2:49 pm | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 13, 2025 | 3:36 pm | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 09, 2025 | 2:02 pm | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 07, 2025 | 9:43 am | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Oct 03, 2025 | 3:56 pm | 201.830.3250 | Incoming | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 31, 2025 | 4:20 pm | 516.547.1247 | Floralpark, NY | Network | 19 | Domestic | $0.00 |
| OUTGOING | Oct 31, 2025 | 11:42 am | 347.891.3341 | Queens Nyc, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Oct 28, 2025 | 9:41 pm | 214.924.9724 | Grand Prar, TX | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 28, 2025 | 9:32 pm | 347.891.3341 | Queens Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 28, 2025 | 10:33 am | 716.961.5391 | Buffalo, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 27, 2025 | 8:51 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 25, 2025 | 4:50 pm | 516.547.1247 | Floralpark, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 21, 2025 | 1:02 pm | 516.547.1247 | Floralpark, NY | Network | 10 | Domestic | $0.00 |
| OUTGOING | Oct 21, 2025 | 1:01 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 20, 2025 | 1:54 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 20, 2025 | 12:37 pm | 516.547.1247 | Floralpark, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 20, 2025 | 12:28 pm | 516.547.1247 | Floralpark, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 19, 2025 | 7:41 am | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 17, 2025 | 8:18 pm | 516.547.1247 | Floralpark, NY | Network | 23 | Domestic | $0.00 |
| OUTGOING | Oct 17, 2025 | 10:27 am | 855.244.8681 | Toll Free | Network | 16 | Domestic | $0.00 |
| OUTGOING | Oct 15, 2025 | 5:53 pm | 866.494.7227 | Toll Free | Network | 5 | Domestic | $0.00 |
| OUTGOING | Oct 15, 2025 | 5:52 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 15, 2025 | 1:17 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 15, 2025 | 11:13 am | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 14, 2025 | 10:32 am | 516.547.1247 | Floralpark, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Oct 14, 2025 | 10:31 am | 321.517.0846 | Kenansvlle, FL | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 13, 2025 | 6:32 pm | 917.810.0455 | Bklyn Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 12, 2025 | 2:21 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| OUTGOING | Oct 09, 2025 | 9:30 pm | 917.394.8643 | Bronx Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 09, 2025 | 3:44 pm | 516.547.1247 | Floralpark, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 09, 2025 | 1:27 pm | 212.805.0800 | New York, NY | Network | 4 | Domestic | $0.00 |
| OUTGOING | Oct 08, 2025 | 4:26 pm | 516.547.1247 | Floralpark, NY | Network | 18 | Domestic | $0.00 |
| OUTGOING | Oct 06, 2025 | 6:17 pm | 516.547.1247 | Floralpark, NY | Network | 15 | Domestic | $0.00 |
| OUTGOING | Oct 06, 2025 | 6:16 pm | 858.351.9772 | Sndg Sndg, CA | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 06, 2025 | 5:33 pm | 516.749.6379 | Plainview, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 06, 2025 | 5:32 pm | 561.673.7414 | Belleglade, FL | Network | 2 | Domestic | $0.00 |
| OUTGOING | Oct 03, 2025 | 9:33 am | 917.444.9047 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Oct 02, 2025 | 3:30 pm | 212.857.8527 | New York, NY | Network | 5 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AT&T** | | | | | | | | |
| **Phone Number: 6465447597** | | | | | | | | |
| **Bill Cycle: Nov 02, 2025 - Dec 01, 2025** | | | | | | | | |
| **Total Charges: $0** | | | | | | | | |
| | | | | | | | | |
| **Incoming/Outgoing** | **Date** | **Time** | **Contact** | **Location** | **Type** | **Minutes** | **Geography** | **Charges** |
| INCOMING | Nov 13, 2025 | 11:57 am | 980.512.0810 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 10:55 am | 978.444.5800 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 9:39 am | 978.444.5800 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 11:58 am | 972.944.3927 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 8:36 pm | 972.322.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 5:27 pm | 945.996.1763 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 11:59 am | 943.275.7881 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 3:34 pm | 920.985.5323 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 10:05 am | 920.974.1741 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 12:45 pm | 917.566.6062 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 4:41 pm | 917.566.6062 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 11:44 am | 917.566.6062 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 12:18 pm | 917.451.3100 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 3:20 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 15, 2025 | 10:18 am | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 15, 2025 | 10:14 am | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 3:26 pm | 917.394.8643 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 3:19 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 11:52 am | 912.505.0082 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 10:50 am | 901.714.6709 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 12:51 pm | 888.993.2902 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 12:43 pm | 888.993.2902 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 3:51 pm | 888.962.9232 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 9:56 am | 888.962.4196 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 11:54 am | 888.880.5651 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 1:30 pm | 888.846.1479 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 11:57 am | 888.745.8554 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 9:59 am | 888.736.4572 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 5:19 pm | 888.615.7418 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 2:33 pm | 888.595.5615 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 4:35 pm | 888.586.9931 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 3:03 pm | 888.573.6691 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 2:19 pm | 888.563.6081 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 7:16 pm | 888.563.4144 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 2:05 pm | 888.563.2138 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 2:56 pm | 888.478.9914 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 22, 2025 | 11:32 am | 888.467.6940 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 9:09 am | 888.452.0296 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 4:23 pm | 888.448.0117 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 1:20 pm | 888.304.9832 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 12:48 pm | 888.288.3165 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 3:30 pm | 877.902.7015 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 4:31 pm | 877.902.6228 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 12:01 pm | 877.902.2536 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 12:18 pm | 877.901.3662 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 1:27 pm | 877.819.5248 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 1:34 pm | 877.805.4953 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 2:08 pm | 877.527.5089 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 9:47 am | 877.518.1702 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 6:57 pm | 877.499.0688 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 9:32 am | 877.495.5563 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 9:08 am | 877.425.4875 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 6:04 pm | 877.354.8225 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 6:54 pm | 877.354.6320 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 7:08 pm | 877.354.4908 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 11:44 am | 877.348.3022 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 12:55 pm | 877.347.1832 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 12:21 pm | 877.344.3392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 9:39 am | 877.273.0828 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 4:36 pm | 877.223.4710 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 12:13 pm | 866.978.2805 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 8:20 pm | 866.915.6610 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 22, 2025 | 3:25 pm | 866.914.8331 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 22, 2025 | 11:20 am | 866.803.3426 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 3:22 pm | 866.518.7421 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 9:08 am | 863.410.7123 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 10:53 am | 859.314.9306 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 7:38 pm | 858.868.9889 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 4:49 pm | 855.811.2966 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 4:10 pm | 855.657.9579 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Nov 19, 2025 | 6:42 pm | 855.657.9528 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 3:11 pm | 855.657.8261 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 15, 2025 | 12:33 pm | 855.358.2487 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 6:16 pm | 855.357.6924 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 5:47 pm | 855.357.6700 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 4:48 pm | 855.317.5301 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 2:54 pm | 855.308.4948 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 2:41 pm | 855.302.4757 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 12:58 pm | 855.297.8586 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 3:41 pm | 855.297.7291 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 4:46 pm | 855.297.3897 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 22, 2025 | 2:01 pm | 855.297.1094 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 3:10 pm | 855.285.8028 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 26, 2025 | 12:55 pm | 855.285.5192 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 10:19 am | 845.731.5412 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 4:46 pm | 845.715.3313 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 12:13 pm | 845.273.6256 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 3:19 pm | 844.979.1638 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 2:47 pm | 844.901.7903 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 2:27 pm | 844.673.2413 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 4:13 pm | 844.610.7605 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 7:08 pm | 844.544.5670 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 5:33 pm | 844.542.8950 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 2:49 pm | 844.511.6328 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 1:03 pm | 844.507.9097 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 3:55 pm | 844.507.7574 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 9:44 am | 844.457.8578 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 8:15 pm | 844.457.6778 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 2:41 pm | 844.457.2309 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 11:03 am | 844.453.7513 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 10:20 am | 844.411.8057 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 08, 2025 | 5:14 pm | 844.375.3216 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 05, 2025 | 9:51 am | 839.209.6808 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 2:42 pm | 833.991.7224 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 6:22 pm | 833.991.6609 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 3:49 pm | 833.946.7796 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 3:21 pm | 833.719.9721 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 6:35 pm | 833.717.8415 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 6:55 pm | 833.717.4492 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 6:10 pm | 833.476.5159 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 5:24 pm | 833.476.5068 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 9:12 am | 833.445.9681 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 12:51 pm | 833.445.6364 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 10:55 am | 833.289.4837 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 3:23 pm | 818.573.6354 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 3:11 pm | 818.573.6354 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 11:37 am | 818.573.6354 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 11:49 am | 818.573.6354 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 11:40 am | 818.573.6354 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 10:17 am | 804.607.6687 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 11:45 am | 800.488.2085 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 2:40 pm | 769.355.8795 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 11:01 am | 754.342.2065 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 9:54 am | 740.736.8215 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 05, 2025 | 6:57 pm | 724.920.6207 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 1:10 pm | 724.314.0690 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 1:10 pm | 718.750.0144 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 2:57 pm | 717.999.0958 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 12:16 pm | 646.933.2728 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 1:01 pm | 646.914.9404 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 05, 2025 | 12:20 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 6:02 pm | 646.861.1845 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 11:02 am | 646.856.9748 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 1:51 pm | 646.850.9768 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 12:54 pm | 646.814.5866 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 4:35 pm | 646.722.0292 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 11:35 am | 646.710.1235 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 1:45 pm | 646.669.1120 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 11:42 am | 646.630.7628 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 11:19 am | 646.627.7479 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 6:07 pm | 646.603.1725 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 9:52 am | 646.601.0580 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 4:59 pm | 646.579.9630 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 3:46 pm | 646.475.7512 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 2:59 pm | 646.475.1390 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 10:11 am | 646.475.1390 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Nov 07, 2025 | 11:29 am | 646.475.1390 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 9:01 am | 646.475.1390 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 3:43 pm | 646.475.1390 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 27, 2025 | 10:30 am | 646.449.0902 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 4:40 pm | 646.440.1281 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 12:10 pm | 646.422.7322 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 5:17 pm | 646.400.6185 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 10:31 am | 646.389.4718 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 3:05 pm | 646.347.3163 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 9:45 am | 646.347.3163 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 11:15 am | 646.337.1516 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 11:32 am | 646.337.1514 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 2:52 pm | 646.225.6890 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 11:10 am | 645.203.6406 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 1:00 pm | 645.203.4384 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 9:52 am | 631.892.7154 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 08, 2025 | 1:11 pm | 620.258.3899 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 12:20 pm | 605.268.7707 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 11:19 am | 580.264.3627 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 22, 2025 | 3:46 pm | 540.788.0403 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 2:14 pm | 518.714.3559 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 16, 2025 | 2:29 pm | 516.820.0126 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 26, 2025 | 3:32 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 26, 2025 | 2:55 pm | 516.547.1247 | Incoming | Network | 6 | Domestic | $0.00 |
| INCOMING | Nov 22, 2025 | 11:56 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 2:28 pm | 516.547.1247 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 8:48 pm | 516.547.1247 | Incoming | Network | 16 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 6:35 pm | 516.547.1247 | Incoming | Network | 5 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 6:12 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 2:38 pm | 516.547.1247 | Incoming | Network | 8 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 1:01 pm | 516.547.1247 | Incoming | Network | 5 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 11:01 am | 516.547.1247 | Call Wait | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 4:35 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 12:22 pm | 516.547.1247 | Call Wait | Network | 4 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 10:18 pm | 516.547.1247 | Incoming | Network | 14 | Domestic | $0.00 |
| INCOMING | Nov 03, 2025 | 4:51 pm | 516.547.1247 | Incoming | Network | 6 | Domestic | $0.00 |
| INCOMING | Nov 20, 2025 | 2:22 pm | 516.475.3849 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 12:31 pm | 516.460.9447 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 3:37 pm | 516.210.1679 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 6:33 pm | 510.390.0237 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 6:32 pm | 510.390.0237 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 18, 2025 | 6:31 pm | 510.390.0237 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 10:53 am | 502.798.9392 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 10:36 am | 502.796.2835 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 05, 2025 | 9:31 am | 502.233.5847 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 10:14 am | 479.203.1702 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 15, 2025 | 3:42 pm | 469.834.7661 | Incoming | Network | 25 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 9:57 am | 469.326.3355 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 10:11 am | 447.252.9359 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 24, 2025 | 4:34 pm | 440.927.7641 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 4:23 pm | 440.337.6587 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 07, 2025 | 10:28 am | 423.358.2834 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 10:43 am | 423.358.2764 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 11, 2025 | 11:45 am | 423.358.2265 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 11:17 am | 417.201.8750 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 10:34 am | 414.240.7762 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 10:15 am | 414.240.7758 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 4:43 pm | 413.491.1962 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 2:27 pm | 413.278.6338 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 26, 2025 | 11:42 am | 405.870.4742 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 6:10 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 09, 2025 | 10:02 am | 347.891.3341 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Nov 09, 2025 | 8:16 am | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 4:45 pm | 347.868.4944 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 12, 2025 | 3:23 pm | 347.716.6503 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 5:48 pm | 347.572.7363 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 5:13 pm | 347.528.8627 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 6:35 pm | 347.453.2234 | Incoming | Network | 21 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 7:25 pm | 347.453.2234 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 21, 2025 | 10:45 am | 347.414.9203 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 2:55 pm | 347.212.6865 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 9:31 am | 332.900.7098 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 3:13 pm | 332.378.1481 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 05, 2025 | 9:36 am | 319.942.6930 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 2:01 pm | 317.206.4421 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 17, 2025 | 6:06 pm | 309.799.9219 | Incoming | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Nov 19, 2025 | 9:41 am | 309.320.5216 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 10:09 am | 305.320.7671 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 06, 2025 | 2:57 pm | 304.551.9867 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 28, 2025 | 12:42 pm | 304.359.9172 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 10, 2025 | 10:59 am | 302.460.0624 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 01, 2025 | 4:33 pm | 270.815.6048 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 26, 2025 | 11:04 am | 262.464.4652 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Nov 13, 2025 | 3:43 pm | 229.290.7373 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 19, 2025 | 11:34 am | 223.219.5712 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 25, 2025 | 9:28 am | 219.221.8855 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 05, 2025 | 5:12 pm | 219.219.8356 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 14, 2025 | 11:39 am | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Nov 04, 2025 | 1:11 pm | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **AT&T** | | | | | | | | |
| **Phone Number: 6465447597** | | | | | | | | |
| **Bill Cycle: Dec 02, 2025 - Jan 01, 2026** | | | | | | | | |
| **Total Charges: $0** | | | | | | | | |
| | | | | | | | | |
| **Incoming/Outgoing** | **Date** | **Time** | **Contact** | **Location** | **Type** | **Minutes** | **Geography** | **Charges** |
| INCOMING | Dec 22, 2025 | 11:04 am | 989.363.1750 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 10:07 am | 945.292.3923 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 22, 2025 | 3:48 pm | 943.277.4500 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 2:51 pm | 943.276.5944 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 2:11 pm | 929.202.8047 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 2:54 pm | 917.560.6969 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 3:42 pm | 917.497.1376 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 3:29 pm | 917.497.1376 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 11:33 am | 917.497.1376 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 29, 2025 | 5:19 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 5:05 pm | 917.394.8643 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 5:09 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 3:35 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 3:35 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 14, 2025 | 2:54 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 13, 2025 | 9:19 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 6:58 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 3:16 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 06, 2025 | 12:21 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 3:17 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 9:31 pm | 917.394.8643 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 8:44 am | 914.655.9185 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 2:36 pm | 914.383.0532 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 1:15 pm | 914.339.0526 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 8:27 pm | 888.996.0669 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 19, 2025 | 8:41 pm | 888.918.6584 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 4:15 pm | 888.751.9993 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 18, 2025 | 1:05 pm | 888.698.9665 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 1:17 pm | 888.654.8847 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 11:28 am | 888.646.5816 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 7:22 pm | 888.643.9430 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 20, 2025 | 11:08 am | 888.643.8027 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 7:55 pm | 888.602.9854 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 4:13 pm | 888.602.2134 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 1:03 pm | 888.593.7379 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 6:50 pm | 888.593.4516 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 3:16 pm | 888.524.2031 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 18, 2025 | 3:13 pm | 888.523.5167 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 10:50 am | 888.469.4511 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 12:49 pm | 888.423.6519 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 23, 2025 | 6:15 pm | 888.268.0530 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 7:26 pm | 877.902.9168 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 27, 2025 | 1:41 pm | 877.701.9071 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 22, 2025 | 12:56 pm | 877.701.6177 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 20, 2025 | 12:36 pm | 877.616.8308 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 12:07 pm | 877.613.6232 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 5:42 pm | 877.612.4416 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 23, 2025 | 3:57 pm | 877.608.5776 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 6:29 pm | 877.602.2937 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 22, 2025 | 4:01 pm | 877.600.4193 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 27, 2025 | 6:26 pm | 877.600.1706 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 7:50 pm | 877.580.3512 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 4:34 pm | 877.552.4218 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 27, 2025 | 6:06 pm | 877.505.8520 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 29, 2025 | 9:10 am | 877.503.2570 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 06, 2025 | 2:16 pm | 877.495.8041 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 4:34 pm | 877.421.8551 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 10:58 am | 877.308.6586 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 7:33 pm | 866.978.9683 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 10:13 am | 866.978.2985 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 5:41 pm | 866.977.6125 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 6:21 pm | 866.919.4374 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 12:24 pm | 866.803.3426 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 20, 2025 | 11:07 am | 866.679.3565 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 1:59 pm | 866.590.9978 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 12:56 pm | 866.590.6291 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 1:16 pm | 866.590.6140 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 23, 2025 | 6:34 pm | 866.553.4864 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 7:54 pm | 866.531.6308 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 3:27 pm | 866.435.4604 | Incoming | Network | 1 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Dec 23, 2025 | 1:15 pm | 866.434.6719 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 18, 2025 | 1:04 pm | 866.416.9188 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 8:34 pm | 866.399.9530 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 3:45 pm | 866.399.6562 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 9:37 am | 866.399.5675 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 06, 2025 | 1:25 pm | 866.396.8059 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 4:53 pm | 866.304.6040 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 3:18 pm | 866.219.8409 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 7:44 pm | 855.806.3965 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 6:58 pm | 855.805.0067 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 13, 2025 | 2:24 pm | 855.736.3065 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 23, 2025 | 3:45 pm | 855.712.2801 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 2:31 pm | 855.685.7687 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 12:23 pm | 855.683.9618 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 10:56 am | 855.683.8842 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 6:56 pm | 855.629.4446 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 6:24 pm | 855.609.9342 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 11:58 am | 855.545.3008 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 7:47 pm | 855.297.1793 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 12:43 pm | 845.477.7788 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 2:42 pm | 844.935.7611 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 2:47 pm | 844.935.5962 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 5:02 pm | 844.831.9925 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 12:43 pm | 844.778.7881 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 8:05 pm | 844.720.8303 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 27, 2025 | 6:05 pm | 844.649.7367 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 6:30 pm | 844.649.6443 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 13, 2025 | 7:10 pm | 844.632.4193 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 3:50 pm | 844.626.7204 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 1:30 pm | 844.625.9867 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 6:50 pm | 844.622.3849 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 5:50 pm | 844.542.8061 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 9:36 am | 844.497.3896 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 9:21 am | 844.418.5457 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 1:17 pm | 833.946.7591 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 2:21 pm | 833.940.8976 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 12:33 pm | 833.940.8634 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 29, 2025 | 1:00 pm | 833.913.4946 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 11:20 am | 833.814.9926 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 23, 2025 | 5:57 pm | 833.814.5161 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 4:55 pm | 833.476.4414 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 8:41 pm | 833.459.9691 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 10:33 am | 833.346.8994 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 7:18 pm | 833.346.2601 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 10:55 am | 833.336.9445 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 4:39 pm | 833.326.2939 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 3:22 pm | 833.289.7825 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 13, 2025 | 1:56 pm | 740.763.8280 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 4:36 pm | 720.801.3902 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 22, 2025 | 11:50 am | 716.274.8520 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 18, 2025 | 4:45 pm | 646.925.0510 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 2:13 pm | 646.907.6732 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 1:59 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 3:08 pm | 646.904.5392 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 6:34 pm | 646.882.4050 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 4:41 pm | 646.872.8416 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 3:26 pm | 646.863.5792 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 1:11 pm | 646.850.0231 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 12:06 pm | 646.838.8604 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 3:53 pm | 646.798.8109 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 12:15 pm | 646.777.1346 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 2:53 pm | 646.722.5672 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 23, 2025 | 11:23 am | 646.687.0740 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 5:09 pm | 646.687.0729 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 11:32 am | 646.684.3076 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 6:54 pm | 646.669.9458 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 6:25 pm | 646.661.2529 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 11, 2025 | 12:55 pm | 646.631.4610 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 6:49 pm | 646.612.7694 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 10:08 am | 646.559.5478 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 10:18 am | 646.518.3618 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 18, 2025 | 1:48 pm | 646.349.6243 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 4:28 pm | 646.343.5820 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 12:47 pm | 646.343.5812 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 1:31 pm | 518.635.8920 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 10:22 am | 518.415.3885 | Incoming | Network | 2 | Domestic | $0.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| INCOMING | Dec 30, 2025 | 4:26 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 20, 2025 | 2:41 pm | 516.547.1247 | Incoming | Network | 7 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 9:01 am | 516.547.1247 | Incoming | Network | 9 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 6:23 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 12:15 pm | 516.547.1247 | Incoming | Network | 19 | Domestic | $0.00 |
| INCOMING | Dec 12, 2025 | 3:20 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 6:51 pm | 516.547.1247 | Incoming | Network | 10 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 4:58 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 11:13 am | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 2:16 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 1:08 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 7:04 pm | 516.547.1247 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 11:39 am | 516.547.1247 | Incoming | Network | 25 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 2:37 pm | 516.461.6122 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 10:36 am | 516.430.6732 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 9:55 am | 516.231.5594 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 9:22 am | 516.210.1946 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 2:23 pm | 484.998.2644 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 1:11 pm | 469.361.2955 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 09, 2025 | 3:29 pm | 464.235.5601 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 06, 2025 | 3:53 pm | 423.358.4753 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 4:36 pm | 408.786.1501 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 11:29 am | 401.610.7767 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 3:26 pm | 347.891.3341 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 3:16 pm | 347.891.3341 | Incoming | Network | 6 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 11:35 am | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 29, 2025 | 3:45 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 1:38 pm | 347.891.3341 | Incoming | Network | 3 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 5:43 pm | 347.891.3341 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 5:47 pm | 347.891.3341 | Incoming | Network | 5 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 3:10 pm | 347.868.4944 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 30, 2025 | 8:49 am | 347.646.7552 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 8:43 am | 347.516.0453 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 29, 2025 | 3:07 pm | 347.516.0164 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 10:42 am | 347.453.2234 | Incoming | Network | 10 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 3:18 pm | 346.844.3099 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 7:23 pm | 332.378.1483 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 05, 2025 | 2:15 pm | 332.378.1483 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 7:22 pm | 332.378.1481 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 24, 2025 | 12:48 pm | 319.733.3015 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 3:30 pm | 315.626.8938 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 03, 2025 | 5:05 pm | 315.612.6751 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 11:28 am | 314.499.4678 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 17, 2025 | 10:15 am | 308.291.3703 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 23, 2025 | 11:52 am | 283.888.3818 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 10, 2025 | 5:19 pm | 270.795.8738 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 3:23 pm | 267.786.9319 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 04, 2025 | 12:54 pm | 231.872.6261 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 02, 2025 | 10:56 am | 229.290.7329 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 3:08 pm | 218.989.8805 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 08, 2025 | 10:41 am | 218.394.8302 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 16, 2025 | 11:32 am | 218.394.8287 | Incoming | Network | 1 | Domestic | $0.00 |
| INCOMING | Dec 15, 2025 | 9:54 am | 205.885.9891 | Incoming | Network | 2 | Domestic | $0.00 |
| INCOMING | Dec 26, 2025 | 3:55 pm | 201.830.3250 | Incoming | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 31, 2025 | 7:41 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 30, 2025 | 5:02 pm | 516.547.1247 | Floralpark, NY | Network | 24 | Domestic | $0.00 |
| OUTGOING | Dec 29, 2025 | 3:48 pm | 347.891.3341 | Queens Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Dec 26, 2025 | 7:54 pm | 469.834.7661 | Grand Prar, TX | Network | 2 | Domestic | $0.00 |
| OUTGOING | Dec 24, 2025 | 7:25 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 24, 2025 | 7:24 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 24, 2025 | 11:32 am | 800.677.1569 | Toll Free | Network | 6 | Domestic | $0.00 |
| OUTGOING | Dec 24, 2025 | 10:57 am | 347.404.9133 | Bklyn Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Dec 24, 2025 | 10:56 am | 646.386.5700 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 22, 2025 | 12:19 pm | 347.891.3341 | Queens Nyc, NY | Network | 2 | Domestic | $0.00 |
| OUTGOING | Dec 20, 2025 | 3:31 pm | 516.547.1247 | Floralpark, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Dec 20, 2025 | 3:04 pm | 516.547.1247 | Floralpark, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Dec 20, 2025 | 1:02 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 17, 2025 | 4:33 pm | 646.872.8416 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 12, 2025 | 2:54 pm | 212.805.0800 | New York, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 10, 2025 | 6:35 pm | 516.547.1247 | Floralpark, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 10, 2025 | 5:35 pm | 516.547.1247 | Floralpark, NY | Network | 19 | Domestic | $0.00 |
| OUTGOING | Dec 08, 2025 | 1:35 pm | 347.891.3341 | Queens Nyc, NY | Network | 3 | Domestic | $0.00 |
| OUTGOING | Dec 06, 2025 | 12:21 pm | 347.891.3341 | Queens Nyc, NY | Network | 1 | Domestic | $0.00 |
| OUTGOING | Dec 03, 2025 | 7:40 pm | 516.547.1247 | Floralpark, NY | Network | 7 | Domestic | $0.00 |
| OUTGOING | Dec 03, 2025 | 3:10 pm | 347.891.3341 | Queens Nyc, NY | Network | 6 | Domestic | $0.00 |
| OUTGOING | Dec 03, 2025 | 12:01 pm | 347.891.3341 | Queens Nyc, NY | Network | 3 | Domestic | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **AT&T** | | | | | | | |
| **Bill Cycle: Jan 02, 2026 - Jan 24, 2026** | | | | | | | |
| **Phone Number: 6465447597** | | | | | | | |
| **Total Charges: $0** | | | | | | | |
| **Incoming/Outgoing** | **Date** | **Time** | **Contact** | **Location** | **Type** | **Minutes** | **Geography** |
| INCOMING | Jan 16, 2026 | 3:24 pm | 980.510.2253 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 19, 2026 | 5:26 pm | 978.444.5800 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 2:21 pm | 943.277.5159 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 08, 2026 | 10:44 am | 941.991.4888 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 14, 2026 | 11:54 am | 929.482.2300 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 20, 2026 | 11:51 am | 929.390.4146 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 2:33 pm | 929.390.4146 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 2:37 pm | 929.390.4146 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 2:53 pm | 929.390.4146 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 9:52 am | 929.390.4146 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 6:07 pm | 929.390.4146 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 8:59 am | 929.202.8280 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 09, 2026 | 8:28 am | 929.202.8280 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 1:50 pm | 920.974.6652 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 02, 2026 | 8:44 am | 914.491.1139 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 3:52 pm | 888.830.5058 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 08, 2026 | 5:40 pm | 888.615.4251 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 8:10 pm | 888.612.9184 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 12, 2026 | 7:22 pm | 888.610.9691 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 21, 2026 | 6:58 pm | 888.610.8825 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 4:03 pm | 888.268.0355 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 1:18 pm | 888.268.0163 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 08, 2026 | 5:08 pm | 877.711.6743 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 1:04 pm | 877.705.5267 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 09, 2026 | 2:53 pm | 877.549.9653 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 12:33 pm | 877.514.8125 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 5:37 pm | 877.505.6929 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 5:45 pm | 877.505.6714 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 3:12 pm | 877.505.4948 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 1:42 pm | 877.502.3708 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 02, 2026 | 3:33 pm | 866.919.8361 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 10, 2026 | 4:10 pm | 866.910.8391 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 5:12 pm | 866.906.8674 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 11:47 am | 866.804.3155 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 3:24 pm | 866.803.3426 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 1:45 pm | 866.803.3426 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 11:57 am | 866.803.3426 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 22, 2026 | 10:52 am | 866.800.6987 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 10, 2026 | 6:53 pm | 866.602.5954 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 1:44 pm | 866.590.6156 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 12:11 pm | 866.431.9442 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 1:59 pm | 859.314.9311 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 5:26 pm | 855.924.6197 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 12:02 pm | 855.818.7895 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 09, 2026 | 2:33 pm | 855.818.6002 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 10, 2026 | 2:20 pm | 855.818.3371 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 7:23 pm | 855.818.2350 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 11:33 am | 855.818.2107 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 08, 2026 | 6:21 pm | 855.583.4019 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 5:01 pm | 855.550.6717 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 3:22 pm | 855.550.6519 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 17, 2026 | 12:52 pm | 855.550.5294 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 8:47 pm | 855.515.8985 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 10:07 am | 855.417.6630 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 8:06 pm | 855.417.1407 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 09, 2026 | 9:19 am | 855.413.9975 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 09, 2026 | 3:56 pm | 855.388.6777 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 1:26 pm | 855.388.4917 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 9:54 am | 855.388.3187 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 7:45 pm | 855.257.0590 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 5:45 pm | 848.444.5025 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 5:45 pm | 848.444.5025 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 02, 2026 | 10:15 am | 844.715.7545 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 9:05 am | 844.712.3761 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 07, 2026 | 9:55 am | 843.701.6000 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 20, 2026 | 6:14 pm | 840.214.1715 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 6:53 pm | 838.227.7068 | Incoming | Network | 2 | Domestic |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| INCOMING | Jan 15, 2026 | 11:01 am | 833.906.7886 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 02, 2026 | 12:10 pm | 833.814.8042 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 11:25 am | 833.814.6016 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 1:36 pm | 833.756.6748 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 7:32 pm | 833.618.9424 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 8:03 pm | 833.604.7547 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 9:48 am | 833.604.7475 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 8:04 pm | 833.549.2190 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 17, 2026 | 12:55 pm | 833.502.5953 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 5:34 pm | 828.979.4456 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 02, 2026 | 12:37 pm | 818.672.3720 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 09, 2026 | 1:43 pm | 813.824.6552 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 20, 2026 | 12:17 pm | 760.878.5250 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 1:36 pm | 682.757.4311 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 12, 2026 | 12:45 pm | 657.377.0746 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 12, 2026 | 2:05 pm | 646.953.3314 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 3:33 pm | 646.952.4498 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 10:33 am | 646.952.3947 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 10, 2026 | 3:39 pm | 646.922.8820 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 5:35 pm | 646.918.7558 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 08, 2026 | 4:54 pm | 646.904.5392 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 10:05 am | 646.895.9140 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 11:12 am | 646.871.7639 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 2:58 pm | 646.864.1887 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 20, 2026 | 10:59 am | 646.863.2997 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 10:07 am | 646.861.2463 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 20, 2026 | 10:53 am | 646.838.8913 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 2:16 pm | 646.838.8462 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 2:44 pm | 646.838.5761 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 3:38 pm | 646.798.5269 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 11:47 am | 646.796.3776 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 08, 2026 | 1:02 pm | 646.719.1010 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 9:42 am | 646.692.3600 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 22, 2026 | 1:53 pm | 646.684.4376 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 11:45 am | 646.682.7718 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 12, 2026 | 5:52 pm | 646.650.4916 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 2:15 pm | 646.609.1950 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 3:43 pm | 646.520.1677 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 14, 2026 | 3:42 pm | 646.435.3368 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 9:22 am | 646.435.3368 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 1:24 pm | 646.435.3362 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 9:23 am | 646.435.3357 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 9:28 am | 646.435.3357 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 4:27 pm | 646.368.1657 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 2:12 pm | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 10:33 am | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 20, 2026 | 3:01 pm | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 20, 2026 | 11:00 am | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 2:44 pm | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 10:43 am | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 11:57 am | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 11:53 am | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 4:49 pm | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 12:03 pm | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 12:29 pm | 646.349.6243 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 5:50 pm | 631.314.7355 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 14, 2026 | 3:27 pm | 631.202.6704 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 19, 2026 | 2:37 pm | 610.561.5826 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 2:09 pm | 563.999.8176 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 12, 2026 | 11:22 am | 518.768.4645 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 17, 2026 | 3:58 pm | 518.721.7248 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 13, 2026 | 5:21 pm | 518.685.9308 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 20, 2026 | 1:35 pm | 518.558.6523 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 08, 2026 | 10:13 am | 518.415.3863 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 20, 2026 | 12:43 pm | 516.820.0125 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 1:26 pm | 516.820.0125 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 22, 2026 | 4:30 pm | 516.547.1247 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 22, 2026 | 2:41 pm | 516.547.1247 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 20, 2026 | 4:12 pm | 516.547.1247 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 6:30 pm | 516.547.1247 | Incoming | Network | 22 | Domestic |
| INCOMING | Jan 12, 2026 | 2:53 pm | 516.547.1247 | Incoming | Network | 12 | Domestic |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| INCOMING | Jan 07, 2026 | 12:36 pm | 516.547.1247 | Incoming | Network | 22 | Domestic |
| INCOMING | Jan 06, 2026 | 8:27 pm | 516.547.1247 | Incoming | Network | 10 | Domestic |
| INCOMING | Jan 21, 2026 | 10:26 am | 516.430.6746 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 16, 2026 | 10:38 am | 516.276.9650 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 11:20 am | 502.796.6954 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 14, 2026 | 10:41 am | 502.218.7727 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 14, 2026 | 6:45 pm | 502.218.6734 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 12, 2026 | 6:03 pm | 469.393.5212 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 12, 2026 | 12:09 pm | 464.235.1396 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 1:06 pm | 445.316.9349 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 23, 2026 | 9:19 am | 415.918.5687 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 02, 2026 | 5:30 pm | 415.602.1680 | Incoming | Network | 51 | Domestic |
| INCOMING | Jan 23, 2026 | 9:19 am | 412.284.0565 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 4:48 pm | 363.203.9740 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 12, 2026 | 6:35 pm | 347.891.3341 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 03, 2026 | 9:50 am | 347.891.3341 | Incoming | Network | 4 | Domestic |
| INCOMING | Jan 21, 2026 | 9:59 am | 347.682.2639 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 02, 2026 | 3:17 pm | 347.333.4919 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 07, 2026 | 1:12 pm | 339.356.9244 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 10:24 am | 315.273.0147 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 19, 2026 | 10:24 am | 315.273.0147 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 5:18 pm | 315.273.0147 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 13, 2026 | 12:56 pm | 315.259.3620 | Incoming | Network | 2 | Domestic |
| INCOMING | Jan 14, 2026 | 12:18 pm | 309.288.4957 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 21, 2026 | 3:12 pm | 304.316.6505 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 22, 2026 | 10:07 am | 212.356.3518 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 05, 2026 | 11:09 am | 209.821.4739 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 15, 2026 | 2:05 pm | 209.438.2276 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 22, 2026 | 10:40 am | 206.581.2508 | Incoming | Network | 3 | Domestic |
| INCOMING | Jan 06, 2026 | 11:53 am | 201.830.3250 | Incoming | Network | 1 | Domestic |
| INCOMING | Jan 06, 2026 | 10:12 am | 201.830.3250 | Incoming | Network | 2 | Domestic |